# EXHIBIT A

Document                                                              Page 1 of 4

---

(UPDATED THROUGH P.L. 2013, ch.59 and JR8 of 2013)

TITLE 2C      THE NEW JERSEY CODE OF CRIMINAL JUSTICE

   2C:13-10  Findings, declarations relative to human trafficking; definitions.

---

**2C:13-10  Findings, declarations relative to human trafficking; definitions.**

12. a. The Legislature finds and declares that:

(1)      There reportedly are more than 12 million victims of human trafficking and it is estimated that this figure could actually be as high as 27 million;

(2)      According to the National Center for Missing and Exploited Children, at least 100,000 human trafficking victims are American children who are an average age of 13 years old;

(3)      Advertisements for selling the services of girls as escorts on Internet websites falsely claim that these girls are 18 years of age or older, when the girls actually are minors;

(4)      The advertising of these escort services includes minors who are being sold for sex, which constitutes sex trafficking and commercial sexual abuse of minors;

(5)      Responding to political and public outcry, the Internet website craigslist.com removed its escort section, but another website with an escort section, backpage.com, has to date refused to do so;

(6)      The states of Washington and Connecticut recently enacted laws to require Internet websites, such as backpage.com, and the patrons who advertise on websites, to maintain documentation that they have proved the age of the escorts presented in the advertisements;

(7)      The State of New Jersey criminalized human trafficking in 2005; and

(8)      Sex trafficking of minors should be eliminated in conformity with federal laws prohibiting the sexual exploitation of children.

b.      A person commits the offense of advertising commercial sexual abuse of a minor if:

(1)      the person knowingly publishes, disseminates, or displays, or causes directly or indirectly, to be published, disseminated, or displayed, any advertisement for a commercial sex act, which is to take place in this State and which includes the depiction of a minor; or

(2)      the person knowingly purchases advertising in this State for a commercial sex act which includes the depiction of a minor.

c.      A person who commits the offense of advertising commercial sexual abuse of a minor as established in subsection b. of this section is guilty of a crime of the first degree. Notwithstanding the provisions of N.J.S.2C:43-3, the fine imposed for an offense under this section shall be a fine of at least $25,000, which shall be collected as provided for the collection of fines and restitutions in section 3 of P.L.1979, c.396 (C.2C:46-4) and forwarded to the Department of the Treasury to be deposited in the "Human Trafficking Survivor's Assistance Fund" established by section 2 of P.L.2013, c.51 (C.52:17B-238).

d.      Nothing in this section shall preclude an indictment and conviction for any other offense

---

defined by the laws of this State.

    e.    For the purposes of this section:

"Advertisement for a commercial sex act" means any advertisement or offer in electronic or print media, including the Internet, which includes either an explicit or implicit offer for a commercial sex act to occur in this State.

"Commercial sex act" means any act of sexual contact or sexual penetration, as defined in N.J.S.2C:14-1, or any prohibited sexual act, as defined in N.J.S.2C:24-4, for which something of value is given or received by any person.

"Depiction" means any photograph or material containing a photograph or reproduction of a photograph.

"Minor" means a person who is under 18 years of age.

"Photograph" means a print, negative, slide, digital image, motion picture, or videotape, and includes anything tangible or intangible produced by photographing.

    f.    It shall not be a defense to a violation of this section that the defendant:

    (1)    did not know the age of the minor depicted in the advertisement; or

    (2)    claims to know the age of the person depicted, unless there is appropriate proof of age obtained and produced in accordance with subsections g. and h. of this section.

    g.    It shall be a defense to a violation of this section that the defendant made a reasonable, bona fide attempt to ascertain the true age of the minor depicted in the advertisement by requiring, prior to publication, dissemination, or display of the advertisement, production of a driver's license, marriage license, birth certificate, or other governmental or educational identification card or paper of the minor depicted in the advertisement and did not rely solely on oral or written representations of the minor's age, or the apparent age of the minor as depicted. The defendant shall prove the defense established in this subsection by a preponderance of the evidence.

    h.    The defendant shall maintain and, upon request, produce a record of the identification used to verify the age of the person depicted in the advertisement.

    L.2013, c.51, s.12.

**2C:13-11  Coordination of State's involvement with national, 24-hour toll-free hotline service on human trafficking.**

    18.    The Attorney General shall, in consultation with the Commission on Human Trafficking established by section 1 of P.L.2013, c.51 (C.52:17B-237), coordinate the State's involvement with the national, 24-hour toll-free hotline telephone service on human trafficking that is operating pursuant to the National Human Trafficking Hotline, Training, and Technical Assistance Program authorized by 22 U.S.C. ss.7104(b) and 7105(b)(1)(B), 8 U.S.C. s.1522(c)(1)(A), or any successor federal law.

    L.2013, c.51, s.18.

# EXHIBIT B

# backpage.com.

Backpage.com, LC
PO Box 192307
Dallas, Texas 75219
www.backpage.com

June 4, 2013

Dear Attorney General Chiesa,

I am General Counsel responsible for Backpage.com, LLC, which operates the classified advertising website Backpage.com. I am writing regarding a portion of New Jersey P.L.2013, c.51, which, among other things, addresses the commercial sexual abuse of minors and is scheduled to take effect July 1, 2013.

Backpage.com fully supports meaningful and constitutional legislative and law enforcement initiatives to better combat the commercial sexual exploitation of any human being of any age. I have concerns about N.J.S.A. § 2C:13-10 however because, regardless of its intent, it so significantly and obviously misses these marks.

As written, N.J.S.A. § 2C:13-10 would sweepingly impose potential felony criminal liability on websites and other online service providers (*e.g.*, search engines, social media sites, web archives, and others) if they failed to exclude from their service each and every third-party post or other third-party information that might violate the law, but the law is too vague for online service providers or anyone else to understand what it prohibits. Consequently, if allowed to go into effect, the law would mandate that OSPs preclude or strictly censor third-party content on the Internet, which would severely chill speech in violation of the First Amendment and in direct contravention of Section 230 of the Communications Decency Act, 47 U.S.C. § 230. In addition, the breadth of the statute as written would violate the Commerce Clause. This is not merely Backpage.com's assessment of N.J.S.A. § 2C:13-10; it has been the assessment of two federal district courts that have decided challenges to virtually identical and substantially similar state laws.

Specifically, N.J.S.A. § 2C:13-10 includes creation of felony criminal liability against any person who "knowingly publishes, disseminates, or displays, or causes directly or indirectly, to be published, disseminated, or displayed, any advertisement for a commercial sex act, which is to take place in this State and which includes the depiction of a minor." Section (b)(1). It defines an "advertisement for a commercial sex act" as "any advertisement or offer in electronic or print media, including the Internet, which includes either an explicit or implicit offer for a commercial sex act to occur in this state." *Id.* (e). "Commercial sex act," in turn, is "any act of sexual contact or sexual penetration … for which something of value is given or received by any person." *Id.*

The law provides that it is not a defense if "the defendant ... did not know the age of the minor depicted in the advertisement." *Id.* (f). Instead, the defendant must have "made a reasonable, bona fide attempt to ascertain the true age of the minor depicted in the advertisement by requiring, prior to publication, dissemination, or display of the advertisement, production of a driver's license, marriage license, birth certificate, or other governmental or educational identification card or paper of the minor depicted in the advertisement and did not rely solely on oral or written representations of the minor's age, or the apparent age of the minor as depicted." *Id.* (g).

Findings that are a part of N.J.S.A. § 2C:13-10 indicate it is based on Washington and Connecticut statutes. *Id.* (a)(6). Indeed, the law is virtually identical to Washington Senate Bill 6251. This Washington law was declared unconstitutional and preempted on numerous grounds in *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262 (W.D. Wash. 2012). Also before N.J.S.A. § 2C:13-10 was passed, the federal court in Tennessee invalidated a law similar to and based on an earlier version of the Washington law. *Backpage.com, LLC v. Cooper*, --- F.Supp.2d ----, 2013 WL 1558785 (M.D. Tenn. Jan. 3, 2013). The Connecticut law that N.J.S.A. § 2C:13-10 purports to follow was not passed. Rather, after consideration, the Connecticut legislature abandoned the law, apparently based on concerns that it would be unconstitutional. *See* http://courantblogs.com/capitol-watch/first-amendment-concerns-curtail-escort-ad-bill-one-of-several-measures-to-clear-judiciary-committee-monday/. Instead, Connecticut passed a revised version of the law that imposed criminal liability on persons who post advertisements for underage sex trafficking, but not on websites and other online service providers that publish or distribute third-party content. *Id.*

We understand that New Jersey legislators were aware of at least the *McKenna* decision when N.J.S.A. § 2C:13-10 passed. Indeed, two members of the Assembly Judiciary Committee were sufficiently concerned about N.J.S.A. § 2C:13-10's constitutionality that they did not vote to approve it. *See* http://www.nj.com/politics/index.ssf/2012/10/nj_bill_would_increase_penalti.html.

P.L.2013, c. 51, like the laws on which it was premised unconstitutionally violates the First Amendment and Commerce Clause and violates and is preempted by the federal Communications Decency Act Section 230. If necessary, Backpage.com will file an action for declaratory judgment and an injunction against enforcement of the law under § 1983, and will seek recovery of fees and costs under 42 U.S.C. § 1988. However, particularly given immediate relevant precedent, we believe litigation over N.J.S.A. § 2C:13-10 would be a substantial waste of resources for the State of New Jersey – resources that could otherwise be used to effectively combat the commercial sex trafficking of children within and through this state. We would strongly prefer to work with you towards collaborative, practical measures to stop this social atrocity than fight an expensive and esoteric legal battle in court.

Nonetheless, it may be that your office has no choice but to defend New Jersey P.L.2013, c.51. If so, we will gladly work with you regarding scheduling and procedures to make the litigation as efficient as possible. Please advise as to how you choose to proceed. Given the July 1, 2013 effective date of the law, we would appreciate a response at your earliest convenience. If we do not hear from you by June 19, we will assume that we must resort to legal action to prevent the far-reaching, damaging effects of the law as it stands.

You are welcome to contact me (206-669-0737) anytime to discuss N.J.S.A. § 2C:13-10, or Internet and human trafficking issues more broadly.

Sincerely,

Elizabeth L. McDougall

# EXHIBIT C

# JOINT STATEMENT

craigslist, the Attorneys General listed below, and the National Center for Missing and Exploited Children ("NCMEC"), announce new measures that craigslist is taking to help combat unlawful activity and improve public safety on its web site.

This agreement culminates a series of discussions and in person meetings between Jim Buckmaster, CEO of craigslist, Richard Blumenthal, Attorney General of the State of Connecticut, and NCMEC.

craigslist is a popular internet classifieds service that provides the public with many benefits. Like all communication tools, it can unfortunately be misused to facilitate unlawful activity.

craigslist has a long record of implementing measures to prevent misuse of its web site, assisting law enforcement investigations, and of improving safety for craigslist users. Law enforcement personnel have called craigslist's attention to misuse of craigslist's "erotic services" category to facilitate unlawful activity. This problem requires new safeguards for craigslist and new ways of working together with law enforcement. Further innovation and collaboration in addressing these issues will be beneficial for the safety of craigslist users and the general public. Accordingly, craigslist, the Attorneys General, and NCMEC, announce the following measures for combating unlawful activity and improving public safety on craigslist:

## I.  DIGITAL TAGGING, COMMUNITY FLAGGING, ELECTRONIC SCREENING

- craigslist has implemented a community self-policing program which allows users to "flag" a posting the user believes violates the terms of use, including the prohibition against pornography. The objectionable posting is eliminated automatically if it receives above a threshold number of flags.

- craigslist uses electronic screening to block certain advertisements that craigslist believes will violate its Terms of Use before they are posted.

- craigslist digitally tags adult sections of the site using industry standard PICS rating headers to facilitate the effectiveness of PC-based parental screening software.

## II.  TELEPHONE VERIFICATION

- craigslist has implemented a telephone verification system for the "erotic services" section of the site requiring any person seeking to post an advertisement to provide a working telephone number.

- Telephone verification enables craigslist to permanently block the phone number of any person posting unlawful or inappropriate advertisements.

## III.  CREDIT CARD VERIFICATION AND FEE TO POST

- craigslist plans to implement credit card verification and fee to post for its "erotic services" category. Persons wishing to post ads in this category will be required to pay a fee using a valid credit card.

- Credit card verification and fee to post will reduce ad volume significantly, and encourage more responsible usage.

- Credit Card verification provides additional identifying information that will enable craigslist to block the accounts of persons who violate craigslist's terms of use.

- credit card information would be available to law enforcement agencies through a subpoena process.

- craigslist plans to contribute 100% of the net revenues from these advertisements to charity. A public accounting firm will verify the net revenue amounts.

## IV.  LEGAL ACTION AGAINST SPAM OPERATORS

- Misuse of craigslist is facilitated by companies providing spamming, posting, and/or flagging services. These businesses seek financial profit by providing services and/or software that circumvent craigslist's terms of use and defense mechanisms or facilitate circumvention by other persons.

- craigslist has initiated (or will soon initiate) lawsuits against a number of these companies that violate craigslist's terms of use (or facilitate the violation of craigslist's terms of use by others).

- craigslist will provide evidence of unlawful activity by these operators to the Attorneys General for potential prosecution.

## V.  COOPERATION WITH LAW ENFORCEMENT

- craigslist has developed search capabilities that enhance its ability to assist NCMEC and law enforcement agencies to locate missing persons, and identify exploited minors and victims of human trafficking.

- craigslist is continuing its development efforts in this area to further enhance its ability to assist law enforcement NCMEC and even social welfare agencies in their efforts to protect children from this type of victimization.

- craigslist will cooperate with law enforcement utilizing the subpoena process.

## VI.  HUMAN TRAFFICKING AND CHILD EXPLOITATION AWARENESS

- craigslist is visited by more than 40 million Americans each month, generating more than 12 billion monthly page views. Information presented by craigslist can help raise awareness among Americans regarding the enormous suffering caused by human trafficking and the exploitation of minors in this country.

- craigslist, the Attorneys General, and NCMEC will work together to further refine and improve educational materials that are currently available on craigslist.

## VII.  FUTURE EFFORTS

- craigslist and the Attorneys General will meet on a regular basis to discuss design and functionality improvements to combat unlawful activity and improve safety on its web site.

- craigslist will explore the implementation and use of technology that prevents image uploads likely to violate its terms of use.

- craigslist will work with the Attorneys General to develop more robust electronic screening of language used in craigslist postings.


Jim Buckmaster
President and Chief Executive Officer
craigslist, Inc.

Ernie Allen
President and Chief Executive Officer
National Center for Missing and Exploited
Children

Richard Blumenthal
Attorney General of Connecticut

Terry Goddard
Attorney General of Arizona

Dustin B. McDaniel
Attorney General of Arkansas

John W. Suthers
Attorney General of Colorado

Richard S. Gebelein
Acting Attorney General of Delaware

Peter J. Nickles
Attorney General of the District of Columbia

Thurbert E. Baker
Attorney General of Georgia

Alicia G. Limtiaco
Attorney General of Guam

Mark J. Bennett
Attorney General of Hawaii

Lawrence G. Wasden
Attorney General of Idaho

Lisa Madigan
Attorney General of Illinois

Stephen Carter
Attorney General of Indiana

Tom Miller
Attorney General of Iowa

Steve Six
Attorney General of Kansas

Jack Conway
Attorney General of Kentucky

James D. "Buddy" Caldwell
Attorney General of Louisiana

Steven Rowe
Attorney General of Maine

Douglas F. Gansler
Attorney General of Maryland

Jim Hood
Attorney General of Mississippi

Mike McGrath
Attorney General of Montana

Jon Bruning
Attorney General of Nebraska

Catherine Cortez Masto
Attorney General of Nevada

Kelly A. Ayotte
Attorney General of New Hampshire

Anne Milgram
Attorney General of New Jersey

Gary King
Attorney General of New Mexico

Roy Cooper
Attorney General of North Carolina

Wayne Stenehjem
Attorney General of North Dakota

Nancy H. Rogers
Attorney General of Ohio

Drew Edmondson
Attorney General of Oklahoma

Tom Corbett
Attorney General of Pennsylvania

Henry McMaster
Attorney General of South Carolina

Robert E. Cooper, Jr.
Attorney General of Tennessee

William H. Sorrell
Attorney General of Vermont

Robert F. McDonnell
Attorney General of Virginia

Darrell V. McGraw, Jr.
Attorney General of West Virginia

Bruce A. Salzburg
Attorney General of Wyoming

Hardy Myers
Attorney General of Oregon

Patrick C. Lynch
Attorney General of Rhode Island

Lawrence E. Long
Attorney General of South Dakota

Mark L. Shurtleff
Attorney General of Utah

Vincent F. Frazer
Attorney General of the Virgin Islands

Rob McKenna
Attorney General of Washington

J. B. Van Hollen
Attorney General of Wisconsin

# EXHIBIT D

Striking a New Balance | craigslist blog

# craigslist blog

## Striking a New Balance

By Jim Buckmaster

As of today for all US craigslist sites, postings to the "erotic services" category will no longer be accepted, and in 7 days the category will be removed.

Also effective today for all US sites, a new category entitled "adult services" will be opened for postings by legal adult service providers. Each posting to this new category will be manually reviewed before appearing on the site, to ensure compliance with craigslist posting guidelines and terms of use. New postings will cost $10, but once approved, will be eligible for reposting at $5.

Unsurprisingly, but completely contrary to some of the sensationalistic journalism we've seen these past few weeks, the record is clear that use of craigslist classifieds is associated with far lower rates of violent crime than print classifieds (http://blog.craigslist.org/2009/05/classifieds-and-killers/index.html), let alone rates of violent crime pertaining to American society as a whole.

The relative safety of craigslist compared to print classifieds (http://blog.craigslist.org/2009/05/classifieds-and-killers/index.html) is likely due to some combination of:

- » Measures such as blocking, screening, and telephone verification
- » Community moderation via our flagging system
- » Electronic trail ensures violent criminals are quickly caught
- » Personal safety tips prominently posted
- » Unusually high level of cooperation with law enforcement

Community moderation as exemplified by our flagging system is arguably the most successful system ever conceived for eliminating inappropriate activity from a massive internet community. Working in tandem with various other protective technologies, it is an inescapable force to be reckoned with for anyone set on abusing free internet communications across a broad array of posting types.

However, with respect to this new paid category for advertising by legal businesses, we will experiment with some of the methods traditionally employed in paid print classifieds.

We'd like to thank everyone who has provided helpful input over the past few weeks, all of which was closely considered:

- » Our users, whose suggestions shape every aspect of craigslist
- » Attorneys General, who provided valuable constructive criticism
- » Law Enforcement officers nationwide, hugely supportive as always

Striking a New Balance | craigslist blog                                                       Page 2 of 2

- » Legally compliant businesses wishing to advertise their services
- » EFF and other experts defending free speech and Internet law (http://www.eff.org/deeplinks/2009/05/ags-v-craigslist-put)

We are optimistic that the new balance struck today will be an acceptable compromise from the perspective of these constituencies, and for the diverse US communities that value and rely upon craigslist.

Note: Our announced intention to contribute 100% of net revenues for the "erotic services" category to charity has been fulfilled, and will continue to be fulfilled, notwithstanding criticism questioning our good faith in this regard. However, in light of today's changes, and to avoid any future misunderstanding, we are making no representation regarding how revenue from the "adult services" category will be used. Our commitment to philanthropy remains, and craigslist will continue to develop its charitable initiatives.

This entry was posted on May 13, 2009 at 12:00 am and is filed under Features, Government, Law Enforcement, Legal, Philanthropy. You can follow any responses to this entry through the RSS 2.0 feed. Both comments and pings are currently closed.

Theme: Customized Kubrick. Blog at WordPress.com.
Entries (RSS) and Comments (RSS).

Follow

# Follow "craigslist blog"

Powered by WordPress.com

# EXHIBIT E

Craigslist Closes Its Sex-Related Ad Section - NYTimes.com
<span style="float:right">Page 1 of 3</span>

**The New York Times** Reprints

This copy is for your personal, noncommercial use only. You can order presentation-ready copies for distribution to your colleagues, clients or customers here or use the "Reprints" tool that appears next to any article. Visit www.nytreprints.com for samples and additional information. Order a reprint of this article now.



A New Comedy

September 15, 2010

# Craigslist Says It Has Shut Its Section for Sex Ads

## By CLAIRE CAIN MILLER

Craigslist said on Wednesday that it had permanently closed the section of its sites in the United States that carried sex-related advertising, but it defended its right to carry such advertisements as well as its efforts to fight sex trafficking.

The company abruptly removed links to the ads for sexual services earlier this month and replaced them with a black label bearing the word "censored." Until Wednesday it had not explained its move.

William Clinton Powell, director of customer and law enforcement relations at Craigslist, and Elizabeth L. McDougall, a partner at Perkins Coie, Craigslist's law firm, discussed the change in testimony at a hearing on sex trafficking of minors before the House Judiciary Committee in Washington.

"Craigslist discontinued its adult services section on Sept. 3, 2010, and there are no plans to reinstate the category," Mr. Powell said. "Those who formerly posted ads in the adult services category will now have to advertise elsewhere, and in fact there is evidence that this process began immediately."

The hearing, held by the House subcommittee on crime, terrorism and homeland security, came after days of speculation about the motives of Craigslist.

Though federal law protects Craigslist against liability for what its users post, it has been criticized by state attorneys general and advocacy groups who say the site has the responsibility to fight sex trafficking and other sex crimes. On Aug. 24, 17 attorneys general sent Craigslist a letter demanding that it close the sex-related section.

The sex ads cost $10 and were on track to bring in $44 million in revenue this year, according to the AIM Group, a consulting firm that closely monitors the company. Craigslist also charges for some real estate and job ads, but most listings are free.

Free speech advocates and some people who work to help victims of sex crimes have questioned the removal of the sex-ad section. They said that blocking the ads threatened free speech and that the site helped law enforcement track criminals.

But state attorneys general and other groups fighting sex crimes applauded Craigslist's decision to remove the section and demanded that it also block the ads from other areas of the site where they have been popping up, like casual encounters and therapeutic services, and from international Craigslist sites.

Ms. McDougall said Wednesday that it was overly idealistic to believe that sex crimes would end if the sex-oriented advertising were shut down.

Craigslist had adopted a more practical approach, she said, by containing the ads in one place on the site and assisting law enforcement in investigating crimes.

Mr. Powell outlined the many steps he said Craigslist had taken to fight sex trafficking and work with law enforcement and advocacy groups, including manually reviewing all ads before posting, requiring credit card and phone numbers, reporting suspicious ads to the National Center for Missing and Exploited Children and responding to law enforcement requests within a day.

Now that Craigslist has ended the adult ads, it will be harder for the site to assist law enforcement because the ads have migrated to other sites, Ms. McDougall said.

Traffic to Backpage.com, a classifieds site run by Village Voice Media, has sharply spiked this month, according to reports from two firms that measure Web traffic, Alexa and Compete, that Ms. McDougall provided to the committee.

"Consequently, Craigslist fears that its utility to help combat child exploitation has been grossly diminished," she said.

Ernie Allen, chief executive of the National Center for Missing and Exploited Children, dismissed that notion in his testimony. "We recognize that if we crack down in one area, some of this problem will migrate to other areas, but frankly that's progress," he said. "We follow the money. The goal is to destroy the business model of those who sell children for sex on the Internet."

Carl Ferrer, vice president of sales and marketing at Backpage, did not respond to a request for comment but has previously said that the site uses moderation, automated filters and user reports to remove inappropriate posts.

Backpage and the many other sites that post prostitution ads, often disguised as body rubs or escort services, are maneuvering to get a bigger share of the business now that Craigslist is out of the game, said Peter M. Zollman, founding principal of the AIM Group.

Advocacy groups and attorneys general have said they focused on Craigslist because it is widely known and has a big business in sex ads, but will now go after other sites as well. "We must broaden the focus beyond Craigslist and urge every online classified site to take action," Mr. Allen said.

# EXHIBIT F

**STATE ATTORNEYS GENERAL**
A Communication From the Chief Legal Officers
Of the Following States and Territories:

Arkansas * Connecticut * Delaware * Idaho * Illinois * Iowa * Kansas * Maine
Maryland * Michigan * Mississippi * Missouri * Montana * Nevada * New Hampshire
Ohio * Rhode Island * South Carolina * Tennessee * Texas * Virginia

September 21, 2010
*Sent via facsimile*

Samuel Fifer
Sonnenschein, Nath & Rosenthal, LLP
233 South Wacker Drive
Suite 7800
Chicago, IL 60606-6404

**RE:    backpage.com**

Dear Mr. Fifer:

Thank you for your recent letter notifying us of additional changes backpage has implemented in order to respond to our concerns that blatant prostitution ads are rampant on the site. Although we appreciate these efforts and the cooperation the site has demonstrated since we began our investigation in 2009, more needs to be done.

We are writing to request that you immediately take down the adult services portion of backpage.

We believe that ads for prostitution-- including ads trafficking children-- are rampant on the site and that the volume of these ads will grow in light of craigslist's recent decision to eliminate the adult services section of its site. In our view, it is time for the company to follow craigslist's lead and take immediate action to end the misery of the women and children who may be exploited and victimized by these ads. Because backpage cannot, or will not, adequately screen these ads, it should stop accepting them altogether.

As you indicated in your recent letter to us, you found that once you began charging for ads in the adult services section of the site, prostitution began migrating into certain sections of the personals section, so you began to charge to posts ads in that section as well. We urge you to take additional efforts, such as manual review of each ad in theses sections of the personals -- and others if it becomes necessary -- before ads are posted.

We recognize that backpage may lose the considerable revenue generated by the adult services ads. Still, no amount of money can justify the scourge of illegal prostitution, and the

misery of the women and children who will continue to be victimized, in the marketplace provided by backpage.

We sincerely hope backpage, like craigslist, will finally hear the voices of the victims, women and children, who plead with it to make this important change. We too, call on backpage to listen, to care, and respond now by shutting down the adult services section of its website. It is the right thing to do to protect innocent women and children.

Very truly yours,


Richard Blumenthal
Attorney General of Connecticut


Chris Koster
Attorney General of Missouri


Dustin McDaniel
Attorney General of Arkansas


Joseph R. Biden, III
Attorney General of Delaware


Lawrence G. Wasden
Attorney General of Idaho


Lisa Madigan
Attorney General of Illinois


Tom Miller
Attorney General of Iowa


Steve Six
Attorney General of Kansas


Janet Trafton Mills
Attorney General of Maine


Douglas F. Gansler
Attorney General of Maryland

Michael Cox
Attorney General of Michigan

Jim Hood
Attorney General of Mississippi

Steve Bullock
Attorney General of Montana

Catherine Cortez Masto
Attorney General of Nevada

Michael A. Delaney
Attorney General of New Hampshire

Richard Cordray
Attorney General of Ohio

Patrick C. Lynch
Attorney General of Rhode Island

Henry McMaster
Attorney General of South Carolina

Robert E. Cooper, Jr.
Attorney General of Tennessee

Greg Abbott
Attorney General of Texas

Kenneth T. Cuccinelli, II
Attorney General of Virginia

# EXHIBIT G



National Association
*of* Attorneys General

PRESIDENT
**Rob McKenna**
*Washington Attorney General*

PRESIDENT-ELECT
**Doug Gansler**
*Maryland Attorney General*

VICE PRESIDENT
**J.B. Van Hollen**
*Wisconsin Attorney General*

IMMEDIATE PAST PRESIDENT
**Roy Cooper**
*North Carolina Attorney General*

EXECUTIVE DIRECTOR
**James McPherson**

September 16, 2011

Mr. Samuel Fifer
Counsel for Backpage.Com, LLC
SNR Denton US
233 South Wacker Drive
Suite 7800
Chicago, IL 60606-6306

**Re: Backpage.com's ongoing failure to effectively limit
prostitution and sexual trafficking activity on its website**

Mr. Fifer:

This letter is in response to Backpage.com's assurances, both public
and in private, concerning the company's facilitation of the sexual exploitation
of children, and prostitution. As our state's chief law enforcement officers,
we are increasingly concerned about human trafficking, especially the
trafficking of minors. Backpage.com is a hub for such activity.

While Backpage.com professes to have undertaken efforts to limit
advertisements for prostitution on its website, particularly those soliciting sex
with children, such efforts have proven ineffective. In May, for example, a
Dorchester, Massachusetts man was charged for forcing a 15-year-old girl into
a motel to have sex with various men for $100 to $150 an hour. To find
customers, the man posted a photo of the girl on Backpage.com. He was later
found with $19,000 in cash. In another example, prosecutors in Washington
state are handling a case in which teen girls say they were coerced, threatened
and extorted by two adults who marketed them on Backpage.com.

We have tracked more than 50 instances, in 22 states over three years,
of charges filed against those trafficking or attempting to traffic minors on
Backpage.com. These are only the stories that made it into the news; many
more instances likely exist. These cases often involve runaways ensnared by
adults seeking to make money by sexually exploiting them. In some cases,
minors are pictured in advertisements. In others, adults are pictured but
minors are substituted at the "point of sale" in a grossly illegal transaction.

Nearly naked persons in provocative positions are pictured in nearly
every adult services advertisement on Backpage.com and the site requires
advertisements for escorts, and other similar "services," to include hourly
rates. It does not require forensic training to understand that these
advertisements are for prostitution. This hub for illegal services has proven
particularly enticing for those seeking to sexually exploit minors.

2030 M Street, NW
Eighth Floor
Washington, DC 20036
Phone: (202) 326-6000
http://www.naag.org/

In a meeting with the Washington State Attorney General's Office, Backpage.com vice president Carl Ferrer acknowledged that the company identifies more than 400 "adult services" posts every month that may involve minors. This figure indicates the extent to which the trafficking of minors occurs on the site – the actual number of minors exploited through Backpage.com may be far greater. The company's figures, along with real world experience, demonstrate the extreme difficulty of excising a particularly egregious crime – the sexual exploitation of minors – on a site seemingly dedicated to the promotion of prostitution.

On a regional basis, there has been no change in postings for prostitution services on Backpage.com. For example, between July 28 and August 1, the Missouri Attorney General's Office on behalf of the Attorneys General Working Group conducted a review of adult content on Backpage.com. This review revealed numerous daily postings for "escort" services in the Adult>Escorts section. On Sunday, July 31, in the St. Louis-area alone, there were one hundred and three (103) new postings for such services. Other regional examples include:

- On August 1, the Washington State Attorney General's Office found one hundred and forty two (142) advertisements that are obviously for prostitutes in the Seattle area; and
- On August 2, even the Connecticut State Attorney General's Office found advertisements for prostitutes in the Connecticut area on the Springfield, Massachusetts and Rhode Island pages, circumventing Backpage.com's omission of a Connecticut adult section.

Missouri investigators further confirmed that Backpage.com's review procedures are ineffective in policing illegal activity. On July 28 and July 29, investigators flagged twenty five (25) new postings advertising prostitution in the St. Louis, Kansas City, Springfield, Columbia, and Jefferson City areas. By August 1, at least four days later, only five of these postings, or less than a quarter, had been removed.

The prominence of illegal content on Backpage.com conflicts with the company's representations about its content policies. Backpage.com claims that it "is committed to preventing those who are intent on misusing the site for illegal purposes."[1] To that end, Backpage.com represents that it has "implemented strict content policies to prevent illegal activity," and that the company has "inappropriate ad content removed."[2] Backpage.com also requires those who post "adult services" advertisements to click a link indicating they agree not to "post any solicitation directly or in 'coded' fashion for any illegal service exchanging sexual favors for money or other valuable consideration."[3] However, a cursory look at a relevant section demonstrates that this guideline is not enforced.[4]

In fact, in a meeting with the Washington State Attorney General's Office, Village Voice Media Board Member Don Moon readily admitted that prostitution advertisements regularly appear on Backpage.com. This shows that the stated representations about the site are in direct

---

[1] Backpage.com, Safety and Security Enhancements, http://blog.backpage.com/ (last visited August 05, 2011).
[2] Id.
[3] See Backpage.com, Posting Rules,
http://posting.seattle.backpage.com/gyrobase/classifieds/PostAdPPI.html/sea/posting.seattle.backpage.com/?section=4381&categ ory=4443&u=sea&serverName=posting.seattle.backpage.com&superRegion=Seattle (last visited August 05, 2011)..
[4] See Backpage.com, Seattle Escorts, http://seattle.backpage.com/FemaleEscorts/ (last visited August 05, 2011).

conflict with the reality of Backpage's business model: making money from a service illegal in every state, but for a few counties in Nevada.

Based on an independent assessment by the AIM Group, Backpage.com's estimated annual revenue from its adult services section is approximately $22.7 million. This figure, along with information you provided to the Working Group, indicates that Backpage.com devotes only a fraction of the revenue generated from its adult section advertisements to manual content review. We believe Backpage.com sets a minimal bar for content review in an effort to temper public condemnation, while ensuring that the revenue spigot provided by prostitution advertising remains intact. Though you have stated "all new ads are moderated by a staff member,"[5] there appear to be no changes in the volume of prostitution advertisements resulting from this "moderation."

As a practical matter, it is likely very difficult to accurately detect underage human trafficking on Backpage.com's adult services section, when to an outside observer, the website's sole purpose seems to be to advertise prostitution. That is why Craigslist's decision to shut down its adult services section was applauded as a clear way for it to eradicate advertising on its website that trafficked children for prostitution. It is also why we have called on Backpage.com to take similar action.

Furthermore, in lieu of a subpoena, the Working Group asks that Backpage.com provide additional information so that we may better understand the company's policies and practices. As noted earlier, Backpage.com represents that it has "strict content policies to prevent illegal activity."[6] We ask that Backpage.com substantiate this claim by:

1. Describing in detail Backpage.com's understanding of what precisely constitutes "illegal activity," including whether Backpage.com contends that advertisements for prostitution services do not constitute advertisements for "illegal activity;"
2. Providing a copy of such policies, including but not limited to the specific criteria used to determine whether an advertisement may involve illegal activity;
3. Providing the list of the prohibited terms for which Backpage.com is screening;
4. Describing in detail the individualized or hand review process undertaken by Backpage.com, including the number of personnel currently assigned to conduct such review;
5. Stating the number of advertisements in its adult section, including all subsections, submitted since September 1, 2010;
6. Stating the number of advertisements, in its adult section, including all subsections, submitted since September 1, 2010, which were subjected to individualized or hand review prior to publication; and
7. Stating the number of advertisements in its adult section, including all subsections, submitted since September 1, 2010, rejected _prior to_ publication because they involved or were suspected to involve illegal activity.

---

[5] Letter from Samuel Fifer, Attorney, SNR Denton, to Attorneys General Working Group (Jan. 27, 2011).
[6] Backpage.com, *supra* note 1.

Backpage.com's further represents that it has "inappropriate ad content removed."[7] We ask that Backpage.com substantiate this claim by:

8. Describing the criteria used to determine whether a published advertisement should be removed due to actual or suspected illegal activity;
9. Providing a copy of such policies that detail the criteria used to determine whether a published advertisement should be removed due to actual or suspected illegal activity;
10. Describing in detail the criteria Backpage.com uses, including but not limited to the number of user reports required, before a published advertisement is subjected to further review;
11. Providing a copy of such policies that detail the criteria Backpage.com uses, including but not limited to the number of user reports required, before a published advertisement is subjected to further review;
12. Stating the number of published advertisements posted since September 1, 2010 in its adult section, including all subsections, that Backpage.com has subjected to post publication review;
13. Stating the number of published advertisements posted since September 1, 2010 in its adult section, including all subsections, that Backpage.com removed following post publication review;
14. Stating the number of published advertisements posted since September 1, 2010 in its adult section, including all subsections, that Backpage.com *did not* remove following post publication review;
15. Stating the number of published advertisements posted since September 1, 2010 that were not subjected to further review by Backpage.com despite the receipt of user reports.

Lastly, Backpage.com also represents that it is "partnering with law enforcement and safety advocates/experts."[8]  We request that Backpage.com support this assertion by:

16. Identifying the specific "law enforcement [agencies] and safety advocates/experts" with whom Backpage.com has partnered and describing the actions taken by Backpage.com in connection with such partnerships;
17. Stating the number of advertisements submitted since September 1, 2010 that Backpage.com has reported pre-publication to local, state or federal law enforcement agencies, or to the National Center for Missing and Exploited Children's Cyber Tipline, because of actual or suspected illegal activity;
18. Stating the number of user reports of suspected exploitation of minors and/or human trafficking Backpage.com requires before subjecting a published advertisement to further review;
19. Stating the number of published advertisements posted since September 1, 2010 that Backpage.com removed in response to such user reports;
20. Stating the number of published advertisements posted since September 1, 2010 that Backpage.com reported to local, state or federal law enforcement agencies, or to the National Center for Missing and Exploited Children's Cyber Tipline, as a result of such reports; and

---

[7] Backpage.com, *supra* note 1.
[8] Backpage.com, *supra* note 1.

21. Stating the number of published advertisements posted since September 1, 2010 that
Backpage.com *did not* remove following a review prompted by user reports.

The National Association of Attorneys General requests Backpage.com's response on or
before September 14, 2011.

Respectfully,

George Jepsen
**Attorney General of Connecticut**

Rob McKenna
**Attorney General of Washington**

John J. Burns
**Alaska Attorney General**

Tom Horne
**Arizona Attorney General**

Kamala Harris
**California Attorney General**

Joseph R. "Beau" Biden III
**Delaware Attorney General**

Sam Olens
**Georgia Attorney General**

David Louie
**Hawaii Attorney General**

Lisa Madigan
**Illinois Attorney General**

Chris Koster
**Attorney General of Missouri**

Luther Strange
**Alabama Attorney General**

Fepulea'i Arthur Ripley Jr.
**American Samoa Attorney General**

Dustin McDaniel
**Arkansas Attorney General**

John W. Suthers
**Colorado Attorney General**

Pam Bondi
**Florida Attorney General**

Lenny Rapadas
**Guam Attorney General**

Lawrence Wasden
**Idaho Attorney General**

Greg Zoeller
**Indiana Attorney General**

Tom Miller
Iowa Attorney General

Derek Schmidt
Kansas Attorney General

Jack Conway
Kentucky Attorney General

James "Buddy" Caldwell
Louisiana Attorney General

William J. Schneider
Maine Attorney General

Douglas F. Gansler
Maryland Attorney General

Martha Coakley
Massachusetts Attorney General

Bill Schuette
Michigan Attorney General

Lori Swanson
Minnesota Attorney General

Jim Hood
Mississippi Attorney General

Steve Bullock
Montana Attorney General

Jon Bruning
Nebraska Attorney General

Catherine Cortez Masto
Nevada Attorney General

Michael Delaney
New Hampshire Attorney General

Paula T. Dow
New Jersey Attorney General

Gary King
New Mexico Attorney General

Eric Schneiderman
New York Attorney General

Roy Cooper
North Carolina Attorney General

Edward T. Buckingham
Northern Mariana Islands

Wayne Stenehjem
North Dakota Attorney General

Mike Dewine
Ohio Attorney General

Scott Pruitt
Oklahoma Attorney General

John Kroger
Oregon Attorney General

Peter Kilmartin
Rhode Island Attorney General

Marty J. Jackley
South Dakota Attorney General

Greg Abbott
Texas Attorney General

William H. Sorrell
Vermont Attorney General

Greg Phillips
Wyoming Attorney General

Linda L. Kelly
Pennsylvania Attorney General

Alan Wilson
South Carolina Attorney General

Robert E. Cooper, Jr.
Tennessee Attorney General

Mark Shurtleff
Utah Attorney General

Kenneth T. Cuccinelli, II
Virginia Attorney General

# EXHIBIT H

S-3824.1

### SENATE BILL 6251

State of Washington          62nd Legislature          2012 Regular Session

**By** Senators Kohl-Welles, Delvin, Eide, Chase, Pflug, Conway, Kline, Ranker, Stevens, Fraser, Regala, Nelson, Roach, and Frockt

Read first time 01/16/12.  Referred to Committee on Judiciary.

1    AN ACT Relating to advertising commercial sexual abuse of a minor;
2  adding a new section to chapter 9.68A RCW; creating a new section; and
3  prescribing penalties.

4  BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF WASHINGTON:

5    NEW SECTION.  **Sec. 1.**  The legislature finds it unacceptable that
6  Washington's children are being sold for sex in advertisements.  A 2008
7  Seattle human services department report estimated that there are three
8  hundred to five hundred children being exploited for sex in the Seattle
9  area alone each year.   The legislature finds that the practice of
10 escort services advertising includes minors who are being sold for sex,
11 a form of sex trafficking and commercial sexual abuse of minors.
12 According to the Seattle police department, since the beginning of
13 2010, at least twenty-two children have been advertised online in the
14 Seattle area for commercial sex and were recovered by the police
15 department.   The legislature is committed to eliminating sex
16 trafficking of minors in Washington state.

17    NEW SECTION.  **Sec. 2.**  A new section is added to chapter 9.68A RCW
18 to read as follows:

1    (1) A person commits the offense of advertising commercial sexual
2  abuse of a minor if he or she knowingly sells or offers to sell an
3  advertisement that would appear to a reasonable person to be for the
4  purpose of engaging in what would be commercial sexual abuse of a
5  minor, if occurring in this state.

6    (a) To commit the offense of advertising commercial sexual abuse of
7  a minor, a minor must be depicted in the advertisement, or commercial
8  sexual abuse of a minor must occur as a result of the advertisement.

9    (b) "Advertisement" means notice or an announcement in a public
10 medium promoting a product, service, or event, or publicizing a job
11 vacancy.

12   (c) "Minor" means an individual who is less than eighteen years
13 old.

14   (2) In a prosecution under this statute it is not a defense that
15 the defendant did not know the age of the minor depicted in the
16 advertisement.  It is a defense, which the defendant must prove by a
17 preponderance of the evidence, that at the time of the offense, the
18 defendant made a reasonable bona fide attempt to ascertain the true age
19 of the minor appearing in the advertisement by requiring, prior to
20 publication of the advertisement, production of a driver's license,
21 marriage license, birth certificate, or other governmental or
22 educational identification card or paper of the minor depicted in the
23 advertisement and did not rely solely on oral or written allegations of
24 the minor's age or the apparent age of the minor.

25   (3) Advertising commercial sexual abuse of a minor is a class C
26 felony.

--- END ---

# EXHIBIT I

This Washington

# Sen. Kohl-Welles: "I Think We Came Up With the Best Language We Could" On Backpage Law

Published Apr 4, 2012, 12:00pm
By Erica C. Barnett

In a piece for Salon today, Tracy Clark-Flory covers a new Washington State law that makes it a felony for web pages like the Village Voice Media-owned Backpage.com to knowingly publish ads for underage prostitutes. VVM, which owns *Seattle Weekly*, has been linked repeatedly to child sex trafficking; just this week, investment firm Goldman Sachs dumped its 16 percent share in VVM over concerns about ads for underage prostitutes on Backpage.

Clark-Flory's piece quotes state Sen. Jeanne Kohl-Welles (D-36), who says that she would "love to have the escort services section shut down completely as there [are] very likely individuals 18 and over who are lured, then trapped, too," but acknowledges, "I doubt our new law will accomplish that."

Kohl-Welles tells PubliCola that ultimately, "I would like to see [online escort advertising] banned. I don't come at this from a moralistic or prudish point of view, but I think that girls 18 years old and older get lured into and trapped into prostitution" too.

However, knowing that banning all escort ads would be a heavy lift, constitutionally speaking, Kohl-Welles says that her "original intent" in writing the law was to require escorts to provide proof that they were 18 or older in person. After state attorneys advised her that such a requirement might still violate the constitutional right to freedom of the press, she says, she and the bill's other sponsors rewrote the bill to require companies like Backpage to prove that they made a "reasonable attempt" at confirming escorts' ages.

"We kept asking, what does constitute a violation of freedom of speech and freedom of the press, what does constitute a violation of the federal Communications Decency Act?" Kohl-Welles says. "I ended up with something on the order of 15 or more drafts that I floated, circulated, and got input on. And so where we ended up with something people were comfortable with."

The ACLU, which initially had concerns about Kohl-Welles' proposal, was neutral on the final legislation.

Ultimately, Kohl-Welles says, she would have preferred that the legislation go further---to bar companies like Backpage from running ads for trafficked children, period, as opposed to only barring them from doing so "knowingly." However, she thinks the bill will help crack down on the worst offenders. "I believe that we came up with the best language that we could."

VVM has indicated that it plans to challenge the law in court; its attorney, Liz McDougall (a former lawyer for Craigslist, which stopped running escort ads under threat of legal action), told the *New York Times*, "There's going to have to be a challenge to it. Otherwise it would effectively shut down an enormous portion of the Internet that currently permits third-party content."

Seattle Met

Backpage has 70 percent of the market for online prostitution ads; the company earns more than $22 million a year from such ads.

File Under: Jeanne Kohl Welles, This Washington, Backpage.com, child sex trafficking

**EXHIBIT J**

SB 6251 - 2011-12

Page 1 of 2



WASHINGTON STATE LEGISLATURE

earch | Help |

Bill Information > SB 6251 - 2011-12

**Inside the Legislature**

★ Find Your Legislator
★ Visiting the Legislature
★ Agendas, Schedules and
   Calendars
★ Bill Information
★ Laws and Agency Rules
★ Legislative Committees
★ Legislative Agencies
★ Legislative Information
   Center
★ E-mail Notifications
★ Civic Education
★ History of the State
   Legislature

**Outside the Legislature**

★ Congress - the Other
   Washington
★ TVW
★ Washington Courts
★ OFM Fiscal Note Website





| Search by Bill Number | | |
| --- | --- | --- |
| 6251 | Search | |
| **Search the full text of a bill** | | |

# SB 6251 - 2011-12  (What is this?)

## Regulating advertising of commercial sexual abuse of a minor.

Go to documents...

Go to videos...

**History of the Bill**
as of Thursday, June 20, 2013 2:00 PM

Sponsors:   Senators Kohl-Welles, Delvin, Eide, Chase, Pflug, Conway, Kline, Ranker, Stevens, Fraser, Regala, Nelson, Roach, Frockt

**2012 REGULAR SESSION**

Jan 16   First reading, referred to Judiciary. (View Original Bill)

Jan 27   Public hearing in the Senate Committee on Judiciary at 1:30 PM. (Committee Materials)

Feb 1    Executive action taken in the Senate Committee on Judiciary at 1:30 PM. (Committee Materials)

Feb 2    **JUD - Majority; 1st substitute bill be substituted, do pass.** (View 1st Substitute) (Majority Report)
         Passed to Rules Committee for second reading.

Feb 7    Placed on second reading by Rules Committee.

Feb 8    **1st substitute bill substituted (JUD 12).** (View 1st Substitute)
         Floor amendment(s) adopted.
         Rules suspended. Placed on Third Reading.
         Third reading, passed; yeas, 49; nays, 0; absent, 0; excused, 0. (View Roll Calls) (View 1st Engrossed)

**IN THE HOUSE**

Feb 10   First reading, referred to Public Safety & Emergency Preparedness.

Feb 15   Public hearing in the House Committee on Public Safety & Emergency Preparedness at 1:30 PM. (Committee Materials)

Feb 21   Executive action taken in the House Committee on Public Safety & Emergency Preparedness at 10:00 AM. (Committee Materials)
         PSEP - Executive action taken by committee.
         PSEP - Majority; do pass. (Majority Report)
         Referred to Rules 2 Review.

Feb 24  Placed on second reading by Rules Committee.
Feb 27  Rules suspended. Placed on Third Reading.
        Third reading, passed; yeas, 96; nays, 0; absent, 0; excused,
        2. (View Roll Calls)

**IN THE SENATE**
Feb 28  President signed.

**IN THE HOUSE**
Feb 29  Speaker signed.

**OTHER THAN LEGISLATIVE ACTION**
Mar 5   Delivered to Governor. (View Bill as Passed Legislature)
Mar 29  Governor signed.
        Chapter 138, 2012 Laws. (View Session Law)
        Effective date 6/7/2012.


Go to history...

**Available Documents**

| Bill Documents | Bill Digests | Bill Reports |
|---|---|---|
| Original Bill | Bill Digest | Senate Bill Report (Orig.) |
| Substitute Bill (JUD 12) | Substitute Bill Digest | Senate Bill Report |
| Engrossed Substitute Bill as Passed Legislature | | Engrossed Substitute Senate Bill Report |
| Session Law | | Engrossed Substitute House Bill Analysis 2012 |
| | | Engrossed Substitute House Bill Report |
| | | Final Bill Report |

**Amendments**

| Amendment Name | Num | Sponsor | Type | Description | Action |
|---|---|---|---|---|---|
| 6251-S AMS KLIN S4620.2 | 35 | Kline | Floor | Striker | ADOPTED 02/08/2012 |

**Fiscal Note (Available)**
Get Fiscal Note


Go to history...

**Available Videos** (Video links take you to the TVW website)
Live video is available at the stated time. Archived video becomes available
approximately two hours after the close of the hearing or floor session.
Jan 27, 2012 Senate Judiciary at 1:30 PM
Feb 1, 2012 Senate Judiciary at 1:30 PM
Feb 15, 2012 House Public Safety & Emergency Preparedness at 1:30 PM
Feb 21, 2012 House Public Safety & Emergency Preparedness at 10:00 AM

# EXHIBIT K

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9    BACKPAGE.COM, LLC,                              )
                                                     )    No. C12-954-RSM
10                      Plaintiff,                    )
                                                     )    **TEMPORARY RESTRAINING**
11          v.                                       )    **ORDER ENJOINING**
                                                     )    **ENFORCEMENT OF**
12   ROB MCKENNA, Attorney General of the            )    **WASHINGTON SENATE BILL**
     State of Washington; RANDY J. FLYCKT,           )    **6251**
13   Adams County Prosecuting Attorney;              )
     BENJAMIN C. NICHOLS, Asotin County              )
14   Prosecuting Attorney; ANDREW K. MILLER,         )
     Benton County Prosecuting Attorney; GARY        )
15   A. RIESEN, Chelan County Prosecuting            )
     Attorney; DEBORAH S. KELLY, Clallam             )
16   County Prosecuting Attorney; ANTHONY F.         )
     GOLIK, Clark County Prosecuting Attorney;       )
17   REA L. CULWELL, Columbia County                 )
     Prosecuting Attorney; SUSAN I. BAUR,            )
18   Cowlitz County Prosecuting Attorney;            )
     STEVEN M. CLEM, Douglas County                  )
19   Prosecuting Attorney; MICHAEL SANDONA,          )
     Ferry County Prosecuting Attorney; SHAWN P.     )
20   SANT, Franklin County Prosecuting Attorney;     )
     MATTHEW L. NEWBERG, Garfield County            )
21   Prosecuting Attorney; ANGUS LEE, Grant          )
     County Prosecuting Attorney; H. STEWARD         )
22   MENEFEE, Grays Harbor County Prosecuting        )
     Attorney;                                       )
23                                                   )
                                                     )
24          *(Continued on Page 2)*                  )
                                                     )
25
26
27

TEMPORARY RESTRAINING ORDER — 1

*(Continued from Page 1)*

| | |
|---|---|
| 1 | |
| 2 | GREGORY M. BANKS, Island County )<br>Prosecuting Attorney; SCOTT W. ) |
| 3 | ROSEKRANS, Jefferson County Prosecuting )<br>Attorney; DAN SATTERBERG, King County ) |
| 4 | Prosecuting Attorney; RUSSELL D. HAUGE, )<br>Kitsap County Prosecuting Attorney; ) |
| 5 | GREGORY L. ZEMPEL, Kittitas County ) |
| 6 | Prosecuting Attorney; LORI L. HOCTOR, )<br>Klickitat County Prosecuting Attorney; ) |
| 7 | JONATHAN L. MEYER, Lewis County )<br>Prosecuting Attorney; JEFFREY S. ) |
| 8 | BARKDULL, Lincoln County Prosecuting )<br>Attorney; MICHAEL K. DORCY, Mason ) |
| 9 | County Prosecuting Attorney; KARL F. ) |
| 10 | SLOAN, Okanogan County Prosecuting )<br>Attorney; DAVID J. BURKE, Pacific County ) |
| 11 | Prosecuting Attorney; THOMAS A. )<br>METZGER, Pend Oreille County Prosecuting ) |
| 12 | Attorney; MARK LINDQUIST, Pierce ) |
| 13 | County Prosecuting Attorney; RANDALL K. )<br>GAYLORD, San Juan County Prosecuting ) |
| 14 | Attorney; RICHARD WEYRICH, Skagit )<br>County Prosecuting Attorney; ADAM N. ) |
| 15 | KICK, Skamania County Prosecuting ) |
| 16 | Attorney; MARK K. ROE, Snohomish )<br>County Prosecuting Attorney; STEVEN J. ) |
| 17 | TUCKER, Spokane County Prosecuting )<br>Attorney; TIMOTHY D. RASMUSSEN, ) |
| 18 | Stevens County Prosecuting Attorney; JON ) |
| 19 | TUNHEIM, Thurston County Prosecuting )<br>Attorney; DANIEL H. BIGELOW, ) |
| 20 | Wahkiakum County Prosecuting Attorney; )<br>JAMES L. NAGLE, Walla Walla County ) |
| 21 | Prosecuting Attorney; DAVID S. ) |
| 22 | McEACHRAN, Whatcom County )<br>Prosecuting Attorney; DENIS P. TRACY, ) |
| 23 | Whitman County Prosecuting Attorney; )<br>JAMES P. HAGARTY, Yakima County ) |
| 24 | Prosecuting Attorney, ) |
| 25 | Defendants, in their ) |
| 26 | official capacities. ) |
| 27 | |

TEMPORARY RESTRAINING ORDER — 2

1      This matter came before the Court on the Motion of Plaintiff Backpage.com, LLC

2 ("Backpage.com") for a Temporary Restraining Order and Preliminary Injunction. Having

3 considered the Motion, materials filed in support of the Motion, as well as the Complaint

4 filed concurrently by Backpage.com, the Court finds, concludes and orders as follows:

5      1.     Washington Senate Bill 6251 ("SB 6251") will take effect June 7, 2012

6 unless enjoined by this Court.

7      2.     Backpage.com has provided notice of its Motion to all Defendants. *See*

8 Declaration of Ambika K. Doran ¶ 2 & Ex. A.

9      3.     Defendants have not responded to Backpage.com's Motion or Complaint,

10 but, for the reasons set forth below, the Court determines that it is appropriate to maintain

11 the status quo and enter a Temporary Restraining Order, as set forth herein.

12      4.     Backpage.com has shown a likelihood of success on the merits of its claim,

13 pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, as well

14 irreparable harm, the balance of equities tipping strongly in its favor, and injury to the

15 public interest, justifying injunctive relief.

16      THEREFORE, the Court ORDERS as follows:

17      (A)    Defendants are immediately RESTRAINED from taking any actions to

18 enforce SB 6251 or pursue prosecution under the law in any way;

19      (B)    This Temporary Restraining Order will issue without the requirement of any

20 security bond.

21      (C)    This Temporary Restraining Order shall take effect immediately and remain

22 in effect for 14 days after entry of this Order, unless the effective period is extended by

23 consent of the parties or by further Order of the Court.

24      **(D)    The Court hereby sets Backpage.com's motion for a preliminary**

25 **injunction for a hearing on Friday, June 15, 2012 at 10:30 a.m.** The parties shall adhere

26 to the following expedited briefing schedule:

27

TEMPORARY RESTRAINING ORDER — 3

  i. Any Response to Plaintiff's motion shall be filed with the Court no later than Monday, June 11, 2012.

  ii. Any Reply to Defendants' Response shall be filed with the Court no later than Wednesday, June 13, 2012.

(E) **Backpage.com shall certify no later than Wednesday, June 6, 2012, at 9:00 a.m. Pacific Standard Time that it has emailed a courtesy copy of this Order to all Defendants, and otherwise made a good faith effort to ensure that all Defendants, who have yet to appear in the action, have received notice that this Order has been filed.**

SO ORDERED this 5 day of June 2012.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

TEMPORARY RESTRAINING ORDER — 4

# EXHIBIT L

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BACKPAGE.COM, LLC,                          )
                                            )   No. 2:12-cv-000954-RSM
                    Plaintiff,              )
                                            )   **STIPULATION AND ORDER**
and                                         )   **FOR ENTRY OF FINAL**
                                            )   **JUDGMENT ENJOINING**
THE INTERNET ARCHIVE,                       )   **ENFORCEMENT OF RCW**
                                            )   **4.68A.104 (WASHINGTON**
                    Plaintiff-Intervenor,   )   **SENATE BILL 6251)**
                                            )
          v.                                )
                                            )
ROB MCKENNA, Attorney General of the        )
State of Washington, *et al.*               )
                                            )
                    Defendants, in their    )
                    official capacities.    )
                                            )

## <u>STIPULATION</u>

The undersigned parties, by and through their counsel of record, hereby stipulate and agree that:

1.      The Court will enter final judgment in this matter, permanently enjoining any enforcement or prosecution of any person under RCW 4.68A.104 (the codified version of Washington Engrossed Substitute Senate Bill 6251, Chapter 138, Washington Laws of 2012), declaring that the statute is unconstitutional and violates federal law, and awarding costs and attorneys' fees to Plaintiffs, as set forth in paragraph 2, below.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

2.      Plaintiffs are entitled to receive an award of costs and attorneys' fees pursuant to 42 U.S.C. § 1988 in the amount of $200,000, to be paid by the Office of the Attorney General acting in its official capacity on behalf of the State of Washington within thirty (30) days of entry of final judgment by the Court.

3.      With this Stipulation, the undersigned parties hereby settle all claims and potential claims related to this litigation, and no party will appeal or otherwise challenge an order of the Court as set forth below or entry of final judgment in this matter.

4.      After entry of final judgment in this matter, the Washington Attorney General's Office will work with the Washington State Legislature to repeal the current unconstitutional version of RCW 4.68A.104 from the Laws of the State of Washington.

### ORDER

Based on the foregoing Stipulation and the Court's prior orders, findings and conclusions in this action, it is hereby ORDERED, ADJUDGED and DECREED that:

1.      Plaintiffs have standing to pursue the claims in this action pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201.

2.      The Court declares that RCW 4.68A.104 (the codified version of Washington Engrossed Substitute Senate Bill 6251, Chapter 138, Washington Laws of 2012):

     a.      Violates and is preempted by section 230 of the Communications Decency Act, 47 U.S.C. § 230;

     b.      Violates the First and Fourteenth Amendments to the United States Constitution because it lacks an appropriate element of scienter to avoid chilling protected speech;

     c.      Violates the First and Fourteenth Amendments because the law is unconstitutionally vague;

     d.      Violates the First and Fourteenth Amendments because the law is overbroad and not narrowly tailored to the State's asserted governmental interests; and

STIPULATION AND ORDER OF FINAL JUDGMENT ENJOINING
ENFORCEMENT OF RCW 4.68A.104 — 2

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1        e.      Violates the dormant Commerce Clause, U.S. Const., Art. 1, § 8.

2      3.     Because RCW 4.68A.104 will result in the loss or derogation of First

3  Amendment and other constitutional and federal statutory rights; irreparable harm would

4  result to online service providers and to the public generally if the statute were allowed to

5  take effect; the balance of equities favors granting permanent injunctive relief; and an

6  injunction is in the public interest; the Court therefore enters a PERMANENT

7  INJUNCTION as follows:

8        a.      Defendants and all other persons are permanently enjoined from

9      enforcement of RCW 4.68A.104 in any way, including but not limited to taking any

10     actions to enforce the statute or pursuing prosecution of any person under the statute

11     in any way;

12        b.     This permanent injunction shall take effect as of the date of this

13     Order; and

14        c.     The Clerk of Court is directed to enter a final judgment in accordance

15     with this Order, terminating this action.

16      4.     The Court awards Plaintiffs costs and attorneys' fees pursuant to 42 U.S.C.

17  § 1988 in the amount of $200,000 and finds that this award is just and reasonable.  This

18  award shall constitute a judgment against the Office of the Attorney General acting in its

19  official capacity on behalf of the State of Washington and shall resolve all claims for

20  attorneys' fees and costs against the undersigned Defendants.  The undersigned parties

21  respectively shall bear any other costs and fees incurred in connection with this action.

22

23     SO ORDERED this 10 day of December 2012.

24

25

26     RICARDO S. MARTINEZ

27     UNITED STATES DISTRICT JUDGE

STIPULATION AND ORDER OF FINAL JUDGMENT ENJOINING
ENFORCEMENT OF RCW 4.68A.104 — 3

1

2  Presented and agreed to by:
   DAVIS WRIGHT TREMAINE LLP
3
    _s/ James C. Grant_____
4  James C. Grant, WSBA No. 14358
   Ambika K. Doran, WSBA No. 38237
5
    _s/ Elizabeth L. McDougall_____
6  Elizabeth L. McDougall, WSBA No. 27026
   General Counsel, Village Voice Media Holdings, LLC
7
        Attorneys for Plaintiff Backpage.com, LLC
8
9  ELECTRONIC FRONTIER FOUNDATION

10  _s/ Matthew Zimmerman_____
   Matthew Zimmerman (admitted *pro hac vice*)
11
12 FOCAL PLLC

13  _s/ Venkat Balasubramani_____
   Venkat Balasubramani, WSBA No. 28269
14
        Attorneys for Plaintiff-Intervenor The Internet Archive
15
16 ROBERT M. MCKENNA, Attorney General of the State of Washington

17  _s/ Lana Weinmann_____
   Lana Weinmann, WSBA No. 21393
18 Senior Assistant Attorney General

19       Attorney for Attorney General Robert M. McKenna

20 DANIEL T. SATTERBERG, King County Prosecuting Attorney

21  _s/ David Eldred_____
22 David Eldred, WSBA No. 26125
   Senior Deputy Prosecuting Attorneys
23
        Attorneys for Defendant Prosecuting Attorneys
24

25

26

27

STIPULATION AND ORDER OF FINAL JUDGMENT ENJOINING
ENFORCEMENT OF RCW 4.68A.104 — 4

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

# EXHIBIT M

# United States District Court
### WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

BACKPAGE.COM, LLC,

          Plaintiff,

And                                  **JUDGMENT IN A CIVIL CASE**

                                    CASE NUMBER:  C12-954RSM

THE INTERNET ARCHIVE,

          Plaintiff-Intervenor,

v.

ROB MCKENNA, Attorney General of the

State of Washington, *et al.*

          Defendants, in their
          official capacities.

---

  \_\_    **Jury Verdict.** This action came before the Court for a trial by jury.  The issues have been tried and the jury has rendered its verdict.

  **X**    **Decision by Court.** This action came to consideration before the Court.  The issues have been considered and a decision has been rendered.

THE COURT HAS ORDERED THAT

      1.  Plaintiffs be awarded declaratory and permanent injunctive relief in

accordance with the Court's Orders of December 10, 2012; and

2.  Plaintiffs recover $200,000 for costs and attorneys' fees from the Office of the Attorney General, acting in its official capacity on behalf of the State of Washington.

This action was decided by Judge Ricardo S. Martinez based on the parties' Stipulations and Proposed Orders for Entry of Final Judgment, filed on December 5, 2012 and the prior proceedings in the action, including Plaintiffs' Motions for Preliminary Injunction and the Court's Order Granting Plaintiffs' Motions for Preliminary Injunction, dated July 27, 2012 (Dkt. #69).

Dated this 10 day of December 2012.

WILLIAM McCOOL
Clerk

/s/ Rhonda Stiles
Deputy Clerk

# EXHIBIT N

CERTIFICATION OF ENROLLMENT

**SENATE BILL 5488**


Chapter 9, Laws of 2013


63rd Legislature
2013 Regular Session


CRIMES--SEX TRAFFICKING--INTERNET ADVERTISEMENTS


EFFECTIVE DATE: 07/28/13


Passed by the Senate March 4, 2013
    YEAS 49   NAYS 0


BRAD OWEN
**President of the Senate**

Passed by the House April 3, 2013
    YEAS 97   NAYS 0


FRANK CHOPP
**Speaker of the House of Representatives**


Approved April 17, 2013, 1:41 p.m.


JAY INSLEE
**Governor of the State of Washington**

CERTIFICATE

I, Hunter G. Goodman, Secretary of the Senate of the State of Washington, do hereby certify that the attached is **SENATE BILL 5488** as passed by the Senate and the House of Representatives on the dates hereon set forth.


HUNTER G. GOODMAN
**Secretary**


FILED

April 17, 2013


**Secretary of State
State of Washington**

**SENATE BILL 5488**

Passed Legislature - 2013 Regular Session

**State of Washington        63rd Legislature        2013 Regular Session**

**By** Senators Kohl-Welles, Padden, Kline, Darneille, Fraser, Ranker, Keiser, Delvin, Carrell, McAuliffe, Chase, and Conway

Read first time 01/31/13.  Referred to Committee on Law & Justice.

1   AN ACT Relating to establishing an enhanced penalty for the use of
2   an internet advertisement to facilitate the commission of a
3   sex-trafficking crime; adding a new section to chapter 9.68A RCW;
4   repealing RCW 9.68A.104; repealing 2012 c 138 s 1 (uncodified); and
5   repealing 2012 c 138 s 3 (uncodified).

6   BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF WASHINGTON:

7   <u>NEW SECTION.</u>  **Sec. 1.**  A new section is added to chapter 9.68A RCW
8   to read as follows:
9       (1) In addition to all other penalties under this chapter, a person
10   convicted of an offense under RCW 9.68A.100, 9.68A.101, or 9.68A.102
11   shall be assessed an additional fee of five thousand dollars per
12   offense when the court finds that an internet advertisement in which
13   the victim of the crime was described or depicted was instrumental in
14   facilitating the commission of the crime.
15       (2) For purposes of this section, an "internet advertisement" means
16   a statement in electronic media that would be understood by a
17   reasonable person to be an implicit or explicit offer for sexual
18   contact or sexual intercourse, both as defined in chapter 9A.44 RCW, in
19   exchange for something of value.

1      (3) Amounts collected as penalties under this section shall be

2  deposited in the account established under RCW 43.63A.740.

3      <u>NEW SECTION.</u>  **Sec. 2.**  The following acts or parts of acts are each

4  repealed:

5      (1) RCW 9.68A.104 (Advertising commercial sexual abuse of a minor--

6  Penalty) and 2012 c 138 s 2;

7      (2) 2012 c 138 s 1 (uncodified); and

8      (3) 2012 c 138 s 3 (uncodified).

Passed by the Senate March 4, 2013.
Passed by the House April 3, 2013.
Approved by the Governor April 17, 2013.
Filed in Office of Secretary of State April 17, 2013.

# EXHIBIT O

**Senate Judiciary Committee  1**

Amendment No.  1 to SB2371

<u>Beavers</u>
**Signature of Sponsor**

AMEND   Senate Bill No. 2371                    House Bill No. 2493*

by deleting the language after the enacting clause and by substituting instead the following:

SECTION 1.  Tennessee Code Annotated, Section 39-13-301, is amended by adding

the following as a new, appropriately designated subdivisions:

( ) "Advertisement" means a notice or an announcement in a public medium

promoting a product, service, or event, or publicizing a job vacancy;

( ) "Commercial sex act" means any sexual act for which something of value is

given or received;

( ) "Minor" means an individual who is less than eighteen years old;

SECTION 2.  Tennessee Code Annotated, Section 39-13-309, is amended by deleting

the section in its entirety and by substituting instead the following:

39-13-309.

(a)  A person commits the offense of trafficking a person for a commercial

sex act who:

(1)  Knowingly subjects, attempts to subject, benefits from or

attempts to benefit from another person's provision of a commercial sex

act; or

(2)  Recruits, entices, harbors, transports, provides, or obtains by

any other means, another person for the purpose of providing a

commercial sex act.

Senate Judiciary Committee  1

Amendment No.  1 to SB2371

<u>Beavers</u>
Signature of Sponsor

AMEND   Senate Bill No. 2371                    House Bill No. 2493*

(b)  For purposes of subdivision (a)(2), such means may include, but are not limited to:

(1)  Causing or threatening to cause physical harm to the person;

(2)  Physically restraining or threatening to physically restrain the person;

(3)  Abusing or threatening to abuse the law or legal process;

(4)  Knowingly destroying, concealing, removing, confiscating or possessing any actual or purported passport or other immigration document, or any other actual or purported government identification document, of the person;

(5)  Using blackmail or using or threatening to cause financial harm for the purpose of exercising financial control over the person; or

(6)  Facilitating or controlling a person's access to a controlled substance.

(c)  A violation of subsection (a) is a Class B felony, except where the victim of the offense is a child under fifteen (15) years of age, or where the offense occurs on the grounds or facilities or within one thousand feet (1,000') of a public or private school, secondary school, preschool, child care agency, public library, recreational center, or public park, a violation of subsection (a) is a Class A felony.

SECTION 3.Tennessee Code Annotated, Title 39, Chapter 13, Part 3, is amended by adding the following as a new section thereto:

39-13-314.

SA1197

(a)  A person commits the offense of advertising commercial sexual abuse of a minor if the person knowingly sells or offers to sell an advertisement that would appear to a reasonable person to be for the purpose of engaging in what would be a commercial sex act, as defined in § 39-13-301, with a minor.

(b)

(1)  Advertising commercial sexual abuse of a minor is a class C felony.

(2)  In addition to any authorized period of incarceration, advertising commercial sexual abuse of a minor is punishable by a minimum fine of ten thousand dollars ($10,000).

(c)  In a prosecution under this statute, it is not a defense that the defendant did not know the age of the minor depicted in the advertisement.  It is a defense, which the defendant must prove by a preponderance of the evidence, that at the time of the offense, the defendant made a reasonable bona fide attempt to ascertain the true age of the minor appearing in the advertisement by requiring, prior to publication of the advertisement, production of a driver's license, marriage license, birth certificate, or other governmental or educational identification card or paper of the minor depicted in the advertisement and did not rely solely on oral or written allegations of the minor's age or the apparent age of the minor.

SECTION 4.  Tennessee Code Annotated, Section 40-39-202, is amended in subdivision (30)(Y) by deleting the language "for sexual servitude" and by substituting instead the language "for a commercial sex act".

SECTION 5.  This act shall take effect July 1, 2012, the public welfare requiring it.

# EXHIBIT P



## State of Tennessee
## PUBLIC CHAPTER NO. 1075

SENATE BILL NO. 2371

**By Marrero, Harper, Summerville, Burks, Ford, Yager**

Substituted for: House Bill No. 2493

By Coley, Jones, Floyd, Sparks, Maggart, Swann, Todd, Brown, Gilmore, Richardson, Sontany, Hardaway, Parkinson, White

AN ACT to amend Tennessee Code Annotated, relative to commercial sex acts.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF TENNESSEE:

SECTION 1. Tennessee Code Annotated, Section 39-13-301, is amended by adding the following as new, appropriately designated subdivisions:

( ) "Advertisement" means a notice or an announcement in a public medium promoting a product, service, or event, or publicizing a job vacancy;

( ) "Commercial sex act" means any sexual act for which something of value is given or received;

( ) "Minor" means an individual who is less than eighteen years old;

SECTION 2. Tennessee Code Annotated, Section 39-13-309, is amended by deleting the section in its entirety and by substituting instead the following:

39-13-309.

(a) A person commits the offense of trafficking a person for a commercial sex act who:

(1) Knowingly subjects, attempts to subject, benefits from or attempts to benefit from another person's provision of a commercial sex act; or

(2) Recruits, entices, harbors, transports, provides, or obtains by any other means, another person for the purpose of providing a commercial sex act.

(b) For purposes of subdivision (a)(2), such means may include, but are not limited to:

(1) Causing or threatening to cause physical harm to the person;

(2) Physically restraining or threatening to physically restrain the person;

(3) Abusing or threatening to abuse the law or legal process;

(4) Knowingly destroying, concealing, removing, confiscating or possessing any actual or purported passport or other immigration document, or any other actual or purported government identification document, of the person;

(5) Using blackmail or using or threatening to cause financial harm for the purpose of exercising financial control over the person; or

(6) Facilitating or controlling a person's access to a controlled substance.

SB 2371

(c) A violation of subsection (a) is a Class B felony, except where the victim of the offense is a child under fifteen (15) years of age, or where the offense occurs on the grounds or facilities or within one thousand feet (1,000') of a public or private school, secondary school, preschool, child care agency, public library, recreational center, or public park, a violation of subsection (a) is a Class A felony.

SECTION 3. Tennessee Code Annotated, Title 39, Chapter 13, Part 3, is amended by adding the following as a new section thereto:

39-13-314.

(a) A person commits the offense of advertising commercial sexual abuse of a minor if the person knowingly sells or offers to sell an advertisement that would appear to a reasonable person to be for the purpose of engaging in what would be a commercial sex act, as defined in § 39-13-301, with a minor.

(b)(1) Advertising commercial sexual abuse of a minor is a Class C felony.

(2) In addition to any authorized period of incarceration, advertising commercial sexual abuse of a minor is punishable by a minimum fine of ten thousand dollars ($10,000).

(c) In a prosecution under this statute, it is not a defense that the defendant did not know the age of the minor depicted in the advertisement. It is a defense, which the defendant must prove by a preponderance of the evidence, that at the time of the offense, the defendant made a reasonable bona fide attempt to ascertain the true age of the minor appearing in the advertisement by requiring, prior to publication of the advertisement, production of a driver license, marriage license, birth certificate, or other governmental or educational identification card or paper of the minor depicted in the advertisement and did not rely solely on oral or written allegations of the minor's age or the apparent age of the minor.

SECTION 4. Tennessee Code Annotated, Section 40-39-202, is amended in subdivision (30)(Y) by deleting the language "for sexual servitude" and by substituting instead the language "for a commercial sex act".

SECTION 5. This act shall take effect July 1, 2012, the public welfare requiring it.

SENATE BILL NO.   2371

PASSED:        May 1, 2012

RON RAMSEY
*SPEAKER OF THE SENATE*

BETH HARWELL, *SPEAKER*
*HOUSE OF REPRESENTATIVES*

APPROVED this ___21st___ day of ___May___ 2012

BILL HASLAM, *GOVERNOR*

# EXHIBIT Q

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE, AT NASHVILLE

BACKPAGE.COM, LLC,                          )
                                            )
           Plaintiff,                       )
                                            )
v.                                          )   Case No. 3:12-cv-000654
                                            )
ROBERT E. COOPER, JR., Attorney General of  )
the State of Tennessee; and TONY CLARK;     )
BARRY STAUBUS; C. BERKELEY BELL;            )   Judge Nixon
JAMES DUNN; MIKE FLYNN; RANDALL             )
NICHOLS; DAVE CLARK; WILLIAM PAUL           )   Magistrate Judge Griffin
PHILLIPS; RUSSELL JOHNSON; STEVEN           )
BEBB; WILLIAM H. COX, III; J. MICHAEL       )
TAYLOR; RANDY YORK; MICKEY LAYNE;           )
TOM P. THOMPSON; WILLIAM WHITESELL;         )
CHUCK CRAWFORD; L. RAY WHITLEY;             )
JOHN W. CARNEY; VICTOR S. JOHNSON,          )
III; KIM HELPER; MIKE BOTTOMS; DAN M.       )
ALSOBROOKS; HANSEL MCCADAMS;                )
MIKE DUNAVANT; JAMES G. WOODALL;            )
THOMAS A. THOMAS; GARRY BROWN;              )
PHILLIP BIVENS; AMY P. WEIRICH; and         )
LISA ZAVAGIANNIS; Tennessee District        )
Attorneys for the 1st through 31st Judicial )
Districts, respectively,                    )
                                            )
           Defendants, in their official    )
           capacities.                      )

**STIPULATION AND [PROPOSED] ORDER REGARDING SCHEDULE FOR
PLAINTIFF BACKPAGE.COM, LLC'S
MOTION FOR PRELIMINARY INJUNCTION**

**STIPULATON**

The parties, by and through their undersigned counsel, stipulate and agree as follows:

1.       On June 27, 2012, Plaintiff Backpage.com, LLC ("Backpage.com") filed a

Complaint and a Motion for Temporary Restraining Order and Preliminary Injunction, asserting

that Tennessee Public Chapter 1075 ("Pub. Ch. 1075") violates section 230 of the Communications Decency Act and the First and Fourteenth Amendments and Commerce Clause of the United States Constitution. (Dkt. Nos. 1, 2).

2.  The Office of the Tennessee Attorney General represents all Defendants in this action, has entered a Notice of Appearance on behalf of all Defendants, and has authority to enter into this Stipulation and Proposed Order on their behalf.

3.  The Court held a hearing in this matter on June 29, 2012. The Court asked the parties to work together to agree on a schedule for briefing and hearing on Backpage.com's Motion for Preliminary Injunction.

4.  Counsel thereafter conferred, as the Court requested. In these communications, Defendants' counsel repeated their commitment that Defendants would not bring any prosecution or otherwise take any action to enforce Pub. Ch. 1075 against Backpage.com, or its corporate parents (New Times Media LLC and Village Voice Media Holding, LLC), or its or their officers, directors, employees or agents, with regard to any activities, actions or conduct of Backpage.com during the pendency of this action.

5.  Backpage.com contends that it has standing to assert constitutional challenges to Pub. Ch. 1075 in this action on behalf of other online service providers, publishers, Internet users, and the public as a whole, as well as itself. Accordingly, Backpage.com agrees to the schedule for its Motion for Preliminary Injunction as set forth below, contingent on the parties' agreement that nothing herein shall prejudice or waive Backpage.com's rights to assert such standing or to seek declaratory and/or injunctive relief on behalf of others.

6.  Defendants agree to the following schedule for Backpage.com's Motion for Preliminary Injunction based on the parties' agreement that nothing herein shall prejudice or

2

waive their rights to contest Backpage.com's standing to seek injunctive relief, except that Defendants agree that they will not assert or contend that Backpage.com's acceptance of the schedule without entry of a prior Temporary Restraining Order represents a concession or acceptance of Defendant's arguments in any regard.

    7.    Subject to the foregoing, the parties agree that the schedule for briefing and hearing on Backpage.com's Motion for Preliminary Injunction should be as follows (recognizing that the hearing date and time should be scheduled at the Court's convenience after the close of briefing, with the additional request that the hearing not be set for August 10, 2012, because of a conflict on that date for Plaintiff's counsel):

| | |
|---|---|
| Defendants' Opposition to the Motion due: | July 23, 2012 |
| Backpage.com's Reply on the Motion due: | August 6, 2012 |
| Hearing on the Motion: | August 9, 2012, 10:00 a.m. |

## [PROPOSED] ORDER

Based on the foregoing Stipulation, the Court ORDERS that the schedule for briefing and hearing on Plaintiff Backpage.com's Motion for Preliminary Injunction shall be as follows:

| | |
|---|---|
| Defendants' Opposition to the Motion due: | July 23, 2012 |
| Backpage.com's Reply on the Motion due: | August 6, 2012 |
| Hearing on the Motion: | August ___, 2012, at _____ a.m./p.m. |

SO ORDERED at ___ a.m./p.m. this _____ day of July, 2012.

_____

John T. Nixon
UNITED STATES DISTRICT JUDGE

3

Presented by:

s/ Craig L. Meredith
Lucian T. Pera (Tenn. BPR No. 11641)
ADAMS AND REESE LLP
80 Monroe Avenue, Suite 700
Memphis, TN 38103
Telephone: 901-524-5278
Facsimile: 901-524-5378
Lucian.Pera@arlaw.com

Craig L. Meredith (Tenn. BPR No. 29506)
ADAMS AND REESE LLP
424 Church Street, Suite 2800
Nashville, Tennessee 37219
Tel: (615) 259-1067
Fax: (615) 687-1508
Craig.Meredith@arlaw.com

James C. Grant (admitted pro hac vice)
Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101
Telephone: 206/757-8096
Facsimile: 206/757-7096
jimgrant@dwt.com

*Attorneys for Plaintiff*

s/ Lyndsay F. Sanders
Michael A. Meyer (Tenn. BPR No. 9230)
Lyndsay F. Sanders (Tenn. BPR No. 22849)
Rachel Jrade-Rice (Tenn. BPR No. 29245, *application for admission pending)*
Office of the Attorney General
P.O. Box 20207
Nashville, TN 37202-0207
Telephone: (615) 741-3491
Facsimile: (615) 741-2009
Michael.Meyer@ag.tn.gov
Lyndsay.Sanders@ag.tn.gov
Rachel.Jrade-Rice@ag.tn.gov

*Attorneys for Defendants*

4

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been sent via the Court's CM/ECF system to all parties and counsel indicated on the electronic filing receipt. Copies may also be accessed through the Court's electronic filing system.

This 2nd day of July, 2012.

s/ Craig L. Meredith

5

# EXHIBIT R

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

BACKPAGE.COM, LLC,                    )
                                      )
        Plaintiff,                    )
                                      )      No. 3:12-cv-00654
v.                                    )      Judge Nixon
                                      )      Magistrate Judge Griffin
ROBERT E. COOPER, JR., et al.,        )
                                      )
        Defendants.                   )

## ORDER

Pending before the Court is Plaintiff Backpage.com, LLC's Motion to Convert

Preliminary Injunction Order into Permanent Injunction and Final Judgment ("Motion"),

requesting the Court enter summary judgment in its favor and convert the Court's previous Order

granting a preliminary injunction against Tenn. Code Ann. § 39-13-314 into a permanent

injunction. (Doc. No. 51.)  Defendants have filed a Notice of No Opposition stating that they do

not oppose the Motion. (Doc. No. 54.)

Summary judgment is rendered when "there is no genuine dispute as to any material fact

and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A court

will grant summary judgment if "the evidence is so one-sided that one party must prevail as a

matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, 93 F.3d 230, 233 (6th

Cir. 1996).

For a court to issue a preliminary injunction, it must consider and balance four factors:

"(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant

would suffer irreparable injury without the injunction; (3) whether issuance of the injunction

would cause substantial harm to others; and (4) whether the public interest would be served by

1

issuance of the injunction." *Chabad of S. Ohio v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004) (citation and quotation marks omitted).   Generally, "[t]he standard for a preliminary injunction is essentially the same as for a permanent injunction," except that a plaintiff must show actual success for a permanent injunction, rather than simply a likelihood of success on the merits. *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987); *see Am. Civil Liberties Union of Ky. v. McCreary Cnty.*, 607 F.3d 439, 445 (6th Cir. 2010).  In addition, when a plaintiff seeks a permanent injunction, "[a]n evidentiary hearing typically is required before an injunction may be granted, but a hearing is not necessary where no triable issues of fact are involved." *United States v. Miami Univ.*, 294 F.3d 797, 815 (6th Cir. 2002) (citing *United States v. McGee*, 714 F.2d 607, 613 (6th Cir. 1983)).

Here, the Court held a hearing on Backpage.com's original Motion for Temporary Restraining Order and Preliminary Injunction (Doc. No. 2) on August 29, 2012.  (Doc. No. 37.) After receiving supplemental briefing, the Court then issued an Order on January 3, 2013, temporarily enjoining the law and addressing each argument made by both Backpage.com and Defendants.  (Doc. No. 45.)  The Court found Backpage.com likely to succeed on all of its claims, specifically finding that Tenn. Code Ann. § 39-13-314 (1) is likely preempted by the federal Communications Decency Act of 1996 ("CDA"), which grants immunity to online publishers; (2) likely violates the First Amendment because it does not contain sufficient scienter; (3) likely violates the First Amendment because it is unconstitutionally vague; (4) likely violates the First Amendment because it is unconstitutionally overbroad; (5) likely violates the First Amendment because it is not narrowly tailored; and (6) likely violates the Commerce Clause.  (*Id.* at 17–56.)

2

In its current Motion, Backpage.com asserts that, during a case management conference following the January 3 Order, Defendants' counsel "admitted the case does not present any fact issues, agreed that no discovery is needed, and acknowledged that the Court had decided all legal issues in the case in the prior Order." (Doc. No. 51 at 4.)  According to Backpage.com, this led Magistrate Griffin to issue a scheduling order directing Backpage.com to file a motion to convert the preliminary injunction into a permanent one and for final judgment. (*Id.* at 4–5.)

Finding that no factual issues remain and that the January 3 Order addressed all the legal issues contained in Backpage.com's challenge to the state law, the Court finds it appropriate to enter judgment for Backpage.com and to convert the preliminary injunction into a permanent injunction.  Accordingly, the Court **ADOPTS** all of its factual findings and legal conclusions conained in the January 3 Order into this Order, and **GRANTS** summary judgment for Backpage.com.  As a result, Tenn. Code Ann. § 39-14-314 is permanently enjoined and judgment is entered for Backpage.com.  The Court **DIRECTS** the Clerk to close the case.

It is so ORDERED.

Entered this _____ 19th _____ day of March, 2013.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT

3

# EXHIBIT S

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

BACKPAGE.COM, LLC )
)
)
Plaintiff, )        Case No. 3:12cv654
)        Judge Nixon
)
)
)
v. )
)
ROBERT E. COOPER, JR., et al. )
)
Defendant. )

## ENTRY OF JUDGMENT

Judgment is hereby entered for purposes of Rule 58(a) and/or Rule 79(a) of the Federal Rules of Civil Procedure on March 19, 2013.


KEITH THROCKMORTON, CLERK

s/  Hannah B. Blaney

# EXHIBIT T

# ASSEMBLY, No. 3352

# STATE OF NEW JERSEY

## 215th LEGISLATURE

INTRODUCED OCTOBER 11, 2012

Sponsored by:

**Assemblywoman  VALERIE VAINIERI HUTTLE**
District 37 (Bergen)
**Assemblywoman  ALISON LITTELL MCHOSE**
District 24 (Morris, Sussex and Warren)
**Assemblyman  PETER J. BARNES, III**
District 18 (Middlesex)
**Assemblywoman  CLEOPATRA G. TUCKER**
District 28 (Essex)
**Assemblyman  ANGEL FUENTES**
District 5 (Camden and Gloucester)
**Assemblywoman  LINDA STENDER**
District 22 (Middlesex, Somerset and Union)
**Assemblywoman  SHAVONDA E. SUMTER**
District 35 (Bergen and Passaic)
**Assemblyman  RONALD S. DANCER**
District 12 (Burlington, Middlesex, Monmouth and Ocean)

Co-Sponsored by:
Assemblywoman     Wagner,     Assemblymen     Caputo,     McKeon,
Assemblywoman Quijano and Assemblyman Gusciora

**SYNOPSIS**
    The "Human Trafficking Prevention, Protection, and Treatment Act."

**CURRENT VERSION OF TEXT**
    As introduced.

(Sponsorship Updated As Of: 10/16/2012)

A3352 VAINIERI HUTTLE, MCHOSE
2

1    AN ACT concerning human trafficking and designated the "Human
2    Trafficking Prevention, Protection, and Treatment Act," and
3    amending and supplementing various parts of the statutory law.
4
5    BE IT ENACTED by the Senate and General Assembly of the State
6    of New Jersey:
7
8    1.  (New section) a.  (1)  There is hereby created, in the
9    Department of Law and Public Safety, a commission to be known
10    as the Commission on Human Trafficking, consisting of 15
11    members as follows: the Attorney General, or his designee; the
12    Commissioner of Children and Families, or his designee; the
13    Commissioner of Human Services, or his designee; one member of
14    the New Jersey Human Trafficking Task Force established within
15    the Department of Law and Public Safety, designated by the
16    Attorney General; two public members appointed by the Governor
17    based upon the recommendation of the Senate President, one
18    representing law enforcement and one representing a victim's
19    assistance organization; one public member appointed by the
20    Governor based upon the recommendation of the Senate Minority
21    Leader representing either a non-profit health care facility or mental
22    health services; two public members appointed by the Governor
23    based upon the recommendation of the Speaker of the General
24    Assembly, one representing law enforcement and one representing a
25    victim's assistance organization; one public member appointed by
26    the Governor based upon the recommendation of the Assembly
27    Minority Leader representing either a non-profit health care facility
28    or mental health services; and five public members appointed by the
29    Governor, one of whom shall be a representative of the National
30    Center for Missing and Exploited Children.  All public members
31    shall possess a background in, or have specialized knowledge of,
32    the legal, policy, educational, social, or psychological aspects of
33    human trafficking.
34    b.  (1) Of the public members first appointed:
35    (a) the following shall serve for a term of three years:  one
36    member appointed upon the recommendation of the Senate
37    President; one member appointed upon the recommendation of the
38    Speaker of the General Assembly; and three members appointed by
39    the Governor; and
40    (b) the following shall serve for a term of two years: one member
41    appointed upon the recommendation of the Senate President; one
42    member appointed upon the recommendation of the Speaker of the
43    General Assembly; each member appointed by the Senate and
44    Assembly Minority Leaders; and two members appointed by the
45    Governor.

EXPLANATION – Matter enclosed in bold-faced brackets [thus] in the above bill is
not enacted and is intended to be omitted in the law.

Matter underlined thus is new matter.

A3352 VAINIERI HUTTLE, MCHOSE
3

1  (c) Upon the conclusion of the initial terms, each public member
2 shall be appointed for a term of three years.
3  (2) Each member appointed shall hold office for the term of
4 appointment and until a successor shall have been appointed and
5 qualified.
6  (3) Any vacancy in the membership of the commission shall be
7 filled by appointment in the same manner as the original
8 appointment was made.
9  c. (1) The commission shall organize upon the appointment of
10 a majority of its authorized membership.  The members shall elect
11 one of the members to serve as chair and vice-chair, and the chair
12 may appoint a secretary, who need not be a member of the
13 commission.
14  (2) The commission shall meet at those times and places within
15 the State of New Jersey as the commission shall determine.  A
16 majority of the commission's authorized membership shall
17 constitute a quorum for the transaction of any business, for the
18 performance of any duty, or for the exercise of any power of the
19 commission.
20  d. The members of the commission shall serve without
21 compensation, but shall be eligible for reimbursement for necessary
22 and reasonable expenses incurred in the performance of their
23 official duties within the limits of funds appropriated or otherwise
24 made available to the commission for its purposes.
25  e. The commission shall be entitled to accept the assistance and
26 services of the employees of any State, county, or municipal
27 department, board, bureau, commission, or agency as may be made
28 available to it and to employ legal, stenographic, technical, and
29 clerical assistance and incur expenses as may be necessary in order
30 to perform its duties within the limits of funds appropriated or
31 otherwise made available to it for its purposes.
32  f. It shall be the duty of the commission to:
33  (1) Evaluate the existing law concerning human trafficking and
34 the enforcement thereof, and to make recommendations for
35 legislation, if appropriate;
36  (2) Review existing victim assistance programs and analyze the
37 costs, organization, and availability of these services for victims of
38 human trafficking and to make recommendations for legislation, if
39 appropriate;
40  (3) Promote a coordinated response by public and private
41 resources for victims of human trafficking;
42  (4) Develop mechanisms to promote public awareness of human
43 trafficking; and
44  (5) Administer and make expenditures from the "Human
45 Trafficking Survivor's Assistance Fund" established under section 2
46 of P.L. , c. (C.  ), for the provision of services to victims of
47 human trafficking, to promote awareness of human trafficking, and
48 the development, establishment, operation, and maintenance of the

A3352 VAINIERI HUTTLE, MCHOSE
4

1   "John School Diversion Program" created pursuant to section 10 of
2   P.L.  , c. (C.   ) (pending before the Legislature as this bill).
3      The commission shall adopt, pursuant to the "Administrative
4   Procedure Act," P.L.1968, c.410 (C.52:14B-1 et seq.), rules and
5   regulations necessary to implement the duties and purposes of the
6   commission provided in this section.
7      g.  The commission shall report annually to the Governor and to
8   the Legislature, pursuant to section 2 of P.L.1991, c.164 (C.52:14-
9   19.1), its activities, as well as its findings and recommendations for
10   any needed new services or resources for victims of human
11   trafficking, and any proposed changes to the current law concerning
12   human trafficking.
13
14      2.  (New section)  There is established the "Human Trafficking
15   Survivor's Assistance Fund" as a separate, non-lapsing, dedicated
16   fund in the General Fund, which shall be administered by the
17   Commission on Human Trafficking created by section 1 of P.L.  ,
18   c. (C.   ) (pending before the Legislature as this bill).  All
19   monies deposited in the fund pursuant to P.L.  , c. (C.   )
20   (pending before the Legislature as this bill), any other enactment, or
21   as otherwise provided from any public or private source shall be
22   used for the provision of services to victims of human trafficking, to
23   promote awareness of human trafficking, and the development,
24   establishment, operation, and maintenance of the "John School
25   Diversion Program" created pursuant to section 10 of P.L.  , c.
26   (C.   ) (pending before the Legislature as this bill), and done so
27   in accordance with rules and regulations promulgated by the
28   commission pursuant to subsection f. of section 1 of P.L.  , c.
29   (C.   ) (pending before the Legislature as this bill) and other
30   applicable law.
31
32      3.  Section 1 of P.L.2005, c.77 (C.2C:13-8) is amended to read
33   as follows:
34      1.  Human trafficking. a. A person commits the crime of human
35   trafficking if he:
36      (1) knowingly holds, recruits, lures, entices, harbors, transports,
37   provides or obtains, by any means, another, to engage in sexual
38   activity as defined in paragraph (2) of subsection a. of N.J.S.2C:34-
39   1 or to provide labor or services:
40      (a) by threats or incidents of serious bodily harm [or], physical
41   restraint, or abduction against the person or any other person;
42      (b) by means of any scheme, fraud, deceit or other deception,
43   plan, or pattern intended to cause the person to believe that the
44   person or any other person would suffer serious bodily harm or
45   physical restraint;
46      (c) by committing a violation of N.J.S.2C:13-5 involving
47   coercion against the person; [or]

1   (d) by destroying, concealing, removing, confiscating, or
2   possessing any passport, immigration-related document as defined
3   in section 1 of P.L.1997, c.1 (C.2C:21-31), or other document
4   issued by a governmental agency to any person which could be used
5   as a means of verifying the person's identity or age or any other
6   personal identifying information; or
7   (e) by means of the abuse of power or threatened abuse of
8   power of the law or legal process; or
9   (2) receives anything of value from participation as an
10  organizer, supervisor, financier or manager in a scheme or course of
11  conduct which violates paragraph (1) of this subsection; or
12  (3) as a licensed owner or driver of an autocab, limousine,
13  autobus, or any other passenger automobile as defined in R.S.39:1-1
14  that is subject to regulation under chapter 16 of Title 48 of the
15  Revised Statutes, negligently participates in the transportation of
16  another which violates paragraph (1) or (2) of this subsection; or
17  (4) otherwise being a professionally licensed person, negligently
18  permits an act of human trafficking described in paragraph (1) or
19  (2) of this subsection, on, within, or using the person's property or
20  services. For purposes of this paragraph, "professionally licensed
21  person" means any person required by law to obtain, from a
22  governmental department, agency, board, or commission of the
23  State or any political subdivision of the State, a license, permit,
24  certificate, approval, registration, charter, or similar form of
25  business or professional authorization in order to operate a business
26  or as a professional in this State.
27  b. An offense under this section constitutes a crime of the first
28  degree, except that an offense under paragraph (3) or (4) of
29  subsection a. of this section concerning criminal negligence
30  constitutes a crime of the fourth degree.
31  c. It is an affirmative defense to prosecution for a violation of
32  this section that, during the time of the alleged commission of the
33  offense of human trafficking created by this section, the defendant
34  was a victim of human trafficking.
35  d. (1) Notwithstanding the provisions of N.J.S.2C:43-6, the
36  term of imprisonment imposed for a crime of the first degree under
37  paragraph (2) of subsection a. of this section shall be either a term
38  of 20 years during which the actor shall not be eligible for parole,
39  or a specific term between 20 years and life imprisonment, of which
40  the actor shall serve 20 years before being eligible for parole.
41  Notwithstanding the provisions of N.J.S.2C:43-3, the fine imposed
42  for a crime of the first degree under this section shall be a fine of at
43  least $25,000, which shall be collected as provided for the
44  collection of fines and restitutions in section 3 of P.L.1979, c.396
45  (C.2C:46-4) and forwarded to the Department of the Treasury to be
46  deposited in the "Human Trafficking Survivor's Assistance Fund"
47  established by section 2 of P.L.   , c. (C.   ) (pending before the
48  Legislature as this bill).

A3352 VAINIERI HUTTLE, MCHOSE
6

1    (2) Notwithstanding the provisions of N.J.S.2C:43-3, the fine
2    imposed for a crime of the fourth degree under paragraph (3) or (4)
3    of subsection a. of this section concerning criminal negligence shall
4    be a fine of up to $25,000, which shall be collected as provided for
5    the collection of fines and restitutions in section 3 of P.L.1979,
6    c.396 (C.2C:46-4) and forwarded to the Department of the Treasury
7    to be deposited in the "Human Trafficking Survivor's Assistance
8    Fund" established by section 2 of P.L.    , c.    (C.        ) (pending
9    before the Legislature as this bill).  Additionally, upon conviction
10   for this crime, the court shall revoke any license, permit, certificate,
11   approval, registration, charter, or similar form of business or
12   professional authorization required by law concerning the operation
13   of that person's business or profession.
14       e.   In addition to any other disposition authorized by law, any
15   person who violates the provisions of this section, other than a
16   violation of paragraph (3) or (4) of subsection a. of this section
17   concerning criminal negligence, shall be sentenced to make
18   restitution to any victim.  The court shall award to the victim
19   restitution which is the greater of:
20       (1) the gross income or value to the defendant of the victim's
21   labor or services; or
22       (2) the value of the victim's labor or services as determined by
23   the "New Jersey Prevailing Wage Act," P.L.1963, c.150 (C.34:11-
24   56.25 et seq.), the "New Jersey State Wage and Hour Law,"
25   P.L.1966, c.113 (C.34:11-56a et seq.), the Seasonal Farm Labor
26   Act, P.L.1945, c.71 (C.34:9A-1 et seq.), the laws concerning the
27   regulation of child labor in chapter 2 of Title 34 of the Revised
28   Statutes, or any other applicable State law, and the "Fair Labor
29   Standards Act of 1938," 29 U.S.C. s.201 et seq., or any other
30   applicable federal law.
31   (cf: P.L.2005, c.77, s.1)
32
33       4.   (New section)  a.  Any person injured, including due to the
34   loss of moneys or property, real or personal, as a result of a
35   violation of the human trafficking provisions set forth in section 1
36   of P.L.2005, c.77 (C.2C:13-8) may bring a civil action in any court
37   of competent jurisdiction.  A civil action brought under this section
38   shall not preclude the application of any other civil, administrative,
39   or criminal remedy under any other provision of law.
40       b.   (1) The standard of proof in a civil action brought pursuant
41   to this section is a preponderance of the evidence, and the fact that a
42   prosecution for human trafficking under section 1 of P.L.2005, c.77
43   (C.2C:13-8) is not instituted or, whenever instituted, terminates
44   without a conviction, shall not preclude a civil action.
45       (2) A final judgment rendered in favor of the State in any
46   criminal proceeding shall estop the defendant from denying the
47   same conduct in any civil action brought pursuant to this section.

A3352 VAINIERI HUTTLE, MCHOSE
7

1    c.   In any civil action brought pursuant to this section, the court
2    shall, in addition to any other appropriate legal or equitable relief,
3    award damages in an amount that is the greater of:
4        (1) the gross income or value to the defendant of the injured
5    party's labor or services; or
6        (2) the value of the injured party's labor or services as
7    determined by the "New Jersey Prevailing Wage Act," P.L.1963,
8    c.150 (C.34:11-56.25 et seq.), the "New Jersey State Wage and
9    Hour Law," P.L.1966, c.113 (C.34:11-56a et seq.), the Seasonal
10   Farm Labor Act, P.L.1945, c.71 (C.34:9A-1 et seq.), the laws
11   concerning the regulation of child labor in chapter 2 of Title 34 of
12   the Revised Statutes, or any other applicable State law, and the
13   "Fair Labor Standards Act of 1938," 29 U.S.C. s.201 et seq., or any
14   other applicable federal law.
15
16       5.   (New section) a. (1) A person who knowingly owns,
17   controls, manages, supervises, or otherwise keeps, alone or in
18   association with another, any premises where human trafficking is
19   regularly carried on is guilty of a crime of the first degree.
20       (2) A person who knowingly leases or otherwise permits any
21   premises controlled by the actor, alone or in association with others,
22   to be regularly used for human trafficking, or fails to make a
23   reasonable effort to abate this use by ejecting the tenant, notifying
24   law enforcement authorities, or employing other legally available
25   means, is guilty of a crime of the first degree.
26       (3) As used in this section "premises" includes, but is not limited
27   to, any residence, apartment, hotel, motel, inn, rooming house,
28   boarding house, or other establishment for lodging.
29       b.   Notwithstanding the provisions of N.J.S.2C:43-3, the fine
30   imposed for an offense under this section shall be a fine of at least
31   $25,000, which shall be collected as provided for the collection of
32   fines and restitutions in section 3 of P.L.1979, c.396 (C.2C:46-4)
33   and forwarded to the Department of the Treasury to be deposited in
34   the "Human Trafficking Survivor's Assistance Fund" established by
35   section 2 of P.L.   , c. (C.      ) (pending before the Legislature as
36   this bill).
37
38       6.   Section 2 of P.L.1974, c.49 (C.2A:18-61.1) is amended to
39   read as follows:
40       2.   No lessee or tenant or the assigns, under-tenants or legal
41   representatives of such lessee or tenant may be removed by the
42   Superior Court from any house, building, mobile home or land in a
43   mobile home park or tenement leased for residential purposes, other
44   than (1) owner-occupied premises with not more than two rental
45   units or a hotel, motel or other guest house or part thereof rented to
46   a transient guest or seasonal tenant; (2) a dwelling unit which is
47   held in trust on behalf of a member of the immediate family of the
48   person or persons establishing the trust, provided that the member

A3352 VAINIERI HUTTLE, MCHOSE
8

1   of the immediate family on whose behalf the trust is established
2   permanently occupies the unit; and (3) a dwelling unit which is
3   permanently occupied by a member of the immediate family of the
4   owner of that unit, provided, however, that exception (2) or (3) shall
5   apply only in cases in which the member of the immediate family
6   has a developmental disability, except upon establishment of one of
7   the following grounds as good cause:

8     a.  The person fails to pay rent due and owing under the lease
9   whether the same be oral or written; provided that, for the purposes
10  of this section, any portion of rent unpaid by a tenant to a landlord
11  but utilized by the tenant to continue utility service to the rental
12  premises after receiving notice from an electric, gas, water or sewer
13  public utility that such service was in danger of discontinuance
14  based on nonpayment by the landlord, shall not be deemed to be
15  unpaid rent.

16    b.  The person has continued to be, after written notice to cease,
17  so disorderly as to destroy the peace and quiet of the occupants or
18  other tenants living in said house or neighborhood.

19    c.  The person has willfully or by reason of gross negligence
20  caused or allowed destruction, damage or injury to the premises.

21    d.  The person has continued, after written notice to cease, to
22  substantially violate or breach any of the landlord's rules and
23  regulations governing said premises, provided such rules and
24  regulations are reasonable and have been accepted in writing by the
25  tenant or made a part of the lease at the beginning of the lease term.

26    e.  (1) The person has continued, after written notice to cease,
27  to substantially violate or breach any of the covenants or
28  agreements contained in the lease for the premises where a right of
29  reentry is reserved to the landlord in the lease for a violation of such
30  covenant or agreement, provided that such covenant or agreement is
31  reasonable and was contained in the lease at the beginning of the
32  lease term.

33    (2) In public housing under the control of a public housing
34  authority or redevelopment agency, the person has substantially
35  violated or breached any of the covenants or agreements contained
36  in the lease for the premises pertaining to illegal uses of controlled
37  dangerous substances, or other illegal activities, whether or not a
38  right of reentry is reserved to the landlord in the lease for a
39  violation of such covenant or agreement, provided that such
40  covenant or agreement conforms to federal guidelines regarding
41  such lease provisions and was contained in the lease at the
42  beginning of the lease term.

43    f.  The person has failed to pay rent after a valid notice to quit
44  and notice of increase of said rent, provided the increase in rent is
45  not unconscionable and complies with any and all other laws or
46  municipal ordinances governing rent increases.

47    g.  The landlord or owner (1) seeks to permanently board up or
48  demolish the premises because he has been cited by local or State

A3352 VAINIERI HUTTLE, MCHOSE
9

1   housing inspectors for substantial violations affecting the health and
2   safety of tenants and it is economically unfeasible for the owner to
3   eliminate the violations; (2) seeks to comply with local or State
4   housing inspectors who have cited him for substantial violations
5   affecting the health and safety of tenants and it is unfeasible to so
6   comply without removing the tenant; simultaneously with service of
7   notice of eviction pursuant to this clause, the landlord shall notify
8   the Department of Community Affairs of the intention to institute
9   proceedings and shall provide the department with such other
10  information as it may require pursuant to rules and regulations. The
11  department shall inform all parties and the court of its view with
12  respect to the feasibility of compliance without removal of the
13  tenant and may in its discretion appear and present evidence; (3)
14  seeks to correct an illegal occupancy because he has been cited by
15  local or State housing inspectors or zoning officers and it is
16  unfeasible to correct such illegal occupancy without removing the
17  tenant; or (4) is a governmental agency which seeks to permanently
18  retire the premises from the rental market pursuant to a
19  redevelopment or land clearance plan in a blighted area. In those
20  cases where the tenant is being removed for any reason specified in
21  this subsection, no warrant for possession shall be issued until
22  P.L.1967, c.79 (C.52:31B-1 et seq.) and P.L.1971, c.362 (C.20:4-1
23  et seq.) have been complied with.
24      h.   The owner seeks to retire permanently the residential
25  building or the mobile home park from residential use or use as a
26  mobile home park, provided this subsection shall not apply to
27  circumstances covered under subsection g. of this section.
28      i.   The landlord or owner proposes, at the termination of a
29  lease, reasonable changes of substance in the terms and conditions
30  of the lease, including specifically any change in the term thereof,
31  which the tenant, after written notice, refuses to accept; provided
32  that in cases where a tenant has received a notice of termination
33  pursuant to subsection g. of section 3 of P.L.1974, c.49 (C.2A:18-
34  61.2), or has a protected tenancy status pursuant to [section 9 of]
35  the "Senior Citizens and Disabled Protected Tenancy Act,"
36  P.L.1981, c.226 [(C.2A:18-61.30)] (C.2A:18-61.22), or pursuant to
37  the "Tenant Protection Act of 1992," P.L.1991, c.509 (C.2A:18-
38  61.40 et al.), the landlord or owner shall have the burden of proving
39  that any change in the terms and conditions of the lease, rental or
40  regulations both is reasonable and does not substantially reduce the
41  rights and privileges to which the tenant was entitled prior to the
42  conversion.
43      j.   The person, after written notice to cease, has habitually and
44  without legal justification failed to pay rent which is due and owing.
45      k.   The landlord or owner of the building or mobile home park
46  is converting from the rental market to a condominium, cooperative
47  or fee simple ownership of two or more dwelling units or park sites,
48  except as hereinafter provided in subsection l. of this section.

A3352 VAINIERI HUTTLE, MCHOSE
10

1   Where the tenant is being removed pursuant to this subsection, no
2   warrant for possession shall be issued until this act has been
3   complied with.  No action for possession shall be brought pursuant
4   to this subsection against a senior citizen tenant or disabled tenant
5   with protected tenancy status pursuant to the "Senior Citizens and
6   Disabled Protected Tenancy Act," P.L.1981, c.226 (C.2A:18-61.22
7   et al.), or against a qualified tenant under the "Tenant Protection
8   Act of 1992," P.L.1991, c.509 (C.2A:18-61.40 et al.), as long as the
9   agency has not terminated the protected tenancy status or the
10  protected tenancy period has not expired.
11      l.    (1) The owner of a building or mobile home park, which is
12  constructed as or being converted to a condominium, cooperative or
13  fee simple ownership, seeks to evict a tenant or sublessee whose
14  initial tenancy began after the master deed, agreement establishing
15  the cooperative or subdivision plat was recorded, because the owner
16  has contracted to sell the unit to a buyer who seeks to personally
17  occupy it and the contract for sale calls for the unit to be vacant at
18  the time of closing.  However, no action shall be brought against a
19  tenant under paragraph (1) of this subsection unless the tenant was
20  given a statement in accordance with section 6 of P.L.1975, c.311
21  (C.2A:18-61.9);
22      (2) The owner of three or less condominium or cooperative units
23  seeks to evict a tenant whose initial tenancy began by rental from an
24  owner of three or less units after the master deed or agreement
25  establishing the cooperative was recorded, because the owner seeks
26  to personally occupy the unit, or has contracted to sell the unit to a
27  buyer who seeks to personally occupy it and the contract for sale
28  calls for the unit to be vacant at the time of closing;
29      (3) The owner of a building of three residential units or less
30  seeks to personally occupy a unit, or has contracted to sell the
31  residential unit to a buyer who wishes to personally occupy it and
32  the contract for sale calls for the unit to be vacant at the time of
33  closing.
34      m.  The landlord or owner conditioned the tenancy upon and in
35  consideration for the tenant's employment by the landlord or owner
36  as superintendent, janitor or in some other capacity and such
37  employment is being terminated.
38      n.    The person has been convicted of or pleaded guilty to, or if a
39  juvenile, has been adjudicated delinquent on the basis of an act
40  which if committed by an adult would constitute an offense under
41  the "Comprehensive Drug Reform Act of 1987," N.J.S.2C:35-1 et
42  al., involving the use, possession, manufacture, dispensing or
43  distribution of a controlled dangerous substance, controlled
44  dangerous substance analog or drug paraphernalia within the
45  meaning of that act within or upon the leased premises or the
46  building or complex of buildings and land appurtenant thereto, or
47  the mobile home park, in which those premises are located, and has
48  not in connection with his sentence for that offense either (1)

A3352 VAINIERI HUTTLE, MCHOSE
11

1  successfully completed or (2) been admitted to and continued upon
2  probation while completing, a drug rehabilitation program pursuant
3  to N.J.S.2C:35-14; or, being the tenant or lessee of such leased
4  premises, knowingly harbors or harbored therein a person who has
5  been so convicted or has so pleaded, or otherwise permits or
6  permitted such a person to occupy those premises for residential
7  purposes, whether continuously or intermittently, except that this
8  subsection shall not apply to a person harboring or permitting a
9  juvenile to occupy the premises if the juvenile has been adjudicated
10 delinquent upon the basis of an act which if committed by an adult
11 would constitute the offense of use or possession under the said act.
12 No action for removal may be brought pursuant to this subsection
13 more than two years after the date of the adjudication or conviction
14 or more than two years after the person's release from incarceration
15 whichever is the later.
16     o.  The person has been convicted of or pleaded guilty to, or if a
17 juvenile, has been adjudicated delinquent on the basis of an act
18 which if committed by an adult would constitute an offense under
19 N.J.S.2C:12-1 or N.J.S.2C:12-3 involving assault, or terroristic
20 threats against the landlord, a member of the landlord's family or an
21 employee of the landlord; or, being the tenant or lessee of such
22 leased premises, knowingly harbors or harbored therein a person
23 who has been so convicted or has so pleaded, or otherwise permits
24 or permitted such a person to occupy those premises for residential
25 purposes, whether continuously or intermittently. No action for
26 removal may be brought pursuant to this subsection more than two
27 years after the adjudication or conviction or more than two years
28 after the person's release from incarceration whichever is the later.
29     p.  The person has been found, by a preponderance of the
30 evidence, liable in a civil action for removal commenced under this
31 act for an offense under N.J.S.2C:20-1 et al. involving theft of
32 property located on the leased premises from the landlord, the
33 leased premises or other tenants residing in the leased premises, or
34 N.J.S.2C:12-1 or N.J.S.2C:12-3 involving assault or terroristic
35 threats against the landlord, a member of the landlord's family or an
36 employee of the landlord, or under the "Comprehensive Drug
37 Reform Act of 1987," N.J.S.2C:35-1 et al., involving the use,
38 possession, manufacture, dispensing or distribution of a controlled
39 dangerous substance, controlled dangerous substance analog or drug
40 paraphernalia within the meaning of that act within or upon the
41 leased premises or the building or complex of buildings and land
42 appurtenant thereto, or the mobile home park, in which those
43 premises are located, and has not in connection with his sentence
44 for that offense either (1) successfully completed or (2) been
45 admitted to and continued upon probation while completing a drug
46 rehabilitation program pursuant to N.J.S.2C:35-14; or, being the
47 tenant or lessee of such leased premises, knowingly harbors or
48 harbored therein a person who committed such an offense, or