A3352 VAINIERI HUTTLE, MCHOSE
12

1  otherwise permits or permitted such a person to occupy those
2  premises for residential purposes, whether continuously or
3  intermittently, except that this subsection shall not apply to a person
4  who harbors or permits a juvenile to occupy the premises if the
5  juvenile has been adjudicated delinquent upon the basis of an act
6  which if committed by an adult would constitute the offense of use
7  or possession under the said "Comprehensive Drug Reform Act of
8  1987."
9    q.  The person has been convicted of or pleaded guilty to, or if a
10  juvenile, has been adjudicated delinquent on the basis of an act
11  which if committed by an adult would constitute an offense under
12  N.J.S.2C:20-1 et al. involving theft of property from the landlord,
13  the leased premises or other tenants residing in the same building or
14  complex; or, being the tenant or lessee of such leased premises,
15  knowingly harbors therein a person who has been so convicted or
16  has so pleaded, or otherwise permits such a person to occupy those
17  premises for residential purposes, whether continuously or
18  intermittently.
19    r.  The person has been convicted of or pleaded guilty to, or if a
20  juvenile, has been adjudicated delinquent on the basis of an act
21  which if committed by an adult would constitute the crime of
22  human trafficking under section 1 of P.L.2005, c.77 (C.2C:13-8)
23  within or upon the leased premises or the building or complex of
24  buildings and land appurtenant thereto, or the mobile home park, in
25  which those premises are located; or, being the tenant or lessee of
26  such leased premises, knowingly harbors or harbored therein a
27  person who has been so convicted or has so pleaded, or otherwise
28  permits or permitted such a person to occupy those premises for
29  residential purposes, whether continuously or intermittently. No
30  action for removal may be brought pursuant to this subsection more
31  than two years after the date of the adjudication or conviction or
32  more than two years after the person's release from incarceration
33  whichever is the later.
34    For purposes of this section, (1) "developmental disability"
35  means any disability which is defined as such pursuant to section 3
36  of P.L.1977, c.82 (C.30:6D-3); (2) "member of the immediate
37  family" means a person's spouse, parent, child or sibling, or a
38  spouse, parent, child or sibling of any of them; and (3)
39  "permanently" occupies or occupied means that the occupant
40  maintains no other domicile at which the occupant votes, pays rent
41  or property taxes or at which rent or property taxes are paid on the
42  occupant's behalf.
43  (cf: P.L.2000, c.113, s.3)
44
45    7.  Section 3 of P.L.1974, c.49 (C.2A:18-61.2) is amended to
46  read as follows:
47    3.  No judgment of possession shall be entered for any premises
48  covered by section 2 of this act, except in the nonpayment of rent

A3352 VAINIERI HUTTLE, MCHOSE
13

1    under subsection a. or f. of section 2, unless the landlord has made
2    written demand and given written notice for delivery of possession
3    of the premises.  The following notice shall be required:
4        a.   For an action alleging disorderly conduct under subsection b.
5    of section 2, or injury to the premises under subsection c. of section
6    2, or any grounds under subsection m., n., o. [or] , p. , q., or r. of
7    section 2, three days' notice prior to the institution of the action for
8    possession;
9        b.   For an action alleging continued violation of rules and
10   regulations under subsection d. of section 2, or substantial breach of
11   covenant under subsection e. of section 2, or habitual failure to pay
12   rent, one month's notice prior to the institution of the action for
13   possession;
14       c.   For an action alleging any grounds under subsection g. of
15   section 2, three months' notice prior to the institution of the action;
16       d.   For an action alleging permanent retirement under
17   subsection h. of section 2, 18 months' notice prior to the institution
18   of the action and, provided that, where there is a lease in effect, no
19   action may be instituted until the lease expires;
20       e.   For an action alleging refusal of acceptance of reasonable
21   lease changes under subsection i. of section 2, one month's notice
22   prior to institution of action;
23       f.   For an action alleging any grounds under subsection l. of
24   section 2, two months' notice prior to the institution of the action
25   and, provided that where there is a written lease in effect no action
26   shall be instituted until the lease expires;
27       g.   For an action alleging any grounds under subsection k. of
28   section 2, three years' notice prior to the institution of action, and
29   provided that where there is a written lease in effect, no action shall
30   be instituted until the lease expires;
31       h.   In public housing under the control of a public housing
32   authority or redevelopment agency, for an action alleging
33   substantial breach of contract under paragraph (2) of subsection e.
34   of section 2, the period of notice required prior to the institution of
35   an action for possession shall be in accordance with federal
36   regulations pertaining to public housing leases.
37       The notice in each of the foregoing instances shall specify in
38   detail the cause of the termination of the tenancy and shall be
39   served either personally upon the tenant or lessee or such person in
40   possession by giving him a copy thereof, or by leaving a copy
41   thereof at his usual place of abode with some usual member of his family
42   above the age of 14 years, or by certified mail; if the certified letter
43   is not claimed, notice shall be sent by regular mail.
44       (cf: P.L.1997, c.228, s.2)
45
46       8.   N.J.S.2C:34-1 is amended to read as follows:
47       2C:34-1.  Prostitution and Related Offenses.
48       a.   As used in this section:

A3352 VAINIERI HUTTLE, MCHOSE
14

1    (1) "Prostitution" is sexual activity with another person in
2  exchange for something of economic value, or the offer or
3  acceptance of an offer to engage in sexual activity in exchange for
4  something of economic value.
5    (2) "Sexual activity" includes, but is not limited to, sexual
6  intercourse, including genital-genital, oral-genital, anal-genital, and
7  oral-anal contact, whether between persons of the same or opposite
8  sex; masturbation; touching of the genitals, buttocks, or female
9  breasts; sadistic or masochistic abuse and other deviate sexual
10  relations.
11    (3) "House of prostitution" is any place where prostitution or
12  promotion of prostitution is regularly carried on by one person
13  under the control, management or supervision of another.
14    (4) "Promoting prostitution" is:
15    (a) Owning, controlling, managing, supervising or otherwise
16  keeping, alone or in association with another, a house of
17  prostitution or a prostitution business;
18    (b) Procuring an inmate for a house of prostitution or place in a
19  house of prostitution for one who would be an inmate;
20    (c) Encouraging, inducing, or otherwise purposely causing
21  another to become or remain a prostitute;
22    (d) Soliciting a person to patronize a prostitute;
23    (e) Procuring a prostitute for a patron;
24    (f) Transporting a person into or within this State with purpose
25  to promote that person's engaging in prostitution, or procuring or
26  paying for transportation with that purpose; or
27    (g) Knowingly leasing or otherwise permitting a place
28  controlled by the actor, alone or in association with others, to be
29  regularly used for prostitution or promotion of prostitution, or
30  failure to make a reasonable effort to abate such use by ejecting the
31  tenant, notifying law enforcement authorities, or other legally
32  available means.
33    b.  A person commits an offense if:
34    (1) The actor engages in prostitution;
35    (2) The actor promotes prostitution;
36    (3) The actor knowingly promotes prostitution of a child under
37  18 whether or not the actor mistakenly believed that the child was
38  18 years of age or older, even if such mistaken belief was
39  reasonable;
40    (4) The actor knowingly promotes prostitution of the actor's
41  child, ward, or any other person for whose care the actor is
42  responsible;
43    (5) The actor compels another to engage in or promote
44  prostitution;
45    (6) The actor promotes prostitution of the actor's spouse; or
46    (7) The actor knowingly engages in prostitution with a person
47  under the age of 18, or if the actor enters into or remains in a house
48  of prostitution for the purpose of engaging in sexual activity with a

A3352 VAINIERI HUTTLE, MCHOSE
15

1   child under the age of 18, or if the actor solicits or requests a child
2   under the age of 18 to engage in sexual activity. It shall be no
3   defense to a prosecution under this paragraph that the actor
4   mistakenly believed that the child was 18 years of age or older,
5   even if such mistaken belief was reasonable.

6       c.   Grading of offenses under subsection b.

7       (1) An offense under subsection b. constitutes a crime of the
8   second degree if the offense falls within paragraph (3) or (4) of that
9   subsection.

10      (2) An offense under subsection b. constitutes a crime of the
11  third degree if the offense falls within paragraph (5), (6) or (7) of
12  that subsection.

13      (3) An offense under paragraph (2) of subsection b. constitutes a
14  crime of the third degree if the conduct falls within subparagraph
15  (a), (b), [or] (c), (f), or (g) of paragraph (4) of subsection a.
16  Otherwise the offense is a crime of the fourth degree.

17      (4) An offense under subsection b. constitutes a disorderly
18  persons offense if the offense falls within paragraph (1) of that
19  subsection except that a second or subsequent conviction for such
20  an offense constitutes a crime of the fourth degree.  In addition,
21  where a motor vehicle was used in the commission of any offense
22  under paragraph (1) of subsection b. the court shall suspend for six
23  months the driving privilege of any such offender who has a valid
24  driver's license issued by this State.  Upon conviction, the court
25  shall immediately collect the offender's driver's license and shall
26  forward it, along with a report stating the first and last day of the
27  suspension imposed pursuant to this paragraph, to the New Jersey
28  Motor Vehicle Commission.

29      d.   Presumption from living off prostitutes.  A person, other
30  than the prostitute or the prostitute's minor child or other legal
31  dependent incapable of self-support, who is supported in whole or
32  substantial part by the proceeds of prostitution is presumed to be
33  knowingly promoting prostitution.

34      e.   It is an affirmative defense to prosecution for a violation of
35  this section that, during the time of the alleged commission of the
36  offense, the defendant was a victim of human trafficking pursuant
37  to section 1 of P.L.2005, c.77 (C.2C:13-8) or [the defendant was
38  under the] compelled by another to engage in sexual activity,
39  regardless of the defendant's age [of 18].

40  (cf: P.L.2011, c.195, s.6)

41

42      9.   (New section) a.  Any person who, on or after the effective
43  date of this section, is convicted and serving a sentence as provided
44  for by Title 2C of the New Jersey Statutes for engaging in
45  prostitution under paragraph (1) of subsection b. of N.J.S.2C:34-1
46  may move to have the sentence reviewed by the court on the
47  grounds that the defendant was a victim of human trafficking
48  pursuant to section 1 of P.L.2005, c.77 (C.2C:13-8).

1    b.  (1) If the court finds that the sentence under review does not
2    serve the interests of justice, the court may vacate the conviction,
3    resentence the defendant, or place the defendant on probation.

4    (2) In determining whether the sentence under review serves the
5    interests of justice, the court shall consider all relevant
6    circumstances, including whether the defendant's victimization
7    constituted a significant contributing factor to the defendant's
8    criminal behavior, regardless of whether the defendant raised this
9    factor as a defense at trial in accordance with subsection e. of
10   N.J.S.2C:34-1.

11

12   10. (New section) a. In addition to any other disposition
13   authorized by law, the court shall order any person convicted of
14   engaging a prostitute pursuant to paragraph (1) of subsection b. of
15   N.J.S.2C:34-1 to participate in the "John School Diversion
16   Program" established pursuant to subsection d. of this section.

17   b. In addition to any fine, fee, assessment, or penalty
18   authorized under the provisions of Title 2C of the New Jersey
19   Statutes, a person convicted of an offense of engaging a prostitute
20   under paragraph (1) of subsection b. of N.J.S.2C:34-1 shall be
21   assessed a penalty of $1,000.

22   c. All penalties provided for in this section, collected as
23   provided for the collection of fines and restitutions in section 3 of
24   P.L.1979, c.396 (C.2C:46-4), shall be forwarded to the Department
25   of the Treasury to be deposited in the "Human Trafficking
26   Survivor's Assistance Fund" established by section 2 of P.L.  , c.
27   (C.    ) (pending before the Legislature as this bill). These
28   monies, and other monies in the fund designated by the Commission
29   on Human Trafficking pursuant to section 2 of P.L.    , c.
30   (C.   ), shall be dedicated to the development, establishment,
31   operation, and maintenance of the "John School Diversion
32   Program" created pursuant to subsection d. of this section.

33   d. There is hereby established an education program to be
34   known as the "John School Diversion Program," which shall be
35   administered by the Administrative Office of the Courts. The
36   program shall educate defendants who have been convicted of
37   engaging a prostitute pursuant to paragraph (1) of subsection b. of
38   N.J.S.2C:34-1 about the risks involved in their unlawful activity.
39   The program shall inform the defendants of the health risks
40   connected with the crime of prostitution, including the risk of
41   transmittable diseases, the legal ramifications for defendants of
42   their unlawful activity, the terms of imprisonment for subsequent
43   offenses, and the correlation between prostitution and human
44   trafficking.

45

46   11. (New section) a. The Legislature finds and declares that:

A3352 VAINIERI HUTTLE, MCHOSE
17

1     (1) There reportedly are more than 12 million victims of human
2 trafficking and it is estimated that this figure could actually be as
3 high as 27 million;
4     (2) According to the National Center for Missing and Exploited
5 Children, at least 100,000 human trafficking victims are American
6 children who are an average age of 13 years old;
7     (3) Advertisements for selling the services of girls as escorts on
8 Internet websites falsely claim that these girls are 18 years of age or
9 older, when the girls actually are minors;
10     (4) The advertising of these escort services includes minors who
11 are being sold for sex, which constitutes sex trafficking and
12 commercial sexual abuse of minors;
13     (5) Responding to political and public outcry, the Internet
14 website craigslist.com removed its escort section, but another
15 website with an escort section, backpage.com, has to date refused to
16 do so;
17     (6) The states of Washington and Connecticut recently enacted
18 laws to require Internet websites, such as backpage.com, and the
19 patrons who advertise on websites, to maintain documentation that
20 they have proved the age of the escorts presented in the
21 advertisements;
22     (7) The State of New Jersey criminalized human trafficking in
23 2005; and
24     (8) Sex trafficking of minors should be eliminated in conformity
25 with federal laws prohibiting the sexual exploitation of children.
26     b. A person commits the offense of advertising commercial
27 sexual abuse of a minor if:
28     (1) the person knowingly publishes, disseminates, or displays, or
29 causes directly or indirectly, to be published, disseminated, or
30 displayed, any advertisement for a commercial sex act, which is to
31 take place in this State and which includes the depiction of a minor;
32 or
33     (2) the person knowingly purchases advertising in this State for a
34 commercial sex act which includes the depiction of a minor.
35     c. A person who commits the offense of advertising
36 commercial sexual abuse of a minor as established in subsection b.
37 of this section is guilty of a crime of the first degree.
38 Notwithstanding the provisions of N.J.S.2C:43-3, the fine imposed
39 for an offense under this section concerning criminal negligence
40 shall be a fine of at least $25,000, which shall be collected as
41 provided for the collection of fines and restitutions in section 3 of
42 P.L.1979, c.396 (C.2C:46-4) and forwarded to the Department of
43 the Treasury to be deposited in the "Human Trafficking Survivor's
44 Assistance Fund" established by section 2 of P.L.   , c. (C.      )
45 (pending before the Legislature as this bill).
46     d. Nothing in this section shall preclude an indictment and
47 conviction for any other offense defined by the laws of this State.
48     e. For the purposes of this section:

A3352 VAINIERI HUTTLE, MCHOSE
18

1    "Advertisement for a commercial sex act" means any
2    advertisement or offer in electronic or print media, including the
3    Internet, which includes either an explicit or implicit offer for a
4    commercial sex act to occur in this State.
5    "Commercial sex act" means any act of sexual contact or sexual
6    penetration, as defined in N.J.S.2C:14-1, or any prohibited sexual
7    act, as defined in N.J.S.2C:24-4, for which something of value is
8    given or received by any person.
9    "Depiction" means any photograph or visual or printed matter.
10   "Minor" means a person who is under 18 years of age.
11   "Photograph" means a print, negative, slide, digital image,
12   motion picture, or videotape, and includes anything tangible or
13   intangible produced by photographing.
14   "Visual or printed matter" means any photograph or other
15   material that contains a reproduction of a photograph.
16       f.   It shall not be a defense to a violation of this section that the
17   defendant did not know the age of the minor depicted in the
18   advertisement.
19       g.   It shall be a defense to a violation of this section that the
20   defendant made a reasonable, bona fide attempt to ascertain the true
21   age of the minor depicted in the advertisement by requiring, prior to
22   publication, dissemination, or display of the advertisement,
23   production of a driver's license, marriage license, birth certificate,
24   or other governmental or educational identification card or paper of
25   the minor depicted in the advertisement and did not rely solely on
26   oral or written representations of the minor's age, or the apparent
27   age of the minor as depicted.  The defendant shall prove the defense
28   established this subsection by a preponderance of the evidence.
29       h.   The defendant shall maintain and, upon request, produce a
30   record of the identification used to verify the age of the person
31   depicted in the advertisement.
32
33       12. Section 2 of P.L.1994, c.133 (C.2C:7-2) is amended to read
34   as follows:
35       2.   a.  (1) A person who has been convicted, adjudicated
36   delinquent or found not guilty by reason of insanity for commission
37   of a sex offense as defined in subsection b. of this section shall
38   register as provided in subsections c. and d. of this section.
39       (2) A person who in another jurisdiction is required to register
40   as a sex offender and (a) is enrolled on a full-time or part-time basis
41   in any public or private educational institution in this State,
42   including any secondary school, trade or professional institution,
43   institution of higher education or other post-secondary school, or
44   (b) is employed or carries on a vocation in this State, on either a
45   full-time or a part-time basis, with or without compensation, for
46   more than 14 consecutive days or for an aggregate period exceeding
47   30 days in a calendar year, shall register in this State as provided in
48   subsections c. and d. of this section.

A3352 VAINIERI HUTTLE, MCHOSE
19

1    (3) A person who fails to register as required under this act shall
2  be guilty of a crime of the third degree.
3    b.  For the purposes of this act a sex offense shall include the
4  following:
5    (1) Aggravated sexual assault, sexual assault, aggravated
6  criminal sexual contact, kidnapping pursuant to paragraph (2) of
7  subsection c. of N.J.S.2C:13-1 or an attempt to commit any of these
8  crimes if the court found that the offender's conduct was
9  characterized by a pattern of repetitive, compulsive behavior,
10  regardless of the date of the commission of the offense or the date
11  of conviction;
12    (2) A conviction, adjudication of delinquency, or acquittal by
13  reason of insanity for aggravated sexual assault; sexual assault;
14  aggravated criminal sexual contact; kidnapping pursuant to
15  paragraph (2) of subsection c. of N.J.S.2C:13-1; endangering the
16  welfare of a child by engaging in sexual conduct which would
17  impair or debauch the morals of the child pursuant to subsection a.
18  of N.J.S.2C:24-4; endangering the welfare of a child pursuant to
19  paragraph (3) or (4) or subparagraph (a) of paragraph (5) of
20  subsection b. of N.J.S.2C:24-4; luring or enticing pursuant to
21  section 1 of P.L.1993, c.291 (C.2C:13-6); criminal sexual contact
22  pursuant to N.J.S.2C:14-3b. if the victim is a minor; kidnapping
23  pursuant to N.J.S.2C:13-1, criminal restraint pursuant to
24  N.J.S.2C:13-2, or false imprisonment pursuant to N.J.S.2C:13-3 if
25  the victim is a minor and the offender is not the parent of the
26  victim; knowingly promoting prostitution of a child pursuant to
27  paragraph (3) or paragraph (4) of subsection b. of N.J.S.2C:34-1;
28  advertising commercial sexual abuse of a minor pursuant to section
29  11 of P.L.   , c.   (C.   ) (pending before the Legislature as this
30  bill); or an attempt to commit any of these enumerated offenses if
31  the conviction, adjudication of delinquency or acquittal by reason of
32  insanity is entered on or after the effective date of this act or the
33  offender is serving a sentence of incarceration, probation, parole or
34  other form of community supervision as a result of the offense or is
35  confined following acquittal by reason of insanity or as a result of
36  civil commitment on the effective date of this act;
37    (3) A conviction, adjudication of delinquency or acquittal by
38  reason of insanity for an offense similar to any offense enumerated
39  in paragraph (2) or a sentence on the basis of criteria similar to the
40  criteria set forth in paragraph (1) of this subsection entered or
41  imposed under the laws of the United States, this State or another
42  state.
43    c.  A person required to register under the provisions of this act
44  shall do so on forms to be provided by the designated registering
45  agency as follows:
46    (1) A person who is required to register and who is under
47  supervision in the community on probation, parole, furlough, work
48  release, or a similar program, shall register at the time the person is

A3352 VAINIERI HUTTLE, MCHOSE
20

1   placed under supervision or no later than 120 days after the
2   effective date of this act, whichever is later, in accordance with
3   procedures established by the Department of Corrections, the
4   Department of Human Services, the Juvenile Justice Commission
5   established pursuant to section 2 of P.L.1995, c.284 (C.52:17B-
6   170), or the Administrative Office of the Courts, whichever is
7   responsible for supervision;
8     (2) A person confined in a correctional or juvenile facility or
9   involuntarily committed who is required to register shall register
10   prior to release in accordance with procedures established by the
11   Department of Corrections, the Department of Human Services or
12   the Juvenile Justice Commission and, within 48 hours of release,
13   shall also register with the chief law enforcement officer of the
14   municipality in which the person resides or, if the municipality does
15   not have a local police force, the Superintendent of State Police;
16     (3) A person moving to or returning to this State from another
17   jurisdiction shall register with the chief law enforcement officer of
18   the municipality in which the person will reside or, if the
19   municipality does not have a local police force, the Superintendent
20   of State Police within 120 days of the effective date of this act or 10
21   days of first residing in or returning to a municipality in this State,
22   whichever is later;
23     (4) A person required to register on the basis of a conviction
24   prior to the effective date who is not confined or under supervision
25   on the effective date of this act shall register within 120 days of the
26   effective date of this act with the chief law enforcement officer of
27   the municipality in which the person will reside or, if the
28   municipality does not have a local police force, the Superintendent
29   of State Police;
30     (5) A person who in another jurisdiction is required to register
31   as a sex offender and who is enrolled on a full-time or part-time
32   basis in any public or private educational institution in this State,
33   including any secondary school, trade or professional institution,
34   institution of higher education or other post-secondary school shall,
35   within ten days of commencing attendance at such educational
36   institution, register with the chief law enforcement officer of the
37   municipality in which the educational institution is located or, if the
38   municipality does not have a local police force, the Superintendent
39   of State Police;
40     (6) A person who in another jurisdiction is required to register
41   as a sex offender and who is employed or carries on a vocation in
42   this State, on either a full-time or a part-time basis, with or without
43   compensation, for more than 14 consecutive days or for an
44   aggregate period exceeding 30 days in a calendar year, shall, within
45   ten days after commencing such employment or vocation, register
46   with the chief law enforcement officer of the municipality in which
47   the employer is located or where the vocation is carried on, as the

A3352 VAINIERI HUTTLE, MCHOSE
21

1   case may be, or, if the municipality does not have a local police
2   force, the Superintendent of State Police;
3        (7) In addition to any other registration requirements set forth in
4   this section, a person required to register under this act who is
5   enrolled at, employed by or carries on a vocation at an institution of
6   higher education or other post-secondary school in this State shall,
7   within ten days after commencing such attendance, employment or
8   vocation, register with the law enforcement unit of the educational
9   institution, if the institution has such a unit.
10       d.   (1) Upon a change of address, a person shall notify the law
11  enforcement agency with which the person is registered and shall
12  re-register with the appropriate law enforcement agency no less
13  than 10 days before he intends to first reside at his new address.
14  Upon a change of employment or school enrollment status, a person
15  shall notify the appropriate law enforcement agency no later than
16  five days after any such change.   A person who fails to notify the
17  appropriate law enforcement agency of a change of address or status
18  in accordance with this subsection is guilty of a crime of the fourth
19  degree.
20       (2) A person required to register under this act shall provide the
21  appropriate law enforcement agency with information as to whether
22  the person has routine access to or use of a computer or any other
23  device with Internet capability.   A person who fails to notify the
24  appropriate law enforcement agency of such information or of a
25  change in the person's access to or use of a computer or other
26  device with Internet capability or who provides false information
27  concerning the person's access to or use of a computer or any other
28  device with Internet capability is guilty of a crime of the fourth
29  degree.
30       e.  A person required to register under paragraph (1) of
31  subsection b. of this section or under paragraph (3) of subsection b.
32  due to a sentence imposed on the basis of criteria similar to the
33  criteria set forth in paragraph (1) of subsection b. shall verify his
34  address with the appropriate law enforcement agency every 90 days
35  in a manner prescribed by the Attorney General.   A person required
36  to register under paragraph (2) of subsection b. of this section or
37  under paragraph (3) of subsection b. on the basis of a conviction for
38  an offense similar to an offense enumerated in paragraph (2) of
39  subsection b. shall verify his address annually in a manner
40  prescribed by the Attorney General.   One year after the effective
41  date of this act, the Attorney General shall review, evaluate and, if
42  warranted, modify pursuant to the "Administrative Procedure Act,"
43  P.L.1968, c.410 (C.52:14B-1 et seq.) the verification requirement.
44  Any person who knowingly provides false information concerning
45  his place of residence or who fails to verify his address with the
46  appropriate law enforcement agency or other entity, as prescribed
47  by the Attorney General in accordance with this subsection, is
48  guilty of a crime of the fourth degree.

A3352 VAINIERI HUTTLE, MCHOSE
22

1  f.  Except as provided in subsection g. of this section, a person
2  required to register under this act may make application to the
3  Superior Court of this State to terminate the obligation upon proof
4  that the person has not committed an offense within 15 years
5  following conviction or release from a correctional facility for any
6  term of imprisonment imposed, whichever is later, and is not likely
7  to pose a threat to the safety of others.
8    g.  A person required to register under this section who has
9  been convicted of, adjudicated delinquent, or acquitted by reason of
10 insanity for more than one sex offense as defined in subsection b. of
11 this section or who has been convicted of, adjudicated delinquent,
12 or acquitted by reason of insanity for aggravated sexual assault
13 pursuant to subsection a. of N.J.S.2C:14-2 or sexual assault
14 pursuant to paragraph (1) of subsection c. of N.J.S.2C:14-2 is not
15 eligible under subsection f. of this section to make application to
16 the Superior Court of this State to terminate the registration
17 obligation.
18 (cf: P.L.2007, c.219, s.2)
19
20  13.  N.J.S.2C:24-4 is amended to read as follows:
21   2C:24-4.  Endangering Welfare of Children.
22    a.  Any person having a legal duty for the care of a child or who
23 has assumed responsibility for the care of a child who engages in
24 sexual conduct which would impair or debauch the morals of the
25 child, or who causes the child harm that would make the child an
26 abused or neglected child as defined in R.S.9:6-1, R.S.9:6-3 and
27 section 1 of P.L.1974, c.119 [, s.1] (C.9:6-8.21) is guilty of a crime
28 of the second degree. Any other person who engages in conduct or
29 who causes harm as described in this subsection to a child under the
30 age of 16 is guilty of a crime of the third degree.
31    b.  (1) As used in this subsection:
32   "Child" means any person under 16 years of age.
33   "Internet" means the international computer network of both
34 federal and non-federal interoperable packet switched data
35 networks.
36   "Prohibited sexual act" means
37   (a) Sexual intercourse; or
38   (b) Anal intercourse; or
39   (c) Masturbation; or
40   (d) Bestiality; or
41   (e) Sadism; or
42   (f) Masochism; or
43   (g) Fellatio; or
44   (h) Cunnilingus; or
45   (i) Nudity, if depicted for the purpose of sexual stimulation or
46 gratification of any person who may view such depiction; or
47   (j) Any act of sexual penetration or sexual contact as defined in
48 N.J.S.2C:14-1.

A3352 VAINIERI HUTTLE, MCHOSE
23

1    "Reproduction" means, but is not limited to, computer generated
2    images.
3    (2)  (Deleted by amendment, P.L.2001, c.291).
4    (3)  A person commits a crime of the second degree if he causes
5    or permits a child to engage in a prohibited sexual act or in the
6    simulation of such an act if the person knows, has reason to know
7    or intends that the prohibited act may be photographed, filmed,
8    reproduced, or reconstructed in any manner, including on the
9    Internet, or may be part of an exhibition or performance.  If the
10   person is a parent, guardian or other person legally charged with the
11   care or custody of the child, the person shall be guilty of a crime of
12   the first degree.
13   (4)  Any person who photographs or films a child in a prohibited
14   sexual act or in the simulation of such an act or who uses any
15   device, including a computer, to reproduce or reconstruct the image
16   of a child in a prohibited sexual act or in the simulation of such an
17   act is guilty of a crime of the second degree.
18   (5) (a)  Any person who knowingly receives for the purpose of
19   selling or who knowingly sells, procures, manufactures, gives,
20   provides, lends, trades, mails, delivers, transfers, publishes,
21   distributes, circulates, disseminates, presents, exhibits, advertises,
22   offers or agrees to offer, through any means, including the Internet,
23   any photograph, film, videotape, computer program or file, video
24   game or any other reproduction or reconstruction which depicts a
25   child engaging in a prohibited sexual act or in the simulation of
26   such an act, is guilty of a crime of the second degree.
27   (b)  Any person who knowingly possesses or knowingly views
28   any photograph, film, videotape, computer program or file, video
29   game or any other reproduction or reconstruction which depicts a
30   child engaging in a prohibited sexual act or in the simulation of
31   such an act, including on the Internet, is guilty of a crime of the
32   [fourth] third degree.
33   (6)  For purposes of this subsection, a person who is depicted as
34   or presents the appearance of being under the age of 16 in any
35   photograph, film, videotape, computer program or file, video game
36   or any other reproduction or reconstruction shall be rebuttably
37   presumed to be under the age of 16.  If the child who is depicted as
38   engaging in, or who is caused to engage in, a prohibited sexual act
39   or simulation of a prohibited sexual act is under the age of 16, the
40   actor shall be strictly liable and it shall not be a defense that the
41   actor did not know that the child was under the age of 16, nor shall
42   it be a defense that the actor believed that the child was 16 years of
43   age or older, even if such a mistaken belief was reasonable.
44   (cf: P.L.2001, c.291, s.1)
45
46   14.  Section 1 of P.L.1985, c.126 (C.2A:84A-32.4) is amended to
47   read as follows:

A3352 VAINIERI HUTTLE, MCHOSE
24

1    1. a. In prosecutions for aggravated sexual assault, sexual
2    assault, aggravated criminal sexual contact, criminal sexual contact,
3    [or] human trafficking involving sexual activity, child abuse, or in
4    any action alleging an abused or neglected child under P.L.1974,
5    c.119 (C.9:6-8.21 et seq.), the court may, on motion and after
6    conducting a hearing in camera, order the taking of the testimony of
7    a witness on closed circuit television at the trial, out of the view of
8    the jury, defendant, or spectators upon making findings as provided
9    in subsection b. of this section.
10    b.  An order under this section may be made only if the court
11    finds that the witness is 16 years of age or younger and that there is
12    a substantial likelihood that the witness would suffer severe
13    emotional or mental distress if required to testify in open court.
14    The order shall be specific as to whether the witness will testify
15    outside the presence of spectators, the defendant, the jury, or all of
16    them and shall be based on specific findings relating to the impact
17    of the presence of each.
18    c.  A motion seeking closed circuit testimony under subsection
19    a. of this section may be filed by:
20    (1) The victim or witness or the victim's or witness's attorney,
21    parent or legal guardian;
22    (2) The prosecutor;
23    (3) The defendant or the defendant's counsel; or
24    (4) The trial judge on the judge's own motion.
25    d.  The defendant's counsel shall be present at the taking of
26    testimony in camera.  If the defendant is not present, he and his
27    attorney shall be able to confer privately with each other during the
28    testimony by a separate audio system.
29    e.  If testimony is taken on closed circuit television pursuant to
30    the provisions of this act, a stenographic recording of that testimony
31    shall also be required.  A typewritten transcript of that testimony
32    shall be included in the record on appeal.   The closed circuit
33    testimony itself shall not constitute part of the record on appeal
34    except on motion for good cause shown.
35    (cf: P.L.1985, c.126, s.1)
36
37    15. N.J.S.2C:14-7 is amended to read as follows:
38    2C:14-7. a. In prosecutions for aggravated sexual assault, sexual
39    assault, aggravated criminal sexual contact, criminal sexual contact,
40    human trafficking involving sexual activity, endangering the
41    welfare of a child in violation of N.J.S.2C:24-4, or the fourth degree
42    crime of lewdness in violation of subsection b. of N.J.S.2C:14-4,
43    evidence of the victim's previous sexual conduct shall not be
44    admitted nor reference made to it in the presence of the jury except
45    as provided in this section.  When the defendant seeks to admit such
46    evidence for any purpose, the defendant must apply for an order of
47    the court before the trial or preliminary hearing, except that the
48    court may allow the motion to be made during trial if the court

A3352 VAINIERI HUTTLE, MCHOSE
25

1   determines that the evidence is newly discovered and could not
2   have been obtained earlier through the exercise of due diligence.
3   After the application is made, the court shall conduct a hearing in
4   camera to determine the admissibility of the evidence.  If the court
5   finds that evidence offered by the defendant regarding the sexual
6   conduct of the victim is relevant and highly material and meets the
7   requirements of subsections c. and d. of this section and that the
8   probative value of the evidence offered substantially outweighs its
9   collateral nature or the probability that its admission will create
10   undue prejudice, confusion of the issues, or unwarranted invasion of
11   the privacy of the victim, the court shall enter an order setting forth
12   with specificity what evidence may be introduced and the nature of
13   the questions which shall be permitted, and the reasons why the
14   court finds that such evidence satisfies the standards contained in
15   this section.  The defendant may then offer evidence under the order
16   of the court.
17     b.   In the absence of clear and convincing proof to the contrary,
18   evidence of the victim's sexual conduct occurring more than one
19   year before the date of the offense charged is presumed to be
20   inadmissible under this section.
21     c.   Evidence of previous sexual conduct with persons other than
22   the defendant which is offered by any lay or expert witness shall not
23   be considered relevant unless it is material to proving the source of
24   semen, pregnancy or disease.
25     d.   Evidence of the victim's previous sexual conduct with the
26   defendant shall be considered relevant if it is probative of whether a
27   reasonable person, knowing what the defendant knew at the time of
28   the alleged offense, would have believed that the alleged victim
29   freely and affirmatively permitted the sexual behavior complained
30   of.
31     e.   Evidence of the manner in which the victim was dressed at
32   the time an offense was committed shall not be admitted unless
33   such evidence is determined by the court to be relevant and
34   admissible in the interest of justice, after an offer of proof by the
35   proponent of such evidence outside the hearing of the jury or at
36   such hearing as the court may require, and a statement by the court
37   of its findings of fact essential to its determination.  A statement by
38   the court of its findings shall also be included in the record.
39     f.   For the purposes of this section, "sexual conduct" shall mean
40   any conduct or behavior relating to sexual activities of the victim,
41   including but not limited to previous or subsequent experience of
42   sexual penetration or sexual contact, use of contraceptives, sexual
43   activities reflected in gynecological records, living arrangement and
44   life style.
45   (cf: P.L.1995, c.237, s.1)
46
47     16.  (New section) a. The Attorney General shall, in consultation
48   with the Commission on Human Trafficking established by section

A3352 VAINIERI HUTTLE, MCHOSE
26

1    1 of P.L.  , c.  (C.    ) (pending before the Legislature as this
2    bill), establish and maintain the participation of the State with either
3    an existing national, 24-hour toll-free hotline telephone service on
4    human trafficking that is operating on or after the effective date of
5    this section or any federally required hotline telephone service, and
6    shall take appropriate action to publicize the service.
7       b.  Unless otherwise established by a federally required hotline
8    telephone service under federal law, the hotline selected by the
9    Attorney General, in consultation with the commission, shall be
10   capable of receiving information from members of the public who
11   have knowledge of or who believe that an act of human trafficking
12   in violation of section 1 of P.L.2005, c.77 (C.2C:13-8) is being or
13   has been committed.  The hotline service shall also be capable of
14   receiving and responding to requests for information from members
15   of the public concerning human trafficking.
16      c.  The Attorney General shall, pursuant to any funds
17   appropriated or otherwise made available, establish an educational
18   and public information program concerning the crime of human
19   trafficking set out in section 1 of P.L.2005, c.77 (C.2C:13-8).
20
21     17. (New section) a. (1) The Attorney General and the Director
22   of the Division of Criminal Justice in the Department of Law and
23   Public Safety shall develop and approve a training course and
24   curriculum on the handling, response procedures, investigation, and
25   prosecution of human trafficking cases for law enforcement
26   agencies. This training course shall be reviewed at least every two
27   years and modified by the Attorney General and Director of the
28   Division of Criminal Justice from time to time as need may require.
29     (2) The Attorney General shall be responsible for ensuring that
30   all law enforcement officers attend initial training within 90 days of
31   appointment or transfer and annual inservice training of at least four
32   hours as described in this section.
33     (3) The Division of Criminal Justice shall distribute the training
34   materials and curriculum to all State, county, and local law
35   enforcement agencies.
36      b.  (1) The Division of Criminal Justice, in consultation with the
37   Department of Community Affairs, shall develop and approve a
38   training course on the handling and response procedures of
39   suspected human trafficking activities for owners, operators, and
40   staff of hotels and motels as defined in the "Hotel and Multiple
41   Dwelling Law," P.L.1967, c.76 (C.55:13A-1 et seq.). This training
42   course shall be reviewed at least every two years and modified by
43   the Division of Criminal Justice, in consultation with the
44   Department of Community Affairs, from time to time as need may
45   require.
46     (2) The Department of Community Affairs shall be responsible
47   for ensuring that all hotel and motel owners, operators, and staff
48   attend initial training within 90 days of enactment of this section,

A3352 VAINIERI HUTTLE, MCHOSE
27

1  and annual inservice training of at least four hours as described in
2  this section.
3      (3) The Department of Community Affairs shall distribute the
4  training materials and curriculum to all hotels and motels in the
5  State.
6      c.  (1)  The Division of Criminal Justice, in consultation with
7  the Department of Human Services, shall develop and approve a
8  training course on the handling and response procedures of
9  suspected human trafficking activities for employees of every
10  licensed health care facility as defined in section 2 of P.L.1971,
11  c.136  (C.26:2H-2),  including  those  professionals  whose
12  professional practice is regulated pursuant to Title 45 of the Revised
13  Statutes.  This training course shall be reviewed at least every two
14  years and modified by the Division of Criminal Justice, in
15  consultation with the Department of Human Services.
16      (2) The Department of Human Services shall be responsible for
17  ensuring that all employees of licensed health care facilities attend
18  initial training within 90 days of enactment of this section, and
19  annual inservice training of at least four hours as described in this
20  section.
21      (3) The Department of Human Services shall distribute the
22  training materials and curriculum to all licensed health care
23  facilities in the State.
24      d. (1) The Administrative Office of the Courts shall develop and
25  approve a training course and a curriculum on the handling,
26  investigation, and response procedures and prosecution of human
27  trafficking cases for all judges and all judicial personnel. This
28  training course shall be reviewed at least every two years and
29  modified by the Administrative Office of the Courts from time to
30  time as need may require.
31      (2) The Administrative Office of the Courts shall be responsible
32  for ensuring that all judges and judicial personnel attend initial
33  training within 90 days of appointment or transfer and annual in-
34  service training of at least four hours as described in this section.
35      e.  The Division of Criminal Justice, the Department of
36  Community Affairs, the Department of Human Services, and the
37  Administrative Office of the Courts shall provide that all training on
38  the handling of human trafficking cases shall include information
39  concerning the impact of human trafficking on society, the statutory
40  and case law concerning human trafficking, policies and procedures
41  as promulgated or ordered by the Attorney General, the Department
42  of Community Affairs, the Department of Human Services, or the
43  Supreme Court, or the federal government and the use of available
44  community resources, support services, sanctions, and treatment
45  options for victims of human trafficking.
46
47      18. Section 9 of P.L.1985, c.404 (C.52:4B-47) is amended to
48  read as follows:

A3352 VAINIERI HUTTLE, MCHOSE
28

1    9.  a.  The curriculum for police training courses required
2  pursuant to P.L.1961, c.56 (C.52:17B-66 et seq.) shall include
3  training on responding to the needs of crime victims, and specific
4  training on responding to the needs of victims of human trafficking
5  as defined in section 1 of P.L.2005, c.77 (C.2C:13-8), and on
6  services available to provide assistance, including information on
7  federal, State, and local hotlines available to receive reports of and
8  provide assistance to victims of human trafficking.
9    b.  In-service training shall be made available for police
10  officers, assistant prosecutors, county detectives and investigators
11  on specialized needs of crime victims and available services.
12  (cf: P.L.1985, c.404, s.9)
13
14    19.  (New section) a. An applicant for licensure as a massage and
15  bodywork therapist or registration as an employer offering massage
16  and bodywork therapies under P.L.1999, c.19 (C.45:11-53 et seq.)
17  and P.L.2007, c.337 (C.45:11-68 et seq.) shall not be eligible for
18  licensure or registration, as the case may be, and any holder of a
19  license or registration under P.L.1999, c.19 (C.45:11-53 et seq.) and
20  P.L.2007, c.337 (C.45:11-68 et seq.) shall have his license or
21  registration revoked if the New Jersey Board of Massage and
22  Bodywork Therapy determines, consistent with subsection f. of
23  section 8 of P.L.1978, c.73 (C.45:1-21), that criminal history record
24  information exists on file in the Federal Bureau of Investigation,
25  Identification Division, or in the State Bureau of Identification in
26  the Division of State Police, which may disqualify that individual
27  from being licensed or registered.
28    b.  An applicant and holder of a license or registration who is
29  required to undergo a criminal history record background check
30  pursuant to subsection a. of this section shall submit to the board his
31  name, address, and fingerprints taken on standard fingerprint cards
32  by a State or municipal law enforcement agency or by a private
33  entity under contract with the State.  The board is authorized to
34  exchange fingerprint data with and receive criminal history record
35  information from the Federal Bureau of Investigation and the
36  Division of State Police for use in making the determinations
37  required pursuant to this section.
38    c.  Upon receipt of the criminal history record information for a
39  person from the Federal Bureau of Investigation or the Division of
40  State Police, the board shall notify the applicant, licensee, or
41  registered individual, as applicable, in writing, of the person's
42  qualification or disqualification for licensure or registration under
43  this section.
44    d.  If an applicant, licensee, or registered individual refuses to
45  consent to, or cooperate in, the securing of a criminal history record
46  background check, the board shall not issue a license or registration,
47  as the case may be, or other authorization to the applicant, licensee,
48  or registered individual.

A3352 VAINIERI HUTTLE, MCHOSE
29

1    e. All costs associated with performing the criminal history
2 record background check required by this section shall be borne by
3 the applicant for licensure or registration or the holder of any
4 license or registration.
5    f. The New Jersey Board of Massage and Bodywork Therapy,
6 pursuant to the "Administrative Procedure Act," P.L.1968, c.410
7 (C.52:14B-1 et seq.), shall adopt rules and regulations to effectuate
8 the purposes of this section.
9
10    20. Sections 1 and 2 of this act shall take effect immediately, and
11 the remaining sections shall take effect on the first day of the second
12 month next following the date of enactment, but the Attorney General,
13 Commissioner of Community Affairs, Commissioner of Human
14 Services, the Director of the Administrative Office of the Courts, and
15 the New Jersey Board of Massage and Bodywork Therapy may take
16 any anticipatory administrative action in advance thereof as shall be
17 necessary for the implementation of this act.
18
19
20                      STATEMENT
21
22    This bill revises and expands the State's human trafficking law
23 by creating a new human trafficking commission, criminalizing
24 additional activities related to human trafficking as well as
25 upgrading certain penalties on existing human trafficking or related
26 crimes, increasing protections afforded to victims of human
27 trafficking, and providing for increased training and public
28 awareness on human trafficking issues.
29    *Section 1: The commission.* This section would establish a 15-
30 member Commission on Human Trafficking, to be located in the
31 Department of Law and Public Safety. The commission would be
32 directed to evaluate the existing law concerning human trafficking
33 and the enforcement thereof, and to make recommendations for
34 legislation, if appropriate. The commission would also be charged
35 with the responsibility of reviewing existing victim assistance
36 programs, and promoting a coordinated response by public and
37 private resources for victims of human trafficking. In addition, the
38 commission would administer and make expenditures from the
39 "Human Trafficking Survivor's Assistance Fund" established by the
40 bill (see section 2).
41    The commission would consist of: the Attorney General, or his
42 designee; the Commissioner of Children and Families, or his
43 designee; the Commissioner of Human Services, or his designee;
44 one member of the existing New Jersey Human Trafficking Task
45 Force in the Department of Law and Public Safety, designated by
46 the Attorney General; two public members appointed by the
47 Governor based upon the recommendation of the Senate President,
48 one representing law enforcement and one representing a victim's

A3352 VAINIERI HUTTLE, MCHOSE
30

1   assistance organization; one public member appointed by the
2   Governor based upon the recommendation of the Senate Minority
3   Leader representing either a non-profit health care facility or mental
4   health services; two public members appointed by the Governor
5   based upon the recommendation of the Speaker of the General
6   Assembly, one representing law enforcement and one representing a
7   victim's assistance organization; one public member appointed by
8   the Governor based upon the recommendation of the Assembly
9   Minority Leader representing either a non-profit health care facility
10  or mental health services; and five public members appointed by the
11  Governor, one of whom shall be a representative of the National
12  Center for Missing and Exploited Children.  All public members
13  would also be required to possess a background in, or have
14  specialized knowledge of, the legal, policy, educational, social, or
15  psychological aspects of human trafficking.
16      The commission would be required to annually report to the
17  Governor and the Legislature as to its activities, as well as its
18  findings and recommendations for any needed new laws, services,
19  or resources for victims of human trafficking.
20      *Section 2: The "Human Trafficking Survivor's Assistance*
21  *Fund."*  This section would establish a separate, non-lapsing,
22  dedicated fund in the General Fund known as the "Human
23  Trafficking Survivor's Assistance Fund."  The Commission on
24  Human Trafficking would administer the fund, using the monies for
25  the provision of services to victims of human trafficking, to
26  promote awareness of human trafficking, and the development,
27  establishment, operation, and maintenance of the "John School
28  Diversion Program" created pursuant to section 10 of the bill.
29      *Section 3: Human trafficking – expanding criminal liability.*  The
30  existing definition of human trafficking would be expanded by this
31  section.  It would incorporate actions involving abduction, fraud,
32  deceit or other deception, and abuses of power, as recognized means
33  of accomplishing human trafficking.
34      This section would also establish criminal negligence for
35  licensed owners or drivers of commercial passenger vehicles with
36  respect to the negligent participation in transporting human
37  trafficking victims, and make any other professionally licensed
38  person criminally liable for negligently permitting an act of human
39  trafficking on, within, or using that person's property or services.
40  A "professionally licensed person" is defined under the section as
41  any person required by law to obtain, from a governmental
42  department, agency, board, or commission of the State or any
43  political subdivision of the State, a license, permit, certificate,
44  approval, registration, charter, or similar form of business or
45  professional authorization in order to operate a business or as a
46  professional in this State.
47      Criminal negligence in this context means that the commercially
48  licensed vehicle owner or driver, or other professionally licensed

**A3352** VAINIERI HUTTLE, MCHOSE

31

1  person, should be aware of a substantial and unjustifiable risk that a
2  material element of an act of human trafficking exists or will result
3  from the person's conduct; this risk must be of such a nature and
4  degree that the professionally licensed person's failure to perceive it
5  involves a gross deviation from the standard of care that a
6  reasonable person would observe if in that professionally licensed
7  person's situation. <u>See</u> N.J.S.2C:2-2.

8  Negligently permitting an act of human trafficking would be
9  established as a crime of the fourth degree. Such crime is ordinarily
10 punishable by a term of imprisonment of up to 18 months, a fine of
11 up to $10,000, or both. <u>See</u> N.J.S.2C:43-3 and -6. However, while
12 the section does not modify the ordinary term of imprisonment, it
13 does alter the possible fine amount. Pursuant to the section's
14 provisions, an offender, notwithstanding the ordinary fine amount,
15 would be subject to a fine of up to $25,000, to be deposited in the
16 "Human Trafficking Survivor's Assistance Fund." Additionally,
17 upon conviction, the court would revoke any license, permit,
18 certificate, approval, registration, charter, or similar form of
19 business or professional authorization required by law concerning
20 the operation of that person's business or profession.

21 Finally, the section increases the minimum fine amount for any
22 other form of criminal human trafficking already established in law
23 by this section as a crime of the first degree (e.g., recruiting persons
24 for trafficking, financing a trafficking operation). A crime of the
25 first degree is ordinarily punishable by a fine of up to $200,000, but
26 the bill's provisions would establish that the fine be at least
27 $25,000, with the added directive that the monies be deposited in
28 the "Human Trafficking Survivor's Assistance Fund."

29 <u>*Section 4: Civil action for human trafficking.*</u> This section would
30 establish a new civil action for human trafficking, permitting any
31 person injured as a result of human trafficking, including acts
32 resulting in the loss of money or property, real or personal, to file
33 an action in any court of competent jurisdiction. The action could
34 be brought whether or not a criminal prosecution of human
35 trafficking occurred.

36 In any such civil action, in addition to any other appropriate legal
37 or equitable relief, an award of damages would include an amount
38 reflecting the income or value of the injured party's labor or
39 services to the defendant, similar to the victim's restitution required
40 of a criminal defendant upon conviction of a human trafficking
41 violation.

42 <u>*Section 5: Ownership and leasing of premises for human*</u>
43 <u>*trafficking.*</u> This section would create two crimes concerning
44 premises used for human trafficking, including a residential home,
45 apartment, hotel, or motel: (1) a person who knowingly owns,
46 controls, manages, or supervises any premises where human
47 trafficking is regularly carried on; and (2) a person who knowingly
48 leases or otherwise permits any premises controlled by the actor,

A3352 VAINIERI HUTTLE, MCHOSE
32

1  alone or in association with others, to be regularly used for human
2  trafficking, or fails to make a reasonable effort to abate such use by
3  ejecting the tenant or notifying law enforcement authorities.  Both
4  would be categorized as a crime of the first degree, ordinarily
5  punishable by a term of imprisonment for 10 to 20 years, a fine of
6  up to $200,000, or both; however, the bill's provisions would
7  establish that the fine be at a minimum $25,000.  All fines from a
8  violation of this section would be deposited in the "Human
9  Trafficking Survivor's Assistance Fund."
10    These crimes are based on similar crimes in the statutory scheme
11  concerning prostitution found in N.J.S.2C:34-1, but would be
12  focused on human trafficking, which, as described in section 1 of
13  P.L.2005, c.77 (C.2C:13-8), does not just incorporate engaging in
14  sexual activity but may include forced labor or services by victims.
15    _Sections 6 and 7: Removal of tenants due to human trafficking._
16  These sections amend sections 2 and 3 of P.L.1974, c.49 (C.2A:18-
17  61.1 and -61.2) concerning the grounds and expedited timing for
18  removal of tenants, to add a conviction for human trafficking within
19  or upon a leased premises, building, or complex of buildings as a
20  basis for removal.
21    The inclusion of a human trafficking conviction would add to the
22  current law's list of various criminal offenses for which tenant
23  removal is expressly permitted.  These other offenses include: drug
24  offenses; offenses under N.J.S.2C:12-1 (assault) or N.J.S.2C:12-3
25  (terroristic threats) against the landlord, a member of the landlord's
26  family, or an employee of the landlord; and offenses under
27  N.J.S.2C:20-1 et al. involving theft of property from the landlord,
28  the leased premises, or other tenants residing in the same premises,
29  building, or complex.
30    _Section 8: Prostitution._  This section amends N.J.S.2C:34-1
31  concerning prostitution.
32    The definition of "prostitution" would be expanded to recognize
33  that the prohibited sexual activity may be performed in exchange
34  for something of economic "or other value," intending that a direct
35  economic benefit need not be derived in order to establish the crime
36  of prostitution.
37    It would also upgrade the criminal penalty for two existing types
38  of promoting prostitution.  First, transporting a person into or
39  within this State with the purpose to promote that person's engaging
40  in prostitution, or procuring or paying for transportation with that
41  purpose would be upgraded from a crime of the fourth degree to a
42  crime of the third degree (imprisonment of three to five years; fine
43  of up to $15,000; or both).  Second, knowingly leasing or otherwise
44  permitting a place controlled by the actor, alone or in association
45  with others, to be regularly used for prostitution or promotion of
46  prostitution, or failure to make a reasonable effort to abate such use
47  by ejecting the tenant, notifying law enforcement authorities, or
48  through other legally available means would also be upgraded from

A3352 VAINIERI HUTTLE, MCHOSE
33

1   a crime of the fourth degree crime to a crime of the third degree
2   (same sentencing parameters as above).
3       In addition, the amendments would expand the availability of an
4   affirmative defense against a prosecution for engaging in prostitution,
5   by allowing any person, regardless of age, to claim the defense of
6   being a victim compelled to engage in sexual activity.
7       _Section 9: Procedure to vacate a criminal conviction for_
8   _prostitution due to being a human trafficking victim._ This section
9   would permit any person, convicted and serving a sentence as
10  provided for by the Criminal Code (Title 2C) for engaging in
11  prostitution, to move to have the sentence reviewed by a court and
12  vacated, reduced, or altered, on the grounds that the defendant was a
13  victim of human trafficking. A court would consider all relevant
14  circumstances in making a determination, including whether the
15  defendant's victimization constituted a significant contributing factor
16  to the criminal behavior, regardless of whether the defendant raised
17  this factor as a defense at trial.
18      _Section 10: John School Diversion Program._ This section would
19  require a person who is convicted of engaging a prostitute ("johns")
20  to participate in a newly established "John School Diversion
21  Program." The section would impose a penalty of $1,000 on each
22  defendant, to be deposited in the "Human Trafficking Survivor's
23  Assistance Fund." These monies (and others in the fund) would be
24  dedicated to the development, establishment, operation, and
25  maintenance of the program.
26      The program would be administered by the Administrative
27  Office of the Courts. The program would educate those persons who
28  have been convicted of engaging a prostitute about the risks
29  involved in their unlawful activity. Defendants would be informed
30  about the health risks connected with the crime, the legal
31  ramifications of their unlawful activity, the terms of imprisonment
32  for subsequent offenses, and the correlation between prostitution
33  and human trafficking.
34      The program is modeled after similar "john school" programs
35  which have been implemented in Buffalo, New York; Brooklyn,
36  New York; Pittsburgh, Pennsylvania; and West Palm Beach,
37  Florida.
38      _Sections 11 and 12: Advertising commercial sexual abuse of a_
39  _minor._ This section would make it a crime of the first degree
40  (imprisonment of 10 to 20 years; fine of at least $25,000 but not
41  more than $200,000; or both) to commit an offense related to
42  advertising commercial sexual abuse of a minor. A person would
43  be guilty of this offense if the person: (1) knowingly publishes,
44  disseminates, or displays, or causes directly or indirectly, to be
45  published, disseminated, or displayed, any advertisement for a
46  commercial sex act, which is to take place in this State and which
47  includes the depiction of a minor; or (2) knowingly purchases
48  advertising in this State for a commercial sex act which includes the

A3352 VAINIERI HUTTLE, MCHOSE
34

1   depiction of a minor.  An "advertisement for a commercial sex act"
2   is defined as any advertisement or offer in electronic or print media,
3   including the Internet, which includes either an explicit or implicit
4   offer for a commercial sex act to occur in this State.    A
5   "commercial sex act" is defined as any act of sexual contact, sexual
6   penetration, or other prohibited act that can endanger a minor and
7   for which something of value is given or received by any person.
8       The section specifies that it would not be a defense that the
9   defendant did not know the actual age of the minor depicted in an
10  advertisement; however, it would be a defense if the defendant
11  made a reasonable, bona fide attempt to ascertain the actual age of
12  the minor depicted in the advertisement by requiring, prior to
13  publication, dissemination, or display of the advertisement, a
14  production of a driver's license, marriage license, birth certificate,
15  or other governmental or educational identification card or paper of
16  the minor depicted in the advertisement.  To invoke this defense,
17  the defendant would be required to produce for inspection by law
18  enforcement a record of the identification used to verify the age of
19  the person depicted in the advertisement.
20      As with several of the other crimes created or modified by this
21  bill, the fine imposed for advertising commercial sexual abuse of a
22  minor (at least $25,000) would be deposited in the "Human
23  Trafficking Survivor's Assistance Fund."
24      The sponsor intends this section to address the problem of escort
25  services whose advertisements include minors being sold for sex,
26  which constitutes a form of sex trafficking and abuse.
27      This section is modeled after a recently enacted Washington state
28  law, 2012 Wash. Laws c.138 (Wash. Rev. Code Ann. 9.68A.104),
29  and Connecticut state law, 2012 Conn. Acts 12-141 (not yet
30  allocated, effective October 1, 2012), that created criminal offenses
31  related to advertising commercial sexual abuse of a minor.
32      _Section 13: Endangering the welfare of children._  This section
33  would increase the criminal penalties for some offenses concerning
34  endangering the welfare of children.  It increases, from a crime of
35  the fourth degree to a crime of the third degree (imprisonment of
36  three to five years; fine of up to $15,000; or both), knowingly
37  possessing or knowingly viewing any photograph, film, videotape,
38  computer program or file, video game, or any other reproduction or
39  reconstruction which depicts a child engaging in a prohibited sexual
40  act or in the simulation of such an act.
41      _Sections 14 and 15: Protecting victims who testify in_
42  _prosecutions._  This section takes existing criminal procedures
43  established to protect victims, particularly minors, participating in
44  the prosecution of various crimes (usually those involving sexual
45  victimization, such as sexual assault or endangering the welfare of
46  children), and would expand these procedures to cover prosecutions
47  for human trafficking.

A3352 VAINIERI HUTTLE, MCHOSE
35

1    Thus, whenever the crime of human trafficking involved sexual
2    activity (as defined in paragraph (2) of subsection a. of
3    N.J.S.2C:34-1), the section would permit, upon appropriate
4    application, closed circuit testimony by a minor victim taken
5    outside the presence of spectators, the criminal defendant, the jury,
6    or all such parties. Additionally, for any victim regardless of age,
7    the section, expanding the State's rape shield law, would prevent
8    admissibility in evidence of previous sexual conduct or manner of
9    dress, unless the value of such evidence is first determined by a
10   court to be "relevant and highly material" and the value of its
11   submission substantially outweighed the probability it would create
12   an unwarranted invasion of privacy of the victim, undue prejudice,
13   or other concern related to the administration of justice in
14   prosecuting the case.
15       _Section 16: Human trafficking hotline._ This section would
16   require the Attorney General, in consultation with the Commission
17   on Human Trafficking (see section 1 of the bill), to establish and
18   maintain the participation of the State with either an existing,
19   national 24-hour toll-free telephone hotline service on human
20   trafficking, or any federally required hotline telephone service
21   created under federal law.   Unless otherwise established by a
22   federally required hotline telephone service under federal law, the
23   hotline telephone service selected by the Attorney General, in
24   consultation with the commission, would be required to receive
25   information from members of the public who have knowledge of or
26   who believe that an act of human trafficking is being or has been
27   committed.   The hotline would also be required to receive and
28   respond to requests for information from members of the public
29   concerning human trafficking.   In addition, the section would
30   require the Attorney General, pursuant to any funds appropriated or
31   otherwise made available, to establish an educational and public
32   information program concerning the crime of human trafficking.
33       _Section 17: Training programs on human trafficking for_
34   _governmental and non-governmental personnel._ This section would
35   require the Division of Criminal Justice, the Department of
36   Community Affairs, the Department of Human Services, and the
37   Administrative Office of the Courts to develop and approve training
38   courses and curricula on the handling, response, investigation, and
39   prosecution of human trafficking for various governmental and non-
40   governmental personnel, including law enforcement officers, judges
41   and judicial personnel, hotel and motel owners, operators and staff,
42   and licensed health care facility employees. The courses and
43   curricula would include information concerning the impact of
44   human trafficking on society, the statutory and case law concerning
45   human trafficking, policies and procedures of the State, and the use
46   of available community resources, support services, sanctions, and
47   treatment options for victims of human trafficking.

A3352 VAINIERI HUTTLE, MCHOSE
36

1    The Attorney General would be responsible for the training of
2    law enforcement officers.  The training for judges and judicial
3    personnel would be the responsibility of the Administrative Office
4    of the Courts.  The training for hotel and motel owners, operators,
5    and staff would be the responsibility of the Department of
6    Community Affairs.  The training for employees of licensed health
7    care facilities, including those professionals whose professional
8    practice is regulated pursuant to Title 45 of the Revised Statutes,
9    would be the responsibility of the Department of Human Services.
10   *Section 18: Expanding police training curricula to include*
11   *human trafficking victims' assistance.* This section would provide
12   that the curricula for police training courses shall also include
13   specific training on responding to the needs of victims of the crime
14   of human trafficking.
15   *Section 19: Massage and bodywork therapist background checks.*
16   This section would require applicants, and those persons already
17   licensed as massage and bodywork therapists or registered as
18   employers offering massage and bodywork therapies under the
19   provisions of the "Massage and Bodywork Therapist Licensing
20   Act," P.L.1999, c.19 (C.45:11-53 et seq.) and P.L.2007, c.337
21   (C.45:11-68 et seq.), to submit to a State and federal criminal
22   history background check, to determine whether those persons are
23   fit to be so licensed or registered.  The section provides that if the
24   New Jersey Board of Massage and Bodywork Therapy found an
25   applicant for licensure as a massage and bodywork therapist or an
26   individual already so licensed, or an applicant for registration or an
27   individual already so registered as an employer offering massage
28   and bodywork therapies, to have been convicted of, or engaged in
29   acts constituting any crime or offense involving moral turpitude or
30   relating adversely to the activities regulated by the board, that
31   applicant would not be eligible for such licensure or registration,
32   and an individual who already holds a license or registration would
33   have that license or registration revoked.
34   If an applicant, licensee, or registered individual refused to
35   consent to, or cooperate in, the securing of a criminal history record
36   background check, the board would not issue a license or
37   registration, as the case may be, or other authorization to the
38   applicant, licensee, or registered individual.
39   All costs associated with performing a criminal history record
40   background check would be borne by the applicant for licensure or
41   registration or the holder of any license or registration.
42   *Section 20: Effective date.*    Sections 1 and 2 of the bill,
43   establishing the Commission on Human Trafficking and the "Human
44   Trafficking Survivor's Assistance Fund," would take effect
45   immediately, and the remaining sections would take effect on the first
46   day of the second month next following the date of enactment, but the
47   Attorney   General,   Commissioner   of   Community   Affairs,
48   Commissioner of Human Services, Director of the Administrative

**A3352** VAINIERI HUTTLE, MCHOSE
37

1    Office of the Courts, and New Jersey Board of Massage and
2    Bodywork Therapy could take any anticipatory administrative action
3    in advance thereof as shall be necessary for the bill's implementation.

# EXHIBIT U

**New Jersey State Legislature**

home    site map    what's new    faq    links    help    contact us

**GENERAL INFO**
Our Legislature
Legislative Process
Legislative Initiatives
Historical Info
Public Info Assistance
Kids' Page
Capitol Complex
  Parking

**MEMBERS**
Find your Legislator
Legislative Leadership
Legislative Roster
Seating Charts

**DISTRICTS**
Districts by Number
District Map
Municipalities Index

**BILLS**
Bills 2012-2013
Bills 2010-2011
Bills 2008-2009
Bills 2006-2007
Bills 2004-2005
Bills 2002-2003
Bills 2000-2001
Bills 1998-1999
Bills 1996-1997
Bills Subscription
  Service

**COMMITTEES**
Senate Committees
  - Committee Aides
Assembly Committees
  -Committee Aides
Joint Committees
Committee Groups
Legislative
  Commissions
Senate Nominations

**LAWS and
CONSTITUTION**
Statutes
Chapter Laws
Constitution

**RULES**
Senate
General Assembly

**ETHICS**
Conflicts of Interest
  Law
Code Of Ethics
Financial Disclosure
  Termination or
  Assumption of
  Public Employment
  Form
Formal Advisory
  Opinions
Contract Awards
Joint Rule 19
Ethics Tutorial

## Bills 2012-2013

A3352 AcaAcaAaScaSa (5R) The "Human Trafficking Prevention, Protection, and Treatment Act."
Bills and Joint Resolutions Signed by the Governor

Identical Bill Number: S2239   (2R)

Vainieri Huttle, Valerie   as Primary Sponsor
McHose, Alison Littell   as Primary Sponsor
Barnes, Peter J., III   as Primary Sponsor
Tucker, Cleopatra G.   as Primary Sponsor
Fuentes, Angel   as Primary Sponsor
Stender, Linda   as Primary Sponsor
Sumter, Shavonda E.   as Primary Sponsor
Dancer, Ronald S.   as Primary Sponsor
Munoz, Nancy F.   as Primary Sponsor
Wagner, Connie   as Co-Sponsor
Caputo, Ralph R.   as Co-Sponsor
McKeon, John F.   as Co-Sponsor
Quijano, Annette   as Co-Sponsor
Gusciora, Reed   as Co-Sponsor
Riley, Celeste M.   as Co-Sponsor
Jasey, Mila M.   as Co-Sponsor
Chivukula, Upendra J.   as Co-Sponsor
Giblin, Thomas P.   as Co-Sponsor
Eustace, Timothy J.   as Co-Sponsor
Conaway, Herb, Jr.   as Co-Sponsor
Johnson, Gordon M.   as Co-Sponsor
Pou, Nellie   as Co-Sponsor
Vitale, Joseph F.   as Co-Sponsor
Gill, Nia H., Esq.   as Co-Sponsor
Kean, Thomas H., Jr.   as Co-Sponsor
Ruiz, M. Teresa   as Co-Sponsor
Buono, Barbara   as Co-Sponsor
Stack, Brian P.   as Co-Sponsor
Beck, Jennifer   as Co-Sponsor
Cardinale, Gerald   as Co-Sponsor
Cunningham, Sandra B.   as Co-Sponsor
Greenstein, Linda R.   as Co-Sponsor
Allen, Diane B.   as Co-Sponsor
Oroho, Steven V.   as Co-Sponsor
Addiego, Dawn Marie   as Co-Sponsor
Gordon, Robert M.   as Co-Sponsor
Madden, Fred H., Jr.   as Co-Sponsor
Turner, Shirley K.   as Co-Sponsor
Ciattarelli, Jack M.   as Co-Sponsor
Jimenez, Angelica M.   as Co-Sponsor
Space, Parker   as Co-Sponsor

10/11/2012 Introduced, Referred to Assembly Judiciary Committee
10/15/2012 Reported out of Asm. Comm. with Amendments, and Referred to Assembly Appropriations Committee
12/13/2012 Reported out of Assembly Comm. with Amendments, 2nd Reading
1/28/2013 Assembly Floor Amendment Passed (Vainieri Huttle)

New Jersey Legislature - Bills

**CONTINUING LEGAL EDUCATION for LEGISLATIVE ATTORNEYS**
CLE Registration Form
Certification for CLE Ethics Credit
CLE Presentation Schedule

**LEGISLATIVE PUBLICATIONS**
Legislative Calendar
Legislative Digest
Legislative LDOA
Budget and Finance
Audit Reports
Legislative Reports
Public Hearing Transcripts
Glossary
Summary of Enactments

Disclaimer/ Privacy Policy



OPRA | Open Public Records Act

Submit an OPRA request



2/14/2013 Passed by the Assembly (77-0-0)
2/21/2013 Received in the Senate, Referred to Senate Budget and Appropriations Committee
3/4/2013 Reported from Senate Committee with Amendments, 2nd Reading
3/18/2013 Substituted for S2239 (2R)
3/18/2013 Senate Amendment (40-0) (Pou)
3/18/2013 Emergency Resolution (40-0) (Pou)
3/18/2013 Passed by the Senate (40-0)
3/21/2013 Received in the Assembly, 2nd Reading on Concurrence
3/21/2013 Passed Assembly (Passed Both Houses) (76-0-0)
5/6/2013 Approved P.L.2013, c.51.

Introduced - 37 pages PDF Format   HTML Format
Statement - AJU 10/15/12 - 9 pages PDF Format   HTML Format
Reprint - 30 pages PDF Format   HTML Format
Statement - AAP 12/13/12 1R - 16 pages PDF Format   HTML Format
Reprint - 40 pages PDF Format   HTML Format
Floor Statement - Assembly 1/28/13 2R CC - 4 pages PDF Format   HTML Format
Reprint - 44 pages PDF Format   HTML Format
Fiscal Estimate - 2/20/13; 3R - 9 pages PDF Format   HTML Format
Statement - SBA 3/4/13 3R - 11 pages PDF Format   HTML Format
Reprint - 44 pages PDF Format   HTML Format
Floor Statement - Senate 3/18/13 4R - 1 pages PDF Format   HTML Format
Reprint - 44 pages PDF Format   HTML Format
Fiscal Estimate - 3/25/13; 5R - 4 pages PDF Format   HTML Format
Advance Law - 43 pages PDF Format   HTML Format
Pamphlet Law - 25 pages PDF Format   HTML Format

**Committee Voting:**
AJU 10/15/2012 - r/Aca - Yes {5}  No {0}  Not Voting {0}  Abstains {2}  -  Roll Call
AAP 12/13/2012 - r/Aca - Yes {9}  No {0}  Not Voting {0}  Abstains {0}  -  Roll Call
SBA 3/4/2013 - r/Sca - Yes {13}  No {0}  Not Voting {0}  Abstains {0}  -  Roll Call

**Session Voting:**
Asm. 2/14/2013 - 3RDG FINAL PASSAGE  - Yes {77}  No {0}  Not Voting {2}  Abstains {0}  -  Roll Call
Sen. 3/18/2013 - SUBSTITUTE FOR S2239 - Yes {0}  No {0}  Not Voting {40}  - Voice Vote Passed
Sen. 3/18/2013 - 2ND READING  - Yes {0}  No {0}  Not Voting {40}  - Voice Vote Passed
Sen. 3/18/2013 - AMEND  - Yes {40}  No {0}  Not Voting {0}  - Roll Call
Sen. 3/18/2013 - EMERGENCY  - Yes {40}  No {0}  Not Voting {0}  - Roll Call
Sen. 3/18/2013 - 3RDG FINAL PASSAGE  - Yes {40}  No {0}  Not Voting {0}  - Roll Call
Asm. 3/21/2013 - CONCUR IN SA  - Yes {76}  No {0}  Not Voting {4}  Abstains {0}  - Roll Call

**home | back** to NJ State Legislature Bill Search

Document Formats Used on this Site • email for Legislative Info • email Webmaster
©2002 New Jersey Office of Legislative Services

# EXHIBIT V

§§1,2 –
C.52:17B-237 &
52:17B-238
§4 - C.2C:13-8.1
§§5,12,18,19 –
C.2C:13-9 to
2C:13-12
§10 - C.2C:44-1.1
§11 - C.2C:34-1.2
§21 - C.45:11-80
§22 - Note

P.L.2013, CHAPTER 51, *approved May 6, 2013*
Assembly, No. 3352 *(Fifth Reprint)*

1    AN ACT concerning human trafficking and designated the "Human
2        Trafficking Prevention, Protection, and Treatment Act," and
3        amending and supplementing various parts of the statutory law.
4
5        BE IT ENACTED *by the Senate and General Assembly of the State*
6    *of New Jersey:*
7
8        1.  (New section) a.  (1)    There is hereby created, in the
9    [2]Division of Criminal Justice in the[2]   Department of Law and
10   Public Safety, a commission to be known as the Commission on
11   Human Trafficking, consisting of 15 members as follows: the
12   Attorney General, or his designee; the Commissioner of Children
13   and Families, or his designee; the Commissioner of Human
14   Services, or his designee; [1]a county prosecutor, appointed by the
15   Governor based upon the recommendation of the County
16   Prosecutors Association of the State of New Jersey;[1] one member of
17   the New Jersey Human Trafficking Task Force established within
18   the Department of Law and Public Safety, designated by the
19   Attorney General; two public members appointed by the Governor
20   based upon the recommendation of the Senate President, one
21   representing law enforcement and one representing a victim's
22   assistance organization; one public member appointed by the
23   Governor based upon the recommendation of the Senate Minority
24   Leader representing either a non-profit health care facility or mental
25   health services; two public members appointed by the Governor
26   based upon the recommendation of the Speaker of the General
27   Assembly, one representing law enforcement and one representing a
28   victim's assistance organization; one public member appointed by

EXPLANATION – Matter enclosed in bold-faced brackets [thus] in the above bill is
not enacted and is intended to be omitted in the law.

Matter underlined thus is new matter.
Matter enclosed in superscript numerals has been adopted as follows:
[1]Assembly AJU committee amendments adopted October 15, 2012.
[2]Assembly AAP committee amendments adopted December 13, 2012.
[3]Assembly floor amendments adopted January 28, 2013.
[4]Senate SBA committee amendments adopted March 4, 2013.
[5]Senate floor amendments adopted March 18, 2013.

A3352 [5R]
2

1  the Governor based upon the recommendation of the Assembly
2  Minority Leader representing either a non-profit health care facility
3  or mental health services; and ¹[five] four¹ public members
4  appointed by the Governor, one of whom shall be a representative
5  of ³[the National Center for Missing and Exploited Children] a
6  child advocacy organization concerning missing, abducted, or
7  exploited children, and one of whom shall be a human trafficking
8  survivor³. All public members shall ³have experience with,³
9  possess a background in, or ³[have] demonstrate a³ specialized
10  knowledge of, the legal, policy, educational, social, or
11  psychological aspects of human trafficking.
12     b.   (1) Of the public members first appointed:
13     (a) the following shall serve for a term of three years:  one
14  member appointed upon the recommendation of the Senate
15  President; one member appointed upon the recommendation of the
16  Speaker of the General Assembly; and ¹[three] two¹ members
17  appointed by the Governor; and
18     (b) the following shall serve for a term of two years: one member
19  appointed upon the recommendation of the Senate President; one
20  member appointed upon the recommendation of the Speaker of the
21  General Assembly; each member appointed ²[by] upon the
22  recommendation of² the Senate and Assembly Minority Leaders;
23  and two members appointed by the Governor.
24     (c) Upon the conclusion of the initial terms, each public member
25  shall be appointed for a term of three years.
26     (2) Each member appointed shall hold office for the term of
27  appointment and until a successor shall have been appointed and
28  qualified.
29     (3) Any vacancy in the membership of the commission shall be
30  filled by appointment in the same manner as the original
31  appointment was made.
32     c.   (1) The commission shall organize upon the appointment of
33  a majority of its authorized membership.  The members shall elect
34  one of the members to serve as chair and vice-chair, and the chair
35  may appoint a secretary, who need not be a member of the
36  commission.
37     (2) The commission shall meet at those times and places within
38  the State of New Jersey as the commission shall determine.  A
39  majority of the commission's authorized membership shall
40  constitute a quorum for the transaction of any business, for the
41  performance of any duty, or for the exercise of any power of the
42  commission.
43     d.   The members of the commission shall serve without
44  compensation, but shall be eligible for reimbursement for necessary
45  and reasonable expenses incurred in the performance of their
46  official duties within the limits of funds appropriated or otherwise
47  made available to the commission for its purposes.

A3352 [5R]
3

1    e.  The [2][commission shall be entitled to accept the assistance
2  and services of the employees of any State, county, or municipal
3  department, board, bureau, commission, or agency as may be made
4  available to it and to employ] Division of Criminal Justice in the
5  Department of Law and Public Safety shall, at the direction of the
6  Attorney General, provide[2] legal, stenographic, technical, [2][and][2]
7  clerical [2], and other staff and resource[2] assistance [2]to the
8  commission,[2] and [2]additionally the commission may[2] incur
9  expenses as may be necessary in order to perform its duties within
10  the limits of funds appropriated or otherwise made available to it
11  for its purposes.
12    f.  It shall be the duty of the commission to:
13    (1) Evaluate the existing law concerning human trafficking and
14  the enforcement thereof, and to make recommendations for
15  legislation, if appropriate;
16    (2) Review existing victim assistance programs and analyze the
17  costs, organization, and availability of these services for victims of
18  human trafficking and to make recommendations for legislation, if
19  appropriate;
20    (3) Promote a coordinated response by public and private
21  resources for victims of human trafficking; [2]and[2]
22    (4) Develop mechanisms to promote public awareness of human
23  trafficking [1], including [3][the][3] promotion of [3][a] the national,[3]
24  24-hour toll-free hotline telephone service on human trafficking
25  [3][established] described[3] under section [4][16] 18[2] of P.L.      ,
26  c. (C.      ) (pending before the Legislature as this bill)[1] [2][;] , and
27  the promotion of training courses and other educational materials
28  for use by persons required under section 19 of P.L.
29  c. (C.      ) (pending before the Legislature as this bill) to undergo
30  training on the handling of and response procedures for suspected
31  human trafficking activities.[2] [1][and][1]
32    [2][(5) [1]Develop, maintain, revise, and distribute, in accordance
33  with the provisions of section 17 of P.L.      , c. (C.      ) (pending
34  before the Legislature as this bill), training course and other
35  educational materials for use by persons required to undergo
36  training on the handling of and response procedures for suspected
37  human trafficking activities;
38    (6)[1] Administer and make expenditures from the "Human
39  Trafficking Survivor's Assistance Fund" established under section 2
40  of P.L.      , c. (C.      ), for the provision of services to victims of
41  human trafficking, to promote awareness of human trafficking,
42  [1][and][1] the development, establishment, operation, and
43  maintenance of the "John School Diversion Program" created
44  pursuant to section 10 of P.L.      , c. (C.      ) (pending before the
45  Legislature as this bill) [1], and the development, maintenance,
46  revision, and distribution of training course and other educational
47  materials in accordance with section 17 of P.L.      , c.   (C.      )

A3352 [5R]
4

1   (pending before the Legislature as this bill)[1].
2       The commission shall adopt, pursuant to the "Administrative
3   Procedure Act," P.L.1968, c.410 (C.52:14B-1 et seq.), rules and
4   regulations necessary to implement the duties and purposes of the
5   commission provided in this section.][2]
6       g.  The commission shall report annually to the Governor and
7   to the Legislature, pursuant to section 2 of P.L.1991, c.164
8   (C.52:14-19.1), its activities, as well as its findings and
9   recommendations for any needed new services or resources for
10  victims of human trafficking, and any proposed changes to the
11  current law concerning human trafficking.
12
13      2.  (New section)  [2]a.[2] There is established the "Human
14  Trafficking Survivor's Assistance Fund" as a separate, non-lapsing,
15  dedicated fund in the General Fund, which shall be administered by
16  the [2][Commission on Human Trafficking created by section 1 of
17  P.L.   , c.  (C.       ) (pending before the Legislature as this bill)]
18  Attorney General[2].  All monies deposited in the fund pursuant
19  to P.L.   , c.  (C.       ) (pending before the Legislature as this bill),
20  any other enactment, or as otherwise provided from any public or
21  private source shall be used for the provision of services to victims
22  of human trafficking, to promote awareness of human trafficking,
23  [1][and][1]  [2][the development, establishment, operation, and
24  maintenance of the "John School Diversion Program" created
25  pursuant to section 10 of P.L.   , c.  (C.       ) (pending before the
26  Legislature as this bill),][2]  [1]and the development, maintenance,
27  revision, and distribution of training course and other educational
28  materials [3], and the operation of educational or training programs,[3]
29  in accordance with [2][section 17] sections 11 and 19[2] of P.L.   ,
30  c.  (C.       ) (pending before the Legislature as this bill) [2][.[1]] .  All
31  expenditures from the fund shall be made by the Attorney General,
32  in consultation with the Commission on Human Trafficking
33  established by section 1 of P.L.   , c.  (C.       ) (pending before
34  the Legislature as this bill).[2] and done so in accordance with rules
35  and regulations promulgated by the [2][commission pursuant to
36  subsection f. of section 1 of P.L.   , c.  (C.       ) (pending before
37  the Legislature as this bill)] Attorney General[2] and other applicable
38  law.
39      [2]b.  Receipt of expenditures from the fund [3]by any provider of
40  services to victims of human trafficking[3] shall not be based or
41  otherwise conditioned upon the previous, present, or future
42  cooperation of the recipient regarding any law enforcement
43  investigation or prosecution, or lack thereof.[2]
44
45      3.  Section 1 of P.L.2005, c.77 (C.2C:13-8) is amended to read
46  as follows:

A3352 [5R]
5

1    1.  Human trafficking. a. A person commits the crime of human
2    trafficking if he:
3    (1) knowingly holds, recruits, lures, entices, harbors, transports,
4    provides or obtains, by any means, another, to engage in sexual
5    activity as defined in paragraph (2) of subsection a. of N.J.S.2C:34-
6    1 or to provide labor or services:
7    (a) by [3][threats or incidents of] causing or threatening to cause[3]
8    serious bodily harm [or] [3][,] or[3] physical restraint [3][, or
9    abduction][3] against the person or any other person;
10   (b) by means of any scheme, [3][fraud, deceit or other
11   deception,][3] plan, or pattern intended to cause the person to believe
12   that the person or any other person would suffer serious bodily
13   harm or physical restraint;
14   (c) by committing a violation of N.J.S.2C:13-5 [3][involving
15   coercion][3] against the person; [or]
16   (d) by destroying, concealing, removing, confiscating, or
17   possessing any passport, immigration-related document as defined
18   in section 1 of P.L.1997, c.1 (C.2C:21-31), or other document
19   issued by a governmental agency to any person which could be used
20   as a means of verifying the person's identity or age or any other
21   personal identifying information; [3][or][3]
22   (e) by means of the abuse [3][of power][3] or threatened abuse
23   [3][of power][3] of the law or legal process; [3][or]
24   (f) by means of fraud, deceit, or misrepresentation against the
25   person; or
26   (g) by facilitating access to a controlled dangerous substance or
27   controlled substance analog as set forth in chapter 35 of Title 2C of
28   the New Jersey Statutes; or[3]
29   (2) receives anything of value from participation as an
30   organizer, supervisor, financier or manager in a scheme or course of
31   conduct which violates paragraph (1) of this subsection; or
32   (3) [3][as a licensed owner or driver of an autocab, limousine,
33   autobus, or any other passenger automobile as defined in R.S.39:1-1
34   that is subject to regulation under chapter 16 of Title 48 of the
35   Revised Statutes, [1][negligently] recklessly[1] participates in the
36   transportation of another which violates paragraph (1) or (2) of this
37   subsection; or
38   (4) otherwise being a professionally licensed person,
39   [1][negligently] recklessly[1] permits an act of human trafficking
40   described in paragraph (1) or (2) of this subsection, on, within, or
41   using the person's property or services.  For purposes of this
42   paragraph, "professionally licensed person" means any person
43   required by law to obtain, from a governmental department, agency,
44   board, or commission of the State or any political subdivision of the
45   State, a license, permit, certificate, approval, registration, charter, or
46   similar form of business or professional authorization in order to
47   operate a business or as a professional in this State.

1      [2]With respect to the amendatory provisions set forth in this
2      subsection by the enactment of P.L.   , c.   (C.      ) (pending
3      before the Legislature as this bill), in addition to these provisions
4      only being applicable to criminal acts of human trafficking
5      occurring on or after the effective date for these amendatory
6      provisions, consistent with constitutional and statutory principles
7      governing application of the Criminal Code, the provisions set forth
8      in this subsection immediately prior to the enactment of P.L.   ,
9      c. (C.      ) (pending before the Legislature as this bill), as then
10    interpreted and applied by law enforcement officers, prosecutors,
11    and the courts, shall continue to be interpreted and applied by law
12    enforcement officers, prosecutors, and the courts with respect to
13    any prosecution for a criminal act of human trafficking that
14    occurred prior to the enactment of P.L.   , c. (C.      ) (pending
15    before the Legislature as this bill), without regard, reference, or
16    comparison to the amendatory provisions set forth in this
17    subsection.[2]] knowingly holds, recruits, lures, entices, harbors,
18    transports, provides or obtains, by any means, a child under 18
19    years of age, to engage in sexual activity as defined in paragraph (2)
20    of subsection a. of N.J.S.2C:34-1, whether or not the actor
21    mistakenly believed that the child was 18 years of age or older,
22    even if that mistaken belief was reasonable.[3]
23      b.  An offense under this section constitutes a crime of the first
24    degree [3][, except that an offense under paragraph (3) or (4) of
25    subsection a. of this section concerning criminal [1][negligence]
26    recklessness[1] constitutes a crime of the fourth degree][3].
27      c.  It is an affirmative defense to prosecution for a violation of
28    this section that, during the time of the alleged commission of the
29    offense of human trafficking created by this section, the defendant
30    was a victim of human trafficking.
31      d.  [3][(1)][3]  Notwithstanding the provisions of N.J.S.2C:43-6,
32    the term of imprisonment imposed for a crime of the first degree
33    under paragraph (2) [3]or (3)[3] of subsection a. of this section shall be
34    either a term of 20 years during which the actor shall not be eligible
35    for parole, or a specific term between 20 years and life
36    imprisonment, of which the actor shall serve 20 years before being
37    eligible for parole.  Notwithstanding the provisions of N.J.S.2C:43-
38    3, the [2]sentence for a conviction for a crime of the first degree
39    under this section shall include a[2] fine [2][imposed for a crime of the
40    first degree under this section shall be a fine of at least] in an
41    amount of not less than[2] $25,000, which shall be collected as
42    provided for the collection of fines and restitutions in section 3 of
43    P.L.1979, c.396 (C2C:46-4) and forwarded to the Department of
44    the Treasury to be deposited in the "Human Trafficking Survivor's
45    Assistance Fund" established by section 2 of P.L.   , c. (C.      )
46    (pending before the Legislature as this bill).

A3352 [5R]
7

1    [3][(2) Notwithstanding the provisions of N.J.S.2C:43-3, the fine
2    imposed for a crime of the fourth degree under paragraph (3) or (4)
3    of subsection a. of this section concerning criminal [1][negligence]
4    recklessness[1] shall be a fine of up to $25,000, which shall be
5    collected as provided for the collection of fines and restitutions in
6    section 3 of P.L.1979, c.396 (C.2C:46-4) and forwarded to the
7    Department of the Treasury to be deposited in the "Human
8    Trafficking Survivor's Assistance Fund" established by section 2 of
9    P.L.   , c.   (C.   ) (pending before the Legislature as this bill).
10   Additionally, upon conviction for this crime, the court shall revoke
11   any license, permit, certificate, approval, registration, charter, or
12   similar form of business or professional authorization required by
13   law concerning the operation of that person's business or
14   profession.][3]
15        e.   In addition to any other disposition authorized by law, any
16   person who violates the provisions of this section [3][, other than a
17   violation of paragraph (3) or (4) of subsection a. of this section
18   concerning criminal [1][negligence] recklessness[1],][3] shall be
19   [2][sentenced] ordered[2] to make restitution to any victim. The court
20   shall award to the victim restitution which is the greater of:
21        (1)  the gross income or value to the defendant of the victim's
22   labor or services; or
23        (2)  the value of the victim's labor or services as determined by
24   the "New Jersey Prevailing Wage Act," P.L.1963, c.150 (C.34:11-
25   56.25 et seq.), the "New Jersey State Wage and Hour Law,"
26   P.L.1966, c.113 (C.34:11-56a et seq.), the Seasonal Farm Labor
27   Act, P.L.1945, c.71 (C.34:9A-1 et seq.), the laws concerning the
28   regulation of child labor in chapter 2 of Title 34 of the Revised
29   Statutes, or any other applicable State law, and the "Fair Labor
30   Standards Act of 1938," 29 U.S.C. s.201 et seq., or any other
31   applicable federal law.
32   (cf: P.L.2005, c.77, s.1)
33
34        4.   (New section) a.  Any person injured, including [2][injury][2] due
35   to the loss of moneys or property, real or personal, [3][as a result of a
36   violation of the] by an actor and all those acting in concert with that
37   actor who committed a[3] human trafficking [3][provisions set forth]
38   offense[3] in [3]violation of[3] section 1 of P.L.2005, c.77 (C.2C:13-8)
39   [3]or section 5 of P.L.   , c.   (C.   ) (pending before the
40   Legislature as this bill)[3] may bring a civil action in any court of
41   competent jurisdiction [3]against the actor and all those acting in
42   concern with that actor[3].  A civil action brought under this section
43   shall not preclude the application of any other civil, administrative,
44   or criminal remedy under any other provision of law.
45        b.   (1) The standard of proof in a civil action brought pursuant
46   to this section is a preponderance of the evidence, and the fact that a

A3352 [5R]
8

1    prosecution ³[for human trafficking under section 1 of P.L.2005,
2    c.77 (C.2C:13-8)] against the offending actor³ is not instituted or,
3    whenever instituted, terminates without a conviction, shall not
4    preclude a civil action.
5        (2) A final judgment rendered in favor of the State in any
6    criminal proceeding shall estop the defendant from denying the
7    same conduct in any civil action brought pursuant to this section.
8        c.   In any civil action brought pursuant to this section, the court
9    shall, in addition to any other appropriate legal or equitable relief,
10   ²including damages for pain and suffering, recovery of reasonable
11   costs for necessary medical, dental, and psychological services and
12   punitive damages,² award damages in an amount that is the greater
13   of:
14       (1) the gross income or value to the defendant of the injured
15   party's labor or services; or
16       (2) the value of the injured party's labor or services as
17   determined by the "New Jersey Prevailing Wage Act," P.L.1963,
18   c.150 (C.34:11-56.25 et seq.), the "New Jersey State Wage and
19   Hour Law," P.L.1966, c.113 (C.34:11-56a et seq.), the Seasonal
20   Farm Labor Act, P.L.1945, c.71 (C.34:9A-1 et seq.), the laws
21   concerning the regulation of child labor in chapter 2 of Title 34 of
22   the Revised Statutes, or any other applicable State law, and the
23   "Fair Labor Standards Act of 1938," 29 U.S.C. s.201 et seq., or any
24   other applicable federal law.
25       ²d.   In addition to any damages, penalty, injunction, or other
26   appropriate relief awarded in an action brought pursuant to this
27   section, the court may award to the injured person bringing suit
28   reasonable attorney's fees and costs.²
29
30       ³[5.  (New section) a. (1) A person who knowingly owns,
31   controls, manages, supervises, or otherwise keeps, alone or in
32   association with another, any premises where human trafficking is
33   regularly carried on is guilty of a crime of the first degree.
34       (2) A person who knowingly leases or otherwise permits any
35   premises controlled by the actor, alone or in association with others,
36   to be regularly used for human trafficking, or fails to make a
37   reasonable effort to abate this use by ejecting the tenant, notifying
38   law enforcement authorities, or employing other legally available
39   means, is guilty of a crime of the first degree.
40       (3) As used in this section "premises" includes, but is not limited
41   to, any residence, apartment, hotel, motel, inn, rooming house,
42   boarding house, or other establishment for lodging.
43       b.   Notwithstanding the provisions of N.J.S.2C:43-3, the fine
44   imposed for an offense under this section shall be a fine of at least
45   $25,000, which shall be collected as provided for the collection of
46   fines and restitutions in section 3 of P.L.1979, c.396 (C.2C:46-4)
47   and forwarded to the Department of the Treasury to be deposited in

A3352 [5R]

9

1   the "Human Trafficking Survivor's Assistance Fund" established by
2   section 2 of P.L.   , c.  (C.      ) (pending before the Legislature as
3   this bill).} ][3]

4

5   [3][[2]6.] 5.[3] (New section) a. A person commits a crime of the
6   second degree if he:

7       (1) provides services, resources, or assistance with the
8   knowledge that the services, resources, or assistance are intended to
9   be used in furtherance of the commission of the crime of human
10  trafficking in violation of section 1 of P.L.2005, c.77 (C.2C:13-8).

11      [3](a)[3] For purposes of this paragraph, "services, resources, or
12  assistance" shall include financial support, business services,
13  lodging, transportation, the provision of false documentation or
14  identification, equipment, facilities, or any other service or property
15  with a pecuniary value that exceeds $200, whether or not a person is
16  compensated for the services, resources, or assistance, but shall not
17  include humanitarian or charitable aid or services provided directly
18  to a victim of human trafficking [3].

19      (b) For purposes of this paragraph, the requisite knowledge that
20  services, resources, or assistance are intended to be used in
21  furtherance of the commission of the crime of human trafficking
22  may be inferred if the defendant was aware that a person to whom
23  the defendant was providing services, resources, or assistance: (i)
24  was subject to or subjected another to restrictions on the person's
25  freedom of movement, so that the person could not leave without
26  accompaniment of another person or was otherwise subjected to
27  obvious restrictions on mobility; or (ii) did not possess or have
28  access to any means of communication, including but not limited to
29  a cellular or other wireless telephone or other electronic
30  communication device, and was not permitted or was otherwise
31  unable to communicate with another person without supervision or
32  permission[3] ; or

33      (2) procures or attempts to procure a person to engage in sexual
34  activity as defined in paragraph (2) of subsection a. of N.J.S.2C:34-
35  1, or to provide labor or services, whether for himself or another
36  person, knowing that the person provided or to be provided was a
37  victim of human trafficking, or under circumstances in which a
38  reasonable person would conclude that there was a substantial
39  likelihood that the person was a victim of human trafficking.

40      [3](a) For purposes of this paragraph, there shall be a rebuttable
41  presumption that the defendant knew, and that a reasonable person
42  would conclude there was a substantial likelihood, that a person was
43  a victim of human trafficking if the person: (i) could not leave the
44  premises where the person provided labor or services without
45  accompaniment of another person or was otherwise subjected to
46  significant restrictions on the person's freedom of movement; or (ii)
47  did not possess or have access to any means of communication,

A3352 [5R]
10

1 including but not limited to a cellular or other wireless telephone or
2 other electronic communication device, and was not permitted or
3 was otherwise unable to communicate with another person without
4 supervision or permission.
5 (b)³  For the purposes of this paragraph, there shall be a
6 rebuttable presumption that: ³[(a)] (i)³  a person knew that a child
7 under the age of 18 years of age procured to engage in sexual
8 activity or for whom attempts were made to procure for that activity
9 was a victim of human trafficking; and ³[(b)] (ii)³  a reasonable
10 person would conclude that there was a substantial likelihood that a
11 child under the age of 18 years of age procured to engage in sexual
12 activity or for whom attempts were made to procure for that activity
13 was a victim of human trafficking.
14 b. (1) It is an affirmative defense to prosecution for a violation of
15 this section that, during the time of the alleged commission of the
16 crime, the defendant was a victim of human trafficking.
17 (2) There shall be a rebuttable presumption that a child under the
18 age of 18 years of age charged with a violation of this section was a
19 victim of human trafficking.
20 c. (1) Notwithstanding any provision of law to the contrary, a
21 person convicted for a violation of this section shall be sentenced to
22 a term of imprisonment, which shall include a period of parole
23 ineligibility of one-third to one-half of the term of imprisonment
24 imposed or three years, whichever is greater.  Notwithstanding the
25 provisions of N.J.S.2C:43-3, the sentence for a conviction under
26 this section shall include a fine in an amount of not less than
27 $15,000, which shall be collected as provided for the collection of
28 fines and restitutions in section 3 of P.L.1979, c.396 (C.2C:46-4)
29 and forwarded to the Department of the Treasury to be deposited in
30 the "Human Trafficking Survivor's Assistance Fund" established by
31 section 2 of P.L.   , c.   (C.   ) (pending before the Legislature as
32 this bill).
33 (2)  Additionally, upon a finding of guilt or entry of a guilty plea
34 for a crime described under this section, the court shall direct any
35 issuing State, county, or municipal governmental agency to revoke
36 any license, permit, certificate, approval, registration, charter, or
37 similar form of business or professional authorization required by
38 law concerning the operation of that person's business or
39 profession, if that business or profession was used in the course of
40 the crime.
41 d. Nothing in this section shall be construed to preclude, or limit
42 in any way, the prosecution and conviction for any other offense,
43 including prosecution and conviction pursuant to section 1 of
44 P.L.2005, c.77 (C.2C:13-8), human trafficking, N.J.S.2C:34-1,
45 prostitution and related offenses, and N.J.S.2C:2-6, liability for
46 another's conduct.²

**A3352 [5R]**
11

1    ³6. N.J.S.2C:5-4 is amended to read as follows:

2    2C:5-4. Grading of Criminal Attempt and Conspiracy; Mitigation
3    in Cases of Lesser Danger. a. Grading. Except as provided in
4    subsections c. [and] d., and e., an attempt or conspiracy to commit
5    a crime of the first degree is a crime of the second degree; except
6    that an attempt or conspiracy to commit murder or terrorism is a
7    crime of the first degree, provided, however, that if the person
8    attempted or conspired to murder five or more persons, the person
9    shall be sentenced by the court to a term of 30 years, during which
10   the person shall not be eligible for parole, or to a specific term of
11   years which shall be between 30 years and life imprisonment, of
12   which the person shall serve not less than 30 years before eligibility
13   for parole.  Otherwise an attempt is a crime of the same degree as
14   the most serious crime which is attempted, and conspiracy is a
15   crime of the same degree as the most serious crime which is the
16   object of the conspiracy; provided that, leader of organized crime is
17   a crime of the second degree.  An attempt or conspiracy to commit
18   an offense defined by a statute outside the code shall be graded as a
19   crime of the same degree as the offense is graded pursuant to
20   N.J.S.2C:1-4 and N.J.S.2C:43-1.

21       b.   Mitigation.  The court may impose sentence for a crime of a
22   lower grade or degree if neither the particular conduct charged nor
23   the defendant presents a public danger warranting the grading
24   provided for such crime under subsection a. because:

25       (1) The criminal attempt or conspiracy charged is so inherently
26   unlikely to result or culminate in the commission of a crime; or

27       (2) The conspiracy, as to the particular defendant charged, is so
28   peripherally related to the main unlawful enterprise.

29       c.   Notwithstanding the provisions of subsection a. of this
30   section, conspiracy to commit a crime set forth in subsection a., b.,
31   or d. of N.J.S.2C:17-1 where the structure which was the target of
32   the crime was a church, synagogue, temple or other place of public
33   worship is a crime of the first degree.

34       d.   Notwithstanding the provisions of subsection a. of this
35   section, conspiracy to commit a crime as set forth in P.L.1994,
36   c.121 (C.2C:21-23 et seq.) is a crime of the same degree as the most
37   serious crime that was conspired to be committed.

38       e.   Notwithstanding the provisions of subsection a. of this
39   section, conspiracy to commit a crime of human trafficking as set
40   forth in section 1 of P.L.2005, c.77 (C.2C:13-8) is a crime of the
41   first degree.³
42   (cf: P.L.2002, c.26, s.9)

43

44       ²[6.] 7.² Section 2 of P.L.1974, c.49 (C.2A:18-61.1) is amended
45   to read as follows:
46       2.   No lessee or tenant or the assigns, under-tenants or legal
47   representatives of such lessee or tenant may be removed by the
48   Superior Court from any house, building, mobile home or land in a

A3352 [5R]
12

1   mobile home park or tenement leased for residential purposes, other
2   than (1) owner-occupied premises with not more than two rental
3   units or a hotel, motel or other guest house or part thereof rented to
4   a transient guest or seasonal tenant; (2) a dwelling unit which is
5   held in trust on behalf of a member of the immediate family of the
6   person or persons establishing the trust, provided that the member
7   of the immediate family on whose behalf the trust is established
8   permanently occupies the unit; and (3) a dwelling unit which is
9   permanently occupied by a member of the immediate family of the
10   owner of that unit, provided, however, that exception (2) or (3) shall
11   apply only in cases in which the member of the immediate family
12   has a developmental disability, except upon establishment of one of
13   the following grounds as good cause:
14      a.  The person fails to pay rent due and owing under the lease
15   whether the same be oral or written; provided that, for the purposes
16   of this section, any portion of rent unpaid by a tenant to a landlord
17   but utilized by the tenant to continue utility service to the rental
18   premises after receiving notice from an electric, gas, water or sewer
19   public utility that such service was in danger of discontinuance
20   based on nonpayment by the landlord, shall not be deemed to be
21   unpaid rent.
22      b.  The person has continued to be, after written notice to cease,
23   so disorderly as to destroy the peace and quiet of the occupants or
24   other tenants living in said house or neighborhood.
25      c.  The person has willfully or by reason of gross negligence
26   caused or allowed destruction, damage or injury to the premises.
27      d.  The person has continued, after written notice to cease, to
28   substantially violate or breach any of the landlord's rules and
29   regulations governing said premises, provided such rules and
30   regulations are reasonable and have been accepted in writing by the
31   tenant or made a part of the lease at the beginning of the lease term.
32      e.  (1) The person has continued, after written notice to cease,
33   to substantially violate or breach any of the covenants or
34   agreements contained in the lease for the premises where a right of
35   reentry is reserved to the landlord in the lease for a violation of such
36   covenant or agreement, provided that such covenant or agreement is
37   reasonable and was contained in the lease at the beginning of the
38   lease term.
39      (2) In public housing under the control of a public housing
40   authority or redevelopment agency, the person has substantially
41   violated or breached any of the covenants or agreements contained
42   in the lease for the premises pertaining to illegal uses of controlled
43   dangerous substances, or other illegal activities, whether or not a
44   right of reentry is reserved to the landlord in the lease for a
45   violation of such covenant or agreement, provided that such
46   covenant or agreement conforms to federal guidelines regarding
47   such lease provisions and was contained in the lease at the
48   beginning of the lease term.

A3352 [5R]

13

1    f.   The person has failed to pay rent after a valid notice to quit
2    and notice of increase of said rent, provided the increase in rent is
3    not unconscionable and complies with any and all other laws or
4    municipal ordinances governing rent increases.
5    g.   The landlord or owner (1) seeks to permanently board up or
6    demolish the premises because he has been cited by local or State
7    housing inspectors for substantial violations affecting the health and
8    safety of tenants and it is economically unfeasible for the owner to
9    eliminate the violations; (2) seeks to comply with local or State
10   housing inspectors who have cited him for substantial violations
11   affecting the health and safety of tenants and it is unfeasible to so
12   comply without removing the tenant; simultaneously with service of
13   notice of eviction pursuant to this clause, the landlord shall notify
14   the Department of Community Affairs of the intention to institute
15   proceedings and shall provide the department with such other
16   information as it may require pursuant to rules and regulations.  The
17   department shall inform all parties and the court of its view with
18   respect to the feasibility of compliance without removal of the
19   tenant and may in its discretion appear and present evidence; (3)
20   seeks to correct an illegal occupancy because he has been cited by
21   local or State housing inspectors or zoning officers and it is
22   unfeasible to correct such illegal occupancy without removing the
23   tenant; or (4) is a governmental agency which seeks to permanently
24   retire the premises from the rental market pursuant to a
25   redevelopment or land clearance plan in a blighted area. In those
26   cases where the tenant is being removed for any reason specified in
27   this subsection, no warrant for possession shall be issued until
28   P.L.1967, c.79 (C.52:31B-1 et seq.) and P.L.1971, c.362 (C.20:4-1
29   et seq.) have been complied with.
30   h.   The owner seeks to retire permanently the residential
31   building or the mobile home park from residential use or use as a
32   mobile home park, provided this subsection shall not apply to
33   circumstances covered under subsection g. of this section.
34   i.   The landlord or owner proposes, at the termination of a
35   lease, reasonable changes of substance in the terms and conditions
36   of the lease, including specifically any change in the term thereof,
37   which the tenant, after written notice, refuses to accept; provided
38   that in cases where a tenant has received a notice of termination
39   pursuant to subsection g. of section 3 of P.L.1974, c.49 (C.2A:18-
40   61.2), or has a protected tenancy status pursuant to [section 9 of]
41   the "Senior Citizens and Disabled Protected Tenancy Act,"
42   P.L.1981, c.226 [(C.2A:18-61.30)] (C.2A:18-61.22 ²et al.² ), or
43   pursuant to the "Tenant Protection Act of 1992," P.L.1991, c.509
44   (C.2A:18-61.40 et al.), the landlord or owner shall have the burden
45   of proving that any change in the terms and conditions of the lease,
46   rental or regulations both is reasonable and does not substantially
47   reduce the rights and privileges to which the tenant was entitled
48   prior to the conversion.

1     j.  The person, after written notice to cease, has habitually and
2  without legal justification failed to pay rent which is due and owing.
3     k.  The landlord or owner of the building or mobile home park
4  is converting from the rental market to a condominium, cooperative
5  or fee simple ownership of two or more dwelling units or park sites,
6  except as hereinafter provided in subsection l. of this section.
7  Where the tenant is being removed pursuant to this subsection, no
8  warrant for possession shall be issued until this act has been
9  complied with.  No action for possession shall be brought pursuant
10  to this subsection against a senior citizen tenant or disabled tenant
11  with protected tenancy status pursuant to the "Senior Citizens and
12  Disabled Protected Tenancy Act," P.L.1981, c.226 (C.2A:18-61.22
13  et al.), or against a qualified tenant under the "Tenant Protection
14  Act of 1992," P.L.1991, c.509 (C.2A:18-61.40 et al.), as long as the
15  agency has not terminated the protected tenancy status or the
16  protected tenancy period has not expired.
17     l.  (1) The owner of a building or mobile home park, which is
18  constructed as or being converted to a condominium, cooperative or
19  fee simple ownership, seeks to evict a tenant or sublessee whose
20  initial tenancy began after the master deed, agreement establishing
21  the cooperative or subdivision plat was recorded, because the owner
22  has contracted to sell the unit to a buyer who seeks to personally
23  occupy it and the contract for sale calls for the unit to be vacant at
24  the time of closing.  However, no action shall be brought against a
25  tenant under paragraph (1) of this subsection unless the tenant was
26  given a statement in accordance with section 6 of P.L.1975, c.311
27  (C.2A:18-61.9);
28     (2) The owner of three or less condominium or cooperative units
29  seeks to evict a tenant whose initial tenancy began by rental from an
30  owner of three or less units after the master deed or agreement
31  establishing the cooperative was recorded, because the owner seeks
32  to personally occupy the unit, or has contracted to sell the unit to a
33  buyer who seeks to personally occupy it and the contract for sale
34  calls for the unit to be vacant at the time of closing;
35     (3) The owner of a building of three residential units or less
36  seeks to personally occupy a unit, or has contracted to sell the
37  residential unit to a buyer who wishes to personally occupy it and
38  the contract for sale calls for the unit to be vacant at the time of
39  closing.
40     m.  The landlord or owner conditioned the tenancy upon and in
41  consideration for the tenant's employment by the landlord or owner
42  as superintendent, janitor or in some other capacity and such
43  employment is being terminated.
44     n.  The person has been convicted of or pleaded guilty to, or if a
45  juvenile, has been adjudicated delinquent on the basis of an act
46  which if committed by an adult would constitute an offense under
47  the "Comprehensive Drug Reform Act of 1987," N.J.S.2C:35-1 et
48  al., involving the use, possession, manufacture, dispensing or

A3352 [5R]

15

1   distribution of a controlled dangerous substance, controlled
2   dangerous substance analog or drug paraphernalia within the
3   meaning of that act within or upon the leased premises or the
4   building or complex of buildings and land appurtenant thereto, or
5   the mobile home park, in which those premises are located, and has
6   not in connection with his sentence for that offense either (1)
7   successfully completed or (2) been admitted to and continued upon
8   probation while completing, a drug rehabilitation program pursuant
9   to N.J.S.2C:35-14; or, being the tenant or lessee of such leased
10  premises, knowingly harbors or harbored therein a person who has
11  been so convicted or has so pleaded, or otherwise permits or
12  permitted such a person to occupy those premises for residential
13  purposes, whether continuously or intermittently, except that this
14  subsection shall not apply to a person harboring or permitting a
15  juvenile to occupy the premises if the juvenile has been adjudicated
16  delinquent upon the basis of an act which if committed by an adult
17  would constitute the offense of use or possession under the said act.
18  No action for removal may be brought pursuant to this subsection
19  more than two years after the date of the adjudication or conviction
20  or more than two years after the person's release from incarceration
21  whichever is the later.
22      o.   The person has been convicted of or pleaded guilty to, or if a
23  juvenile, has been adjudicated delinquent on the basis of an act
24  which if committed by an adult would constitute an offense under
25  N.J.S.2C:12-1 or N.J.S.2C:12-3 involving assault, or terroristic
26  threats against the landlord, a member of the landlord's family or an
27  employee of the landlord; or, being the tenant or lessee of such
28  leased premises, knowingly harbors or harbored therein a person
29  who has been so convicted or has so pleaded, or otherwise permits
30  or permitted such a person to occupy those premises for residential
31  purposes, whether continuously or intermittently. No action for
32  removal may be brought pursuant to this subsection more than two
33  years after the adjudication or conviction or more than two years
34  after the person's release from incarceration whichever is the later.
35      p.   The person has been found, by a preponderance of the
36  evidence, liable in a civil action for removal commenced under this
37  act for an offense under N.J.S.2C:20-1 et al. involving theft of
38  property located on the leased premises from the landlord, the
39  leased premises or other tenants residing in the leased premises, or
40  N.J.S.2C:12-1 or N.J.S.2C:12-3 involving assault or terroristic
41  threats against the landlord, a member of the landlord's family or an
42  employee of the landlord, or under the "Comprehensive Drug
43  Reform Act of 1987," N.J.S.2C:35-1 et al., involving the use,
44  possession, manufacture, dispensing or distribution of a controlled
45  dangerous substance, controlled dangerous substance analog or drug
46  paraphernalia within the meaning of that act within or upon the
47  leased premises or the building or complex of buildings and land
48  appurtenant thereto, or the mobile home park, in which those

A3352 [5R]
16

1  premises are located, and has not in connection with his sentence
2  for that offense either (1) successfully completed or (2) been
3  admitted to and continued upon probation while completing a drug
4  rehabilitation program pursuant to N.J.S.2C:35-14; or, being the
5  tenant or lessee of such leased premises, knowingly harbors or
6  harbored therein a person who committed such an offense, or
7  otherwise permits or permitted such a person to occupy those
8  premises for residential purposes, whether continuously or
9  intermittently, except that this subsection shall not apply to a person
10  who harbors or permits a juvenile to occupy the premises if the
11  juvenile has been adjudicated delinquent upon the basis of an act
12  which if committed by an adult would constitute the offense of use
13  or possession under the said "Comprehensive Drug Reform Act of
14  1987."
15      q.   The person has been convicted of or pleaded guilty to, or if a
16  juvenile, has been adjudicated delinquent on the basis of an act
17  which if committed by an adult would constitute an offense under
18  N.J.S.2C:20-1 et al. involving theft of property from the landlord,
19  the leased premises or other tenants residing in the same building or
20  complex; or, being the tenant or lessee of such leased premises,
21  knowingly harbors therein a person who has been so convicted or
22  has so pleaded, or otherwise permits such a person to occupy those
23  premises for residential purposes, whether continuously or
24  intermittently.
25      r.   The person [2][has been convicted of or pleaded guilty to, or
26  if a juvenile, has been adjudicated delinquent on the basis of an act
27  which if] is found in a civil action, by a preponderance of the
28  evidence, to have[2] committed [2][by an adult would constitute the
29  crime] a violation[2] of [2]the[2] human trafficking [2][under] provisions
30  set forth in[2] section 1 of P.L.2005, c.77 (C.2C:13-8) within or upon
31  the leased premises or the building or complex of buildings and
32  land appurtenant thereto, or the mobile home park, in which those
33  premises are located; or, being the tenant or lessee of such leased
34  premises, knowingly harbors or harbored therein a person who has
35  been [2][so convicted or has so pleaded] engaged in human
36  trafficking[2] , or otherwise permits or permitted such a person to
37  occupy those premises for residential purposes, whether
38  continuously or intermittently. No action for removal may be
39  brought pursuant to this subsection more than two years after [2][the
40  date of the adjudication or conviction or more than two years after
41  the person's release from incarceration whichever is the later] the
42  alleged violation has terminated.  A criminal conviction or a guilty
43  plea to a crime of human trafficking under section 1 of P.L.2005,
44  c.77 (C.2C:13-8) shall be considered prima facie evidence of civil
45  liability under this subsection[2] .
46      For purposes of this section, (1) "developmental disability"
47  means any disability which is defined as such pursuant to section 3

1 of P.L.1977, c.82 (C.30:6D-3); (2) "member of the immediate
2 family" means a person's spouse, parent, child or sibling, or a
3 spouse, parent, child or sibling of any of them; and (3)
4 "permanently" occupies or occupied means that the occupant
5 maintains no other domicile at which the occupant votes, pays rent
6 or property taxes or at which rent or property taxes are paid on the
7 occupant's behalf.
8 (cf: P.L.2000, c.113, s.3)
9
10 $^2$[7.] 8.$^2$ Section 3 of P.L.1974, c.49 (C.2A:18-61.2) is amended
11 to read as follows:
12 3.  No judgment of possession shall be entered for any premises
13 covered by section 2 of this act, except in the nonpayment of rent
14 under subsection a. or f. of section 2, unless the landlord has made
15 written demand and given written notice for delivery of possession
16 of the premises.  The following notice shall be required:
17 a.  For an action alleging disorderly conduct under subsection b.
18 of section 2, or injury to the premises under subsection c. of section
19 2, or any grounds under subsection m., n., o. [or] , p. , q., or r. of
20 section 2, three days' notice prior to the institution of the action for
21 possession;
22 b.  For an action alleging continued violation of rules and
23 regulations under subsection d. of section 2, or substantial breach of
24 covenant under subsection e. of section 2, or habitual failure to pay
25 rent, one month's notice prior to the institution of the action for
26 possession;
27 c.  For an action alleging any grounds under subsection g. of
28 section 2, three months' notice prior to the institution of the action;
29 d.  For an action alleging permanent retirement under
30 subsection h. of section 2, 18 months' notice prior to the institution
31 of the action and, provided that, where there is a lease in effect, no
32 action may be instituted until the lease expires;
33 e.  For an action alleging refusal of acceptance of reasonable
34 lease changes under subsection i. of section 2, one month's notice
35 prior to institution of action;
36 f.  For an action alleging any grounds under subsection l. of
37 section 2, two months' notice prior to the institution of the action
38 and, provided that where there is a written lease in effect no action
39 shall be instituted until the lease expires;
40 g.  For an action alleging any grounds under subsection k. of
41 section 2, three years' notice prior to the institution of action, and
42 provided that where there is a written lease in effect, no action shall
43 be instituted until the lease expires;
44 h.  In public housing under the control of a public housing
45 authority or redevelopment agency, for an action alleging
46 substantial breach of contract under paragraph (2) of subsection e.
47 of section 2, the period of notice required prior to the institution of

A3352 [5R]
18

1   an action for possession shall be in accordance with federal
2   regulations pertaining to public housing leases.
3      The notice in each of the foregoing instances shall specify in
4   detail the cause of the termination of the tenancy and shall be
5   served either personally upon the tenant or lessee or such person in
6   possession by giving him a copy thereof, or by leaving a copy
7   thereof at his usual place of abode with some member of his family
8   above the age of 14 years, or by certified mail; if the certified letter
9   is not claimed, notice shall be sent by regular mail.
10  (cf: P.L.1997, c.228, s.2)
11
12     **2[8.]** <u>9.</u>**2** N.J.S.2C:34-1 is amended to read as follows:
13    2C:34-1. Prostitution and Related Offenses.
14    a.  As used in this section:
15    (1) "Prostitution" is sexual activity with another person in
16  exchange for something of economic value, or the offer or
17  acceptance of an offer to engage in sexual activity in exchange for
18  something of economic value.
19    (2) "Sexual activity" includes, but is not limited to, sexual
20  intercourse, including genital-genital, oral-genital, anal-genital, and
21  oral-anal contact, whether between persons of the same or opposite
22  sex; masturbation; touching of the genitals, buttocks, or female
23  breasts; sadistic or masochistic abuse and other deviate sexual
24  relations.
25    (3) "House of prostitution" is any place where prostitution or
26  promotion of prostitution is regularly carried on by one person
27  under the control, management or supervision of another.
28    (4) "Promoting prostitution" is:
29    (a) Owning, controlling, managing, supervising or otherwise
30  keeping, alone or in association with another, a house of
31  prostitution or a prostitution business;
32    (b) Procuring an inmate for a house of prostitution or place in a
33  house of prostitution for one who would be an inmate;
34    (c) Encouraging, inducing, or otherwise purposely causing
35  another to become or remain a prostitute;
36    (d) Soliciting a person to patronize a prostitute;
37    (e) Procuring a prostitute for a patron;
38    (f) Transporting a person into or within this State with purpose
39  to promote that person's engaging in prostitution, or procuring or
40  paying for transportation with that purpose; or
41    (g) Knowingly leasing or otherwise permitting a place
42  controlled by the actor, alone or in association with others, to be
43  regularly used for prostitution or promotion of prostitution, or
44  failure to make a reasonable effort to abate such use by ejecting the
45  tenant, notifying law enforcement authorities, or other legally
46  available means.
47    b.  A person commits an offense if:
48    (1) The actor engages in prostitution **2**<u>as a patron</u>**2**;

A3352 [5R]
19

1    (2) The actor promotes prostitution;

2    (3) The actor knowingly promotes prostitution of a child under

3  18 whether or not the actor mistakenly believed that the child was

4  18 years of age or older, even if such mistaken belief was

5  reasonable;

6    (4) The actor knowingly promotes prostitution of the actor's

7  child, ward, or any other person for whose care the actor is

8  responsible;

9    (5) The actor compels another to engage in or promote

10  prostitution;

11    (6) The actor promotes prostitution of the actor's spouse; **2[or]2**

12    (7) The actor knowingly engages in prostitution with a person

13  under the age of 18, or if the actor enters into or remains in a house

14  of prostitution for the purpose of engaging in sexual activity with a

15  child under the age of 18, or if the actor solicits or requests a child

16  under the age of 18 to engage in sexual activity. It shall be no

17  defense to a prosecution under this paragraph that the actor

18  mistakenly believed that the child was 18 years of age or older,

19  even if such mistaken belief was reasonable **2; or**

20    (8) The actor engages in prostitution by personally offering

21  sexual activity in exchange for something of economic value**2**.

22    c.  Grading of offenses under subsection b.

23    (1) An offense under subsection b. constitutes a crime of the

24  **2[second] first2** degree if the offense falls within paragraph (3) or

25  (4) of that subsection.

26    (2) An offense under subsection b. constitutes a crime of the

27  **2[third] second2** degree if the offense falls within paragraph **2[(5),**

28  (6) or]**2** (7) of that subsection.

29    (3) **2An offense under subsection b. constitutes a crime of the**

30  **third degree if the offense falls within paragraph (5) or (6) of that**

31  **subsection.**

32    **(4)2** An offense under paragraph (2) of subsection b. constitutes a

33  crime of the third degree if the conduct falls within subparagraph

34  (a), (b), **[or]** (c), **(f), or (g)** of paragraph (4) of subsection a.

35  Otherwise the offense is a crime of the fourth degree.

36    **2[(4)] (5)2** An offense under subsection b. constitutes a

37  disorderly persons offense if the offense falls within paragraph (1)

38  of that subsection except that a second or **2[subsequent] third2**

39  conviction for such an offense constitutes a crime of the fourth

40  degree **2, and a fourth or subsequent conviction for such an offense**

41  **constitutes a crime of the third degree2**. In addition, where a motor

42  vehicle was used in the commission of any offense under paragraph

43  (1) of subsection b. the court shall suspend for six months the

44  driving privilege of any such offender who has a valid driver's

45  license issued by this State. Upon conviction, the court shall

46  immediately collect the offender's driver's license and shall forward

47  it, along with a report stating the first and last day of the suspension

1   imposed pursuant to this paragraph, to the New Jersey Motor
2   Vehicle Commission.
3   [2](6) An offense under subsection b. constitutes a disorderly
4   persons offense if the offense falls within paragraph (8) of that
5   subsection, except that a second or subsequent conviction for such
6   an offense constitutes a crime of the fourth degree.[2]
7       d.  Presumption from living off prostitutes.  A person, other
8   than the prostitute or the prostitute's minor child or other legal
9   dependent incapable of self-support, who is supported in whole or
10  substantial part by the proceeds of prostitution is presumed to be
11  knowingly promoting prostitution.
12      e.  It is an affirmative defense to prosecution for a violation of
13  this section that, during the time of the alleged commission of the
14  offense, the defendant was a victim of human trafficking pursuant
15  to section 1 of P.L.2005, c.77 (C.2C:13-8) or [the defendant was
16  under the] compelled by another to engage in sexual activity,
17  regardless of the defendant's age [of 18].
18      [2]f. [3](1) Any fine set forth in N.J.S.2C:43-3 that is imposed upon
19  a person by a municipal court for a conviction of a disorderly
20  persons offense under this section shall be collected,
21  notwithstanding the procedures for the collection of fines and
22  restitutions in section 3 of P.L.1979, c.396 (C.2C:46-4), by the
23  municipal court administrator and paid into the municipal treasury
24  of the municipality in which the offense was committed.
25      (2)[3]  In addition to any fine, fee, assessment, or penalty
26  authorized under the provisions of Title 2C of the New Jersey
27  Statutes, a person convicted of an offense of prostitution or related
28  offense under paragraph (2), (3), (4), (5), (6), or (7) of subsection b.
29  shall be assessed a penalty of at least $10,000 but not more than
30  $50,000, except if the offense involved promotion of the
31  prostitution of a child under the age of 18, the penalty shall be at
32  least $25,000.  All penalties provided for in this subsection,
33  collected as provided for the collection of fines and restitutions in
34  section 3 of P.L.1979, c.396 (C.2C:46-4), shall be forwarded to the
35  Department of the Treasury to be deposited in the "Human
36  Trafficking Survivor's Assistance Fund" established by section 2 of
37  P.L.    , c. (C.    ) (pending before the Legislature as this bill).[2]
38  (cf: P.L.2011, c.195, s.6)
39
40      [2][9. (New section) a.  Any person who, on or after the effective
41  date of this section, is convicted and serving a sentence as provided
42  for by Title 2C of the New Jersey Statutes for engaging in
43  prostitution under paragraph (1) of subsection b. of N.J.S.2C:34-1
44  may move to have the sentence reviewed by the court on the
45  grounds that the defendant was a victim of human trafficking
46  pursuant to section 1 of P.L.2005, c.77 (C.2C:13-8).

A3352 [5R]
21

1    b.  (1) If the court finds that the sentence under review does not
2  serve the interests of justice, the court may vacate the conviction,
3  resentence the defendant, or place the defendant on probation.

4    (2)  In determining whether the sentence under review serves the
5  interests of justice, the court shall consider all relevant
6  circumstances, including whether the defendant's victimization
7  constituted a significant contributing factor to the defendant's
8  criminal behavior, regardless of whether the defendant raised this
9  factor as a defense at trial in accordance with subsection e. of
10  N.J.S.2C:34-1.][2]

11

12    [2]10. (New section) a. (1) A person convicted of N.J.S.2C:34-1,
13  prostitution and related offenses, or section 3 of P.L.1997, c.93
14  (C.2C:34-1.1), loitering for the purpose of engaging in prostitution,
15  or a similar local ordinance, may file an application with the
16  Superior Court in accordance with the Rules of Court to have the
17  conviction vacated at any time following entry of a judgment of
18  conviction, when the person's participation in the offense was a
19  result of having been a victim of human trafficking pursuant to
20  section 1 of P.L.2005, c.77 (C.2C:13-8) or as defined in paragraph
21  (14) of 22 U.S.C. s.7102.

22    (2) Notwithstanding any law to the contrary, the person may also
23  in the same application seek an order for the expungement of any
24  reference to the person's arrest, conviction, and any proceeding for
25  prostitution in any records in the custody of a court, or law
26  enforcement or correctional agency entitled to be served with the
27  application pursuant to subsection b. of this section.

28    b. (1) An application made under this section, together with a
29  copy of all supporting documents, shall be served pursuant to the
30  Rules of Court upon: the Attorney General; the county prosecutor of
31  the county wherein the court is located; the Superintendent of State
32  Police; the chief of police or other executive head of the police
33  department of the municipality wherein the offense was committed;
34  the chief law enforcement officer of any other law enforcement
35  agency of this State that participated in the arrest of the person; the
36  superintendent or warden of any institution in which the person was
37  confined; and, if a disposition was made in municipal court, upon
38  the judge of that court.  Any of the noticed parties herein may make
39  an appearance or file a submission responding to the person's
40  application.

41    (2) The application shall be made and heard within a reasonable
42  time after the person has ceased to be a victim of human trafficking
43  or has sought services for being a victim of human trafficking,
44  whichever occurs later, subject to reasonable concerns for the safety
45  of the person, family members of the person, or other victims of
46  human trafficking that may be jeopardized by the bringing of the
47  application, or for other reasons consistent with the purposes of this
48  paragraph.

A3352 [5R]
22

1    c. (1) The court may vacate a conviction pursuant to this section
2    if it finds by a preponderance of the evidence that the person was a
3    victim of human trafficking pursuant to section 1 of P.L.2005, c.77
4    (C.2C:13-8) or as defined in paragraph (14) of 22 U.S.C. s.7102 at
5    the time of the offense, and that the violation was a result of the
6    person having been a victim of human trafficking.
7    (2) In making a determination:
8    (a) evidence documenting the person's status as a victim of
9    human trafficking at the time of the offense from a federal, state, or
10    local governmental agency shall create a rebuttable presumption
11    that the person's participation in the offense was a result of having
12    been a victim, but shall not be required to vacate a conviction under
13    this section; and
14    (b) the court may additionally consider other evidence it deems
15    appropriate in determining whether the person was a victim of
16    human trafficking, including, but not limited to:
17    (i) certified records of federal or State court proceedings which
18    demonstrate that the defendant was a victim of a trafficker charged
19    with a human trafficking offense under section 1 of P.L.2005, c.77
20    (C.2C:13-8) or chapter 77 of Title 18 of the United States Code;
21    (ii) certified records of approval notices or law enforcement
22    certifications generated from a federal immigration proceeding
23    available to victims of human trafficking; and
24    (iii) testimony or a sworn statement from a trained professional
25    staff member of a victim services organization, an attorney, a
26    member of the clergy or a health care or other professional from
27    whom the person has sought assistance in addressing the trauma
28    associated with being a victim of human trafficking.
29    d. If the court finds, pursuant to subsection c. of this section, that
30    the person was a victim of human trafficking, it shall enter an order
31    vacating the conviction and directing that all court records be
32    revised accordingly.  When the person's application also seeks an
33    order for expungement, the court order shall require that any court,
34    law enforcement and correctional agencies, and other noticed
35    parties pursuant to subsection b. of this section expunge all
36    references to the person's arrest, conviction, and related
37    proceedings for the violation of N.J.S.2C:34-1, prostitution and
38    related offenses, or section 3 of P.L.1997, c.93 (C.2C:34-1.1),
39    loitering for the purpose of engaging in prostitution, or a similar
40    local ordinance from all records in their custody that relate to the
41    vacated conviction.   An expungement ordered pursuant to this
42    section shall have the same force as an expungement ordered
43    pursuant to N.J.S.2C:52-1 et seq.[2]

44

45    [2][10.] 11.[2] (New section) a. In addition to any other disposition
46    authorized by law, the court shall order any person convicted of [2]a
47    disorderly persons offense for[2] engaging [2][a prostitute] in

A3352 [5R]
23

1   prostitution as a patron[2] pursuant to paragraph (1) of subsection b.

2   of N.J.S.2C:34-1 to participate in the "[5][John School [2][Diversion]

3   Rehabilitative[2]] Prostitution Offender[5] Program" established

4   pursuant to subsection d. of this section [3], unless the prosecutor, by

5   motion, requests that the mandatory participation be waived, in

6   which case the court may waive the program participation required

7   by this section[3].

8      b.  In addition to any fine, fee, assessment, or penalty authorized

9   under the provisions of Title 2C of the New Jersey Statutes, a

10  person convicted of an offense of engaging [2][a prostitute under] in

11  prostitution as a patron pursuant to[2] paragraph (1) of subsection b.

12  of N.J.S.2C:34-1 shall be assessed [3], if ordered to participate in the

13  " [5][John School Rehabilitative] Prostitution Offender[5] Program,"[3]

14  a [3][penalty] fee[3] of [2][$1,000] $500[2].

15      c.  [3][All penalties provided for in]  Each $500 fee assessed as

16  required by[3] this section [3][, collected as provided for the collection

17  of fines and restitutions in section 3 of P.L.1979, c.396 (C.2C:46-

18  4),][3] shall be [3]collected by the court, and[3] forwarded to the

19  Department of the Treasury to be deposited in the "Human

20  Trafficking Survivor's Assistance Fund" established by section 2 of

21  P.L.  , c.   (C.     ) (pending before the Legislature as this bill).

22  [2][These monies, and other monies in the fund designated by the

23  Commission on Human Trafficking pursuant to section 2 of P.L.   ,

24  c. (C.     ), shall be dedicated to the development, establishment,

25  operation, and maintenance of the "John School Diversion

26  Program" created pursuant to subsection d. of this section.][2] [3]From

27  this fee, $200 shall be retained in the fund, and the remaining $300

28  shall be distributed as follows: $200 to the approved provider of the

29  " [5][John School Rehabilitative] Prostitution Offender[5] Program,"

30  as established under subsection d. of this section, attended by the

31  person; and $100 to the law enforcement agency that arrested the

32  person resulting in that person's conviction.[3]

33      d.  [2](1)[2] There is hereby established an education program to be

34  known as the "[5][John School [2][Diversion] Rehabilitative[2]]

35  Prostitution Offender[5] Program," which shall [2][be administered by

36  the Administrative Office of the Courts] consist of an instructional

37  program on prostitution and human trafficking schemes offered in

38  one or more locations throughout the State [3]as follows:

39      (a)[3] by a county or local governmental entity, [3][or] if that

40  county or local governmental entity demonstrates an interest in

41  establishing a program, submits information pertaining to the

42  proposed operation of an instructional program by the county or

43  local governmental entity, or alternatively, by[3] a nonprofit or other

44  private provider [3][.  The instructional program and each provider

45  thereof shall be approved by the Attorney General, in consultation

A3352 [5R]
24

1   with the Commission on Human Trafficking created by section 1 of
2   P.L.    , c.  (C.        ) (pending before the Legislature as this bill)²]
3   on behalf of the county or local governmental entity, and the
4   Attorney General, in consultation with the Commission on Human
5   Trafficking created by section 1 of P.L.    , c.  (C.        ) (pending
6   before the Legislature as this bill), approves the program and the
7   provider thereof, if the proposed provider is a nonprofit or other
8   private entity.  If a county or local governmental entity establishes
9   and operates an instructional program, then all courts operating
10  within the jurisdiction of that county or local governmental entity
11  shall order a person ⁴convicted of an eligible offense under
12  subsection a. of this section⁴ to attend that county or local
13  governmental entity's program; ⁴provided, a court shall not be
14  required to order a person to attend that program until the first day
15  of the month next following the date on which the Attorney General
16  notifies the Administrative Office of the Courts that the program
17  has been established and approved by the Attorney General;⁴ and
18      (b) by the State, to be established within six months of the
19  effective date of this section, based upon the Attorney General, in
20  consultation with the Commission on Human Trafficking created by
21  section 1 of P.L.    , c.  (C.        ) (pending before the Legislature as
22  this bill), approving an instructional program to be provided by one
23  or more approved nonprofit or other private providers in multiple
24  locations throughout the State.  Any court in a jurisdiction that does
25  not have an approved county or local governmental entity
26  instructional program as established under subparagraph (a) of this
27  paragraph shall order a person ⁴convicted of an eligible offense
28  under subsection a. of this section⁴ to attend ⁴[an] the⁴ approved
29  State program established under this subparagraph, unless there is
30  an extra-jurisdictional county or local governmental entity
31  instructional program within 25 miles of the court, and the court has
32  been notified ⁴in accordance with this subparagraph, or
33  subparagraph (a) of this paragraph,⁴ of the availability of that
34  program to accept participants from the court, in which case the
35  court may instead order a person to attend the county or local
36  governmental entity's instructional program³ ⁴; regarding any
37  program notice under this subparagraph, a court shall not be
38  required to order a person to attend a program until the first day of
39  the month next following the date on which the Attorney General
40  notifies the Administrative Office of the Courts that the program
41  has been established and approved by the Attorney General⁴ .
42      ²(2)² The program shall ²[educate defendants who have been
43  convicted of engaging a prostitute pursuant to paragraph (1) of
44  subsection b. of N.J.S.2C:34-1 about the risks involved in their
45  unlawful activity.  The program shall inform the defendants of]
46  include information intended to increase the person's awareness of:

1    (a)  the causes of prostitution and its relationship to human
2  trafficking;
3    (b)[2] the health risks connected with [2][the crime of][2] prostitution,
4  including the risk of transmittable diseases [2][, the legal
5  ramifications for defendants of their unlawful activity, the terms of
6  imprisonment for subsequent offenses, and the correlation between
7  prostitution and] ;
8    (c)  the consequences of convictions for prostitution or[2] human
9  trafficking [2], including penalties for subsequent convictions; and
10    (d) the pervasiveness of human trafficking and the effects of
11  human trafficking on its victims.
12    (3) Pursuant to section 2 of P.L.  , c.  (C.    ) (pending before
13  the Legislature as this bill), the Attorney General, in consultation
14  with the Commission on Human Trafficking, may provide for the
15  expenditures of monies from the "Human Trafficking Survivor's
16  Assistance Fund" to assist with the development, maintenance,
17  revision, and distribution of instructional program [3][and
18  counseling][3] materials for the " [5][John School Rehabilitative]
19  Prostitution Offender[5] Program[2] [3]," and the operation of this
20  instructional program[3] .
21
22    [2][11.] 12.[2] (New section) a. The Legislature finds and declares
23  that:
24    (1)  There reportedly are more than 12 million victims of human
25  trafficking and it is estimated that this figure could actually be as
26  high as 27 million;
27    (2) According to the National Center for Missing and Exploited
28  Children, at least 100,000 human trafficking victims are American
29  children who are an average age of 13 years old;
30    (3) Advertisements for selling the services of girls as escorts on
31  Internet websites falsely claim that these girls are 18 years of age or
32  older, when the girls actually are minors;
33    (4) The advertising of these escort services includes minors who
34  are being sold for sex, which constitutes sex trafficking and
35  commercial sexual abuse of minors;
36    (5) Responding to political and public outcry, the Internet
37  website craigslist.com removed its escort section, but another
38  website with an escort section, backpage.com, has to date refused to
39  do so;
40    (6) The states of Washington and Connecticut recently enacted
41  laws to require Internet websites, such as backpage.com, and the
42  patrons who advertise on websites, to maintain documentation that
43  they have proved the age of the escorts presented in the
44  advertisements;
45    (7) The State of New Jersey criminalized human trafficking in
46  2005; and

A3352 [5R]
26

1    (8) Sex trafficking of minors should be eliminated in conformity
2  with federal laws prohibiting the sexual exploitation of children.
3    b. A person commits the offense of advertising commercial
4  sexual abuse of a minor if:
5    (1) the person knowingly publishes, disseminates, or displays, or
6  causes directly or indirectly, to be published, disseminated, or
7  displayed, any advertisement for a commercial sex act, which is to
8  take place in this State and which includes the depiction of a minor;
9  or
10    (2) the person knowingly purchases advertising in this State for a
11  commercial sex act which includes the depiction of a minor.
12    c. A person who commits the offense of advertising
13  commercial sexual abuse of a minor as established in subsection b.
14  of this section is guilty of a crime of the first degree.
15  Notwithstanding the provisions of N.J.S.2C:43-3, the fine imposed
16  for an offense under this section [1][concerning criminal
17  negligence][1] shall be a fine of at least $25,000, which shall be
18  collected as provided for the collection of fines and restitutions in
19  section 3 of P.L.1979, c.396 (C.2C:46-4) and forwarded to the
20  Department of the Treasury to be deposited in the "Human
21  Trafficking Survivor's Assistance Fund" established by section 2 of
22  P.L.  , c. (C.    ) (pending before the Legislature as this bill).
23    d. Nothing in this section shall preclude an indictment and
24  conviction for any other offense defined by the laws of this State.
25    e. For the purposes of this section:
26    "Advertisement for a commercial sex act" means any
27  advertisement or offer in electronic or print media, including the
28  Internet, which includes either an explicit or implicit offer for a
29  commercial sex act to occur in this State.
30    "Commercial sex act" means any act of sexual contact or sexual
31  penetration, as defined in N.J.S.2C:14-1, or any prohibited sexual
32  act, as defined in N.J.S.2C:24-4, for which something of value is
33  given or received by any person.
34    "Depiction" means any photograph or [2][visual or printed matter]
35  material containing a photograph or reproduction of a photograph[2].
36    "Minor" means a person who is under 18 years of age.
37    "Photograph" means a print, negative, slide, digital image,
38  motion picture, or videotape, and includes anything tangible or
39  intangible produced by photographing.
40    [2]["Visual or printed matter" means any photograph or other
41  material that contains a reproduction of a photograph.][2]
42    f. It shall not be a defense to a violation of this section that the
43  defendant [1]:
44    (1)[1] did not know the age of the minor depicted in the
45  advertisement [1]; or

1 (2) claims to know the age of the person depicted, unless there is
2 appropriate proof of age obtained and produced in accordance with
3 subsections g. and h. of this section[1].
4  g. It shall be a defense to a violation of this section that the
5 defendant made a reasonable, bona fide attempt to ascertain the true
6 age of the minor depicted in the advertisement by requiring, prior to
7 publication, dissemination, or display of the advertisement,
8 production of a driver's license, marriage license, birth certificate,
9 or other governmental or educational identification card or paper of
10 the minor depicted in the advertisement and did not rely solely on
11 oral or written representations of the minor's age, or the apparent
12 age of the minor as depicted. The defendant shall prove the defense
13 established [in] this subsection by a preponderance of the evidence.
14  h. The defendant shall maintain and, upon request, produce a
15 record of the identification used to verify the age of the person
16 depicted in the advertisement.
17
18 [2][12. Section 2 of P.L.1994, c.133 (C.2C:7-2) is amended to read
19 as follows:
20  2. a. (1) A person who has been convicted, adjudicated
21 delinquent or found not guilty by reason of insanity for commission
22 of a sex offense as defined in subsection b. of this section shall
23 register as provided in subsections c. and d. of this section.
24  (2) A person who in another jurisdiction is required to register
25 as a sex offender and (a) is enrolled on a full-time or part-time basis
26 in any public or private educational institution in this State,
27 including any secondary school, trade or professional institution,
28 institution of higher education or other post-secondary school, or
29 (b) is employed or carries on a vocation in this State, on either a
30 full-time or a part-time basis, with or without compensation, for
31 more than 14 consecutive days or for an aggregate period exceeding
32 30 days in a calendar year, shall register in this State as provided in
33 subsections c. and d. of this section.
34  (3) A person who fails to register as required under this act shall
35 be guilty of a crime of the third degree.
36  b. For the purposes of this act a sex offense shall include the
37 following:
38  (1) Aggravated sexual assault, sexual assault, aggravated
39 criminal sexual contact, kidnapping pursuant to paragraph (2) of
40 subsection c. of N.J.S.2C:13-1 or an attempt to commit any of these
41 crimes if the court found that the offender's conduct was
42 characterized by a pattern of repetitive, compulsive behavior,
43 regardless of the date of the commission of the offense or the date
44 of conviction;
45  (2) A conviction, adjudication of delinquency, or acquittal by
46 reason of insanity for aggravated sexual assault; sexual assault;
47 aggravated criminal sexual contact; kidnapping pursuant to
48 paragraph (2) of subsection c. of N.J.S.2C:13-1; endangering the

A3352 [5R]
28

1   welfare of a child by engaging in sexual conduct which would
2   impair or debauch the morals of the child pursuant to subsection a.
3   of N.J.S.2C:24-4; endangering the welfare of a child pursuant to
4   paragraph (3) or (4) or subparagraph (a) of paragraph (5) of
5   subsection b. of N.J.S.2C:24-4; luring or enticing pursuant to
6   section 1 of P.L.1993, c.291 (C.2C:13-6); criminal sexual contact
7   pursuant to N.J.S.2C:14-3b. if the victim is a minor; kidnapping
8   pursuant to N.J.S.2C:13-1, criminal restraint pursuant to
9   N.J.S.2C:13-2, or false imprisonment pursuant to N.J.S.2C:13-3 if
10  the victim is a minor and the offender is not the parent of the
11  victim; knowingly promoting prostitution of a child pursuant to
12  paragraph (3) or paragraph (4) of subsection b. of N.J.S.2C:34-1;
13  advertising commercial sexual abuse of a minor pursuant to section
14  11 of P.L.  , c.   (C.   ) (pending before the Legislature as this
15  bill); or an attempt to commit any of these enumerated offenses if
16  the conviction, adjudication of delinquency or acquittal by reason of
17  insanity is entered on or after the effective date of this act or the
18  offender is serving a sentence of incarceration, probation, parole or
19  other form of community supervision as a result of the offense or is
20  confined following acquittal by reason of insanity or as a result of
21  civil commitment on the effective date of this act;
22    (3) A conviction, adjudication of delinquency or acquittal by
23  reason of insanity for an offense similar to any offense enumerated
24  in paragraph (2) or a sentence on the basis of criteria similar to the
25  criteria set forth in paragraph (1) of this subsection entered or
26  imposed under the laws of the United States, this State or another
27  state.
28    c.  A person required to register under the provisions of this act
29  shall do so on forms to be provided by the designated registering
30  agency as follows:
31    (1) A person who is required to register and who is under
32  supervision in the community on probation, parole, furlough, work
33  release, or a similar program, shall register at the time the person is
34  placed under supervision or no later than 120 days after the
35  effective date of this act, whichever is later, in accordance with
36  procedures established by the Department of Corrections, the
37  Department of Human Services, the Juvenile Justice Commission
38  established pursuant to section 2 of P.L.1995, c.284 (C.52:17B-
39  170), or the Administrative Office of the Courts, whichever is
40  responsible for supervision;
41    (2) A person confined in a correctional or juvenile facility or
42  involuntarily committed who is required to register shall register
43  prior to release in accordance with procedures established by the
44  Department of Corrections, the Department of Human Services or
45  the Juvenile Justice Commission and, within 48 hours of release,
46  shall also register with the chief law enforcement officer of the
47  municipality in which the person resides or, if the municipality does
48  not have a local police force, the Superintendent of State Police;

A3352 [5R]
29

1 (3) A person moving to or returning to this State from another
2 jurisdiction shall register with the chief law enforcement officer of
3 the municipality in which the person will reside or, if the
4 municipality does not have a local police force, the Superintendent
5 of State Police within 120 days of the effective date of this act or 10
6 days of first residing in or returning to a municipality in this State,
7 whichever is later;

8 (4) A person required to register on the basis of a conviction
9 prior to the effective date who is not confined or under supervision
10 on the effective date of this act shall register within 120 days of the
11 effective date of this act with the chief law enforcement officer of
12 the municipality in which the person will reside or, if the
13 municipality does not have a local police force, the Superintendent
14 of State Police;

15 (5) A person who in another jurisdiction is required to register
16 as a sex offender and who is enrolled on a full-time or part-time
17 basis in any public or private educational institution in this State,
18 including any secondary school, trade or professional institution,
19 institution of higher education or other post-secondary school shall,
20 within ten days of commencing attendance at such educational
21 institution, register with the chief law enforcement officer of the
22 municipality in which the educational institution is located or, if the
23 municipality does not have a local police force, the Superintendent
24 of State Police;

25 (6) A person who in another jurisdiction is required to register
26 as a sex offender and who is employed or carries on a vocation in
27 this State, on either a full-time or a part-time basis, with or without
28 compensation, for more than 14 consecutive days or for an
29 aggregate period exceeding 30 days in a calendar year, shall, within
30 ten days after commencing such employment or vocation, register
31 with the chief law enforcement officer of the municipality in which
32 the employer is located or where the vocation is carried on, as the
33 case may be, or, if the municipality does not have a local police
34 force, the Superintendent of State Police;

35 (7) In addition to any other registration requirements set forth in
36 this section, a person required to register under this act who is
37 enrolled at, employed by or carries on a vocation at an institution of
38 higher education or other post-secondary school in this State shall,
39 within ten days after commencing such attendance, employment or
40 vocation, register with the law enforcement unit of the educational
41 institution, if the institution has such a unit.

42 d. (1) Upon a change of address, a person shall notify the law
43 enforcement agency with which the person is registered and shall
44 re-register with the appropriate law enforcement agency no less
45 than 10 days before he intends to first reside at his new address.
46 Upon a change of employment or school enrollment status, a person
47 shall notify the appropriate law enforcement agency no later than
48 five days after any such change. A person who fails to notify the

A3352 [5R]
30

1   appropriate law enforcement agency of a change of address or status
2   in accordance with this subsection is guilty of a crime of the fourth
3   degree.
4     (2)  A person required to register under this act shall provide the
5   appropriate law enforcement agency with information as to whether
6   the person has routine access to or use of a computer or any other
7   device with Internet capability.  A person who fails to notify the
8   appropriate law enforcement agency of such information or of a
9   change in the person's access to or use of a computer or other
10   device with Internet capability or who provides false information
11   concerning the person's access to or use of a computer or any other
12   device with Internet capability is guilty of a crime of the fourth
13   degree.
14     e.  A person required to register under paragraph (1) of
15   subsection b. of this section or under paragraph (3) of subsection b.
16   due to a sentence imposed on the basis of criteria similar to the
17   criteria set forth in paragraph (1) of subsection b. shall verify his
18   address with the appropriate law enforcement agency every 90 days
19   in a manner prescribed by the Attorney General.  A person required
20   to register under paragraph (2) of subsection b. of this section or
21   under paragraph (3) of subsection b. on the basis of a conviction for
22   an offense similar to an offense enumerated in paragraph (2) of
23   subsection b. shall verify his address annually in a manner
24   prescribed by the Attorney General.   One year after the effective
25   date of this act, the Attorney General shall review, evaluate and, if
26   warranted, modify pursuant to the "Administrative Procedure Act,"
27   P.L.1968, c.410 (C.52:14B-1 et seq.) the verification requirement.
28   Any person who knowingly provides false information concerning
29   his place of residence or who fails to verify his address with the
30   appropriate law enforcement agency or other entity, as prescribed
31   by the Attorney General in accordance with this subsection, is
32   guilty of a crime of the fourth degree.
33     f.  Except as provided in subsection g. of this section, a person
34   required to register under this act may make application to the
35   Superior Court of this State to terminate the obligation upon proof
36   that the person has not committed an offense within 15 years
37   following conviction or release from a correctional facility for any
38   term of imprisonment imposed, whichever is later, and is not likely
39   to pose a threat to the safety of others.
40     g.  A person required to register under this section who has
41   been convicted of, adjudicated delinquent, or acquitted by reason of
42   insanity for more than one sex offense as defined in subsection b. of
43   this section or who has been convicted of, adjudicated delinquent,
44   or acquitted by reason of insanity for aggravated sexual assault
45   pursuant to subsection a. of N.J.S.2C:14-2 or sexual assault
46   pursuant to paragraph (1) of subsection c. of N.J.S.2C:14-2 is not
47   eligible under subsection f. of this section to make application to

A3352 [5R]
31

1  the Superior Court of this State to terminate the registration
2  obligation.
3  (cf: P.L.2007, c.219, s.2)]²

4

5    13. N.J.S.2C:24-4 is amended to read as follows:
6  2C:24-4. Endangering Welfare of Children.
7    a.  Any person having a legal duty for the care of a child or who
8  has assumed responsibility for the care of a child who engages in
9  sexual conduct which would impair or debauch the morals of the
10  child, or who causes the child harm that would make the child an
11  abused or neglected child as defined in R.S.9:6-1, R.S.9:6-3 and
12  section 1 of P.L.1974, c.119 [, s.1] (C.9:6-8.21) is guilty of a crime
13  of the second degree. Any other person who engages in conduct or
14  who causes harm as described in this subsection to a child under the
15  age of ²[16] 18² is guilty of a crime of the third degree.
16    b.  (1) As used in this subsection:
17  "Child" means any person under ²[16] 18² years of age.
18  "Internet" means the international computer network of both
19  federal and non-federal interoperable packet switched data
20  networks.
21  "Prohibited sexual act" means
22  (a)  Sexual intercourse; or
23  (b)  Anal intercourse; or
24  (c)  Masturbation; or
25  (d)  Bestiality; or
26  (e)  Sadism; or
27  (f)  Masochism; or
28  (g)  Fellatio; or
29  (h)  Cunnilingus; or
30  (i)  Nudity, if depicted for the purpose of sexual stimulation or
31  gratification of any person who may view such depiction; or
32  (j)  Any act of sexual penetration or sexual contact as defined in
33  N.J.S.2C:14-1.
34  "Reproduction" means, but is not limited to, computer generated
35  images.
36  (2)  (Deleted by amendment, P.L.2001, c.291).
37  (3)  A person commits a crime of the second degree if he causes
38  or permits a child to engage in a prohibited sexual act or in the
39  simulation of such an act if the person knows, has reason to know
40  or intends that the prohibited act may be photographed, filmed,
41  reproduced, or reconstructed in any manner, including on the
42  Internet, or may be part of an exhibition or performance.  If the
43  person is a parent, guardian or other person legally charged with the
44  care or custody of the child, the person shall be guilty of a crime of
45  the first degree.
46  (4)  Any person who photographs or films a child in a prohibited
47  sexual act or in the simulation of such an act or who uses any
48  device, including a computer, to reproduce or reconstruct the image

A3352 [5R]
32

1   of a child in a prohibited sexual act or in the simulation of such an
2   act is guilty of a crime of the second degree.

3     (5) (a) Any person who knowingly receives for the purpose of
4   selling or who knowingly sells, procures, manufactures, gives,
5   provides, lends, trades, mails, delivers, transfers, publishes,
6   distributes, circulates, disseminates, presents, exhibits, advertises,
7   offers or agrees to offer, through any means, including the Internet,
8   any photograph, film, videotape, computer program or file, video
9   game or any other reproduction or reconstruction which depicts a
10   child engaging in a prohibited sexual act or in the simulation of
11   such an act, is guilty of a crime of the second degree.

12     (b) Any person who knowingly possesses or knowingly views
13   any photograph, film, videotape, computer program or file, video
14   game or any other reproduction or reconstruction which depicts a
15   child engaging in a prohibited sexual act or in the simulation of
16   such an act, including on the Internet, is guilty of a crime of the
17   [fourth] <u>third</u> degree.

18     (6) For purposes of this subsection, a person who is depicted as
19   or presents the appearance of being under the age of [2][16] <u>18</u>[2] in
20   any photograph, film, videotape, computer program or file, video
21   game or any other reproduction or reconstruction shall be rebuttably
22   presumed to be under the age of [2][16] <u>18</u>[2]. If the child who is
23   depicted as engaging in, or who is caused to engage in, a prohibited
24   sexual act or simulation of a prohibited sexual act is under the age
25   of [2][16] <u>18</u>[2], the actor shall be strictly liable and it shall not be a
26   defense that the actor did not know that the child was under the age
27   of [2][16] <u>18</u>[2], nor shall it be a defense that the actor believed that
28   the child was [2][16] <u>18</u>[2] years of age or older, even if such a
29   mistaken belief was reasonable.
30   (cf: P.L.2001, c.291, s.1)

31

32   [2]14. Section 8 of P.L.1968, c.409 (C.2A:156A-8) is amended to
33   read as follows:
34     8. The Attorney General, county prosecutor or a person
35   designated to act for such an official and to perform his duties in
36   and during his actual absence or disability, may authorize, in
37   writing, an ex parte application to a judge designated to receive the
38   same for an order authorizing the interception of a wire, or
39   electronic or oral communication by the investigative or law
40   enforcement officers or agency having responsibility for an
41   investigation when such interception may provide evidence of the
42   commission of the offense of murder, kidnapping, gambling,
43   robbery, bribery, a violation of paragraph (1) or (2) of subsection b.
44   of N.J.S.2C:12-1, a violation of section 3 of P.L.1997, c.353
45   (C.2C:21-4.3), a violation of N.J.S.2C:21-19 punishable by
46   imprisonment for more than one year, a violation of P.L.1994, c.121
47   (C.2C:21-23 et seq.), a violation of sections 1 through 5 of

A3352 [5R]
33

1   P.L.2002, c.26 (C.2C:38-1 through C.2C:38-5), a violation of
2   N.J.S.2C:33-3, a violation of N.J.S.2C:17-2, a violation of sections
3   1 through 3 of P.L.1983, c.480 (C.2C:17-7 through 2C:17-9), a
4   violation of N.J.S.2C:12-3 (terroristic threats),   violations of
5   N.J.S.2C:35-3, N.J.S.2C:35-4 and N.J.S.2C:35-5, violations of
6   sections 112 through 116, inclusive, of the "Casino Control Act,"
7   P.L.1977, c.110 (C.5:12-112 through 5:12-116), <u>a violation of</u>
8   <u>section 1 of P.L.2005, c.77 (C.2C:13-8), a violation of N.J.S.2C:34-</u>
9   <u>1 punishable by imprisonment for more than one year,</u>   arson,
10  burglary, theft and related offenses punishable by imprisonment for
11  more than one year, endangering the welfare of a child pursuant to
12  N.J.S.2C:24-4, escape, forgery and fraudulent practices punishable
13  by imprisonment for more than one year, alteration of motor vehicle
14  identification numbers, unlawful manufacture, purchase, use, or
15  transfer of firearms, unlawful possession or use of destructive
16  devices or explosives, weapons training for illegal activities
17  pursuant to section 1 of P.L.1983, c.229 (C.2C:39-14), racketeering
18  or a violation of subsection g. of N.J.S.2C:5-2, leader of organized
19  crime, organized criminal activity directed toward the unlawful
20  transportation, storage, disposal, discharge, release, abandonment or
21  disposition of any harmful, hazardous, toxic, destructive, or
22  polluting substance, or any conspiracy to commit any of the
23  foregoing offenses or which may provide evidence aiding in the
24  apprehension of the perpetrator or perpetrators of any of the
25  foregoing offenses.[2]
26  (cf: P.L.2002, c.26, s.6)
27
28  [2]15.  Section 1 of P.L.1994, c.144 (C.2A:162-12) is amended to
29  read as follows:
30  1.  a. As used in this section:
31  "Crime with bail restrictions" means a crime of the first or
32  second degree charged under any of the following sections:

| | | |
|---|---|---|
| 33 | (1) Murder | 2C:11-3. |
| 34 | (2) Manslaughter | 2C:11-4. |
| 35 | (3) Kidnapping | 2C:13-1. |
| 36 | (4) Sexual Assault | 2C:14-2. |
| 37 | (5) Robbery | 2C:15-1. |
| 38 | (6) Carjacking   P.L.1993, c.221, s.1 (C.2C:15-2). | |
| 39 | (7) Arson and Related Offenses | 2C:17-1. |
| 40 | (8) Causing or Risking Widespread | |
| 41 |     Injury or Damage | 2C:17-2. |
| 42 | (9) Burglary | 2C:18-2. |
| 43 | (10) Theft by Extortion | 2C:20-5. |
| 44 | (11) Endangering the Welfare of Children | 2C:24-4. |
| 45 | (12) Resisting Arrest; Eluding Officer | 2C:29-2. |
| 46 | (13) Escape | 2C:29-5. |
| 47 | (14) Corrupting or Influencing a Jury | 2C:29-8. |
| 48 | (15) Possession of Weapons for Unlawful Purposes | 2C:39-4. |

A3352 [5R]
34

1    (16) Weapons Training for Illegal Activities
2              P.L.1983, c.229, s.1 (C.2C:39-14).
3    (17) Soliciting or Recruiting Gang Members
4              P.L.1999, c.160, s.1 (C.2C:33-28).
5    (18) Human Trafficking     P.L.2005, c.77, s.1 (C.2C:13-8).
6    "Crime with bail restrictions" also includes any first or second
7    degree drug-related crimes under chapter 35 of Title 2C of the New
8    Jersey Statutes and any first or second degree racketeering crimes
9    under chapter 41 of Title 2C of the New Jersey Statutes.
10   "Crime with bail restrictions" also includes any crime or offense
11   involving domestic violence, as defined in subsection a. of section 3
12   of P.L.1991, c.261 (C.2C:25-19), where the defendant was subject
13   to a temporary or permanent restraining order issued pursuant to the
14   provisions of the "Prevention of Domestic Violence Act of 1991,"
15   P.L.1991, c.261 (C.2C:25-17 et al.) and is charged with a crime
16   committed against a person protected under the order or where the
17   defendant is charged with contempt pursuant to N.J.S.2C:29-9.
18   b.   Subject to the provisions of subsection c. of this section, a
19   person charged with a crime with bail restrictions may post the
20   required amount of bail only in the form of:
21   (1) Full cash;
22   (2) A surety bond executed by a corporation authorized under
23   chapter 31 of Title 17 of the Revised Statutes; or
24   (3) A bail bond secured by real property situated in this State
25   with an unencumbered equity equal to the amount of bail
26   undertaken plus $20,000.
27   c.   There shall be a presumption in favor of the court
28   designating the posting of full United States currency cash bail to
29   the exclusion of other forms of bail when a defendant is charged
30   with an offense as set forth in subsection a. of this section and:
31   (1) has two other indictable cases pending at the time of the
32   arrest; or
33   (2) has two prior convictions for a first or second degree crime
34   or for a violation of section 1 of P.L.1987, c.101 (C.2C:35-7) or any
35   combination thereof; or
36   (3) has one prior conviction for murder, aggravated
37   manslaughter, aggravated sexual assault, kidnapping or bail
38   jumping; or
39   (4) was on parole at the time of the arrest; or
40   (5) was subject to a temporary or permanent restraining order
41   issued pursuant to the provisions of the "Prevention of Domestic
42   Violence Act of 1991," P.L.1991, c.261 (C.2C:25-17 et al.), was
43   charged with a crime committed against a person protected under
44   that order, including a charge of contempt pursuant to N.J.S.2C:29-
45   9, and either: (a) is charged with commission of a domestic violence
46   crime that resulted in serious bodily injury to the victim; or (b) has
47   at least one prior conviction for a crime or offense involving

A3352 [5R]
35

1   domestic violence against the same victim or has previously
2 violated a final restraining order protecting the same victim,
3     unless the court finds on the record that another form of bail
4 authorized in subsection b. of this section will ensure the
5 defendant's presence in court when required.
6     d.  When bail is posted in the form of a bail bond secured by
7 real property, the owner of the real property, whether the person is
8 admitted to bail or a surety, shall also file an affidavit containing:
9     (1) A legal description of the real property;
10     (2) A description of each encumbrance on the real property;
11     (3) The market value of the unencumbered equity owned by the
12 affiant as determined in a full appraisal conducted by an appraiser
13 licensed by the State of New Jersey; and
14     (4) A statement that the affiant is the sole owner of the
15 unencumbered equity.
16     e.  Nothing herein is intended to preclude a court from releasing
17 a person on the person's own recognizance when the court
18 determines that such person is deserving.[2]
19 (cf: P.L.2011, c.138, s.1)
20
21     [2][14.] 16.[2] Section 1 of P.L.1985, c.126 (C.2A:84A-32.4) is
22 amended to read as follows:
23     1.  a.  In prosecutions for aggravated sexual assault, sexual
24 assault, aggravated criminal sexual contact, criminal sexual contact,
25 [or] human trafficking involving sexual activity, child abuse, or in
26 any action alleging an abused or neglected child under P.L.1974,
27 c.119 (C.9:6-8.21 et seq.), the court may, on motion and after
28 conducting a hearing in camera, order the taking of the testimony of
29 a witness on closed circuit television at the trial, out of the view of
30 the jury, defendant, or spectators upon making findings as provided
31 in subsection b. of this section.
32     b.  An order under this section may be made only if the court
33 finds that the witness is 16 years of age or younger and that there is
34 a substantial likelihood that the witness would suffer severe
35 emotional or mental distress if required to testify in open court.
36 The order shall be specific as to whether the witness will testify
37 outside the presence of spectators, the defendant, the jury, or all of
38 them and shall be based on specific findings relating to the impact
39 of the presence of each.
40     c.  A motion seeking closed circuit testimony under subsection
41 a. of this section may be filed by:
42     (1) The victim or witness or the victim's or witness's attorney,
43 parent or legal guardian;
44     (2) The prosecutor;
45     (3) The defendant or the defendant's counsel; or
46     (4) The trial judge on the judge's own motion.
47     d.  The defendant's counsel shall be present at the taking of
48 testimony in camera.  If the defendant is not present, he and his

1 attorney shall be able to confer privately with each other during the
2 testimony by a separate audio system.
3     e.   If testimony is taken on closed circuit television pursuant to
4 the provisions of this act, a stenographic recording of that testimony
5 shall also be required.   A typewritten transcript of that testimony
6 shall be included in the record on appeal.   The closed circuit
7 testimony itself shall not constitute part of the record on appeal
8 except on motion for good cause shown.
9 (cf: P.L.1985, c.126, s.1)
10
11    [2][15.] 17.[2] N.J.S.2C:14-7 is amended to read as follows:
12     2C:14-7. a.  In prosecutions for aggravated sexual assault, sexual
13 assault, aggravated criminal sexual contact, criminal sexual contact,
14 human trafficking involving sexual activity, endangering the
15 welfare of a child in violation of N.J.S.2C:24-4, or the fourth degree
16 crime of lewdness in violation of subsection b. of N.J.S.2C:14-4,
17 evidence of the victim's previous sexual conduct shall not be
18 admitted nor reference made to it in the presence of the jury except
19 as provided in this section.  When the defendant seeks to admit such
20 evidence for any purpose, the defendant must apply for an order of
21 the court before the trial or preliminary hearing, except that the
22 court may allow the motion to be made during trial if the court
23 determines that the evidence is newly discovered and could not
24 have been obtained earlier through the exercise of due diligence.
25 After the application is made, the court shall conduct a hearing in
26 camera to determine the admissibility of the evidence.  If the court
27 finds that evidence offered by the defendant regarding the sexual
28 conduct of the victim is relevant and highly material and meets the
29 requirements of subsections c. and d. of this section and that the
30 probative value of the evidence offered substantially outweighs its
31 collateral nature or the probability that its admission will create
32 undue prejudice, confusion of the issues, or unwarranted invasion of
33 the privacy of the victim, the court shall enter an order setting forth
34 with specificity what evidence may be introduced and the nature of
35 the questions which shall be permitted, and the reasons why the
36 court finds that such evidence satisfies the standards contained in
37 this section.  The defendant may then offer evidence under the order
38 of the court.
39     b.   In the absence of clear and convincing proof to the contrary,
40 evidence of the victim's sexual conduct occurring more than one
41 year before the date of the offense charged is presumed to be
42 inadmissible under this section.
43     c.   Evidence of previous sexual conduct with persons other than
44 the defendant which is offered by any lay or expert witness shall not
45 be considered relevant unless it is material to proving the source of
46 semen, pregnancy or disease.
47     d.   Evidence of the victim's previous sexual conduct with the
48 defendant shall be considered relevant if it is probative of whether a

1   reasonable person, knowing what the defendant knew at the time of
2   the alleged offense, would have believed that the alleged victim
3   freely and affirmatively permitted the sexual behavior complained
4   of.

5     e.  Evidence of the manner in which the victim was dressed at
6   the time an offense was committed shall not be admitted unless
7   such evidence is determined by the court to be relevant and
8   admissible in the interest of justice, after an offer of proof by the
9   proponent of such evidence outside the hearing of the jury or at
10   such hearing as the court may require, and a statement by the court
11   of its findings of fact essential to its determination.  A statement by
12   the court of its findings shall also be included in the record.

13     f.  For the purposes of this section, "sexual conduct" shall mean
14   any conduct or behavior relating to sexual activities of the victim,
15   including but not limited to previous or subsequent experience of
16   sexual penetration or sexual contact, use of contraceptives, sexual
17   activities reflected in gynecological records, living arrangement and
18   life style.
19   (cf: P.L.1995, c.237, s.1)
20

21     [2][16.] 18.[2] (New section) [3][a.][3] The Attorney General shall, in
22   consultation with the Commission on Human Trafficking
23   established by section 1 of P.L.   , c. (C.      ) (pending before the
24   Legislature as this bill), [3][establish and maintain] coordinate[3] the
25   [3][participation of the State [1][with either an existing] in] State's
26   involvement with[3] the[1] national, 24-hour toll-free hotline telephone
27   service on human trafficking that is operating [1][on or after the
28   effective date of this section or any federally required hotline
29   telephone service] pursuant to the National Human Trafficking
30   Hotline, Training, and Technical Assistance Program authorized by
31   22 U.S.C. ss.7104(b) and 7105(b)(1)(B), 8 U.S.C. s.1522(c)(1)(A),
32   or any successor federal law[1] [3][, and shall take appropriate action
33   to publicize the service][5].

34     [3][b. [1][Unless otherwise established by a federally required
35   hotline telephone service under federal law, the hotline selected by
36   the] The[1] Attorney General, in consultation with the commission,
37   [1][shall be capable of receiving information from members of the
38   public who have knowledge of or who believe that an act of human
39   trafficking in violation of section 1 of P.L.2005, c.77 (C.2C:13-8) is
40   being or has been committed.  The hotline service][1] shall also [1][be
41   capable of] require that any State hotline telephone number
42   established before, on, or after the effective date of this section for[1]
43   receiving [1][and] information from members of the public who have
44   knowledge of or who believe that an act of human trafficking in
45   violation of section 1 of P.L.2005, c.77 (C.2C:13-8) is being or has
46   been committed or for[1] responding to requests for information from

A3352 [5R]
38

[  members of the public concerning human trafficking [1]be directly
2   linked to the national, 24-hour toll-free hotline telephone service
3   described in subsection a. of this section, so that any telephone call
4   to the State number is immediately and directly forwarded to that
5   national telephone service[1].
6      c.  The Attorney General shall [1], in consultation with the
7   commission, and[1] pursuant to any funds appropriated or otherwise
8   made available, establish an educational and public information
9   program concerning the crime of human trafficking set out in
10  section 1 of P.L.2005, c.77 (C.2C:13-8).[3]

11

12     [2][17.] 19.[2] (New section)  a.  [2][(1)][2] The [2]Police Training
13  Commission, in consultation with the[2] Attorney General and the
14  Director of the Division of Criminal Justice in the Department of
15  Law and Public Safety [2],[2] shall develop and approve [2][a training
16  course and curriculum] , as part of the police training courses
17  required pursuant to P.L.1961, c.56 (C.52:17B-66 et seq.), courses
18  of study[2] on the handling, response procedures, investigation, and
19  prosecution of human trafficking cases [2][for law enforcement
20  agencies][2].  [2][This training course] These courses[2] shall be
21  reviewed at least every two years and modified [2][by the Attorney
22  General and Director of the Division of Criminal Justice][2] from
23  time to time as need may require.
24     [2][(2) The Attorney General shall be responsible for ensuring that
25  all law enforcement officers attend initial training within 90 days of
26  appointment or transfer and annual inservice training of at least four
27  hours as described in this section.
28     (3) The Division of Criminal Justice shall distribute the training
29  materials and curriculum to all State, county, and local law
30  enforcement agencies.][2]
31     b.  (1) The [2][Division of Criminal Justice] Department of
32  Community Affairs[2], in consultation with the [1]Commission on
33  Human Trafficking established by section 1 of P.L.  , c.  (C.    )
34  (pending before the Legislature as this bill) [2][and the[1] Department
35  of Community Affairs][2], shall develop [2][and] ,[2] approve [2], and
36  provide for[2] a [1]one-time[1] training course on the handling and
37  response procedures of suspected human trafficking activities for
38  owners, operators, and staff of hotels and motels as defined in the
39  "Hotel and Multiple Dwelling Law," P.L.1967, c.76 (C.55:13A-1 et
40  seq.) [2]; or alternatively, the department, in consultation with the
41  commission, shall approve [5][for use][5] a substantially similar one-
42  time training course [5][provided by a recognized Statewide
43  nonprofit hotel or other multiple dwelling trade association with
44  demonstrated experience] for use by hotels and motels[5] in
45  providing [5][course offerings] training[5] to owners, operators, and

1    staff [5][on similar workplace matters[2]][5].    [1]The [2][Division of
2    Criminal Justice] department[2] , in consultation with the
3    commission [5][[2]and the approved nonprofit course provider, if
4    any[2]][5] , shall define by regulation which staff positions are
5    required, as a condition of employment, to attend the one-time
6    training course.[1] [2][This] Verifiable completion of the training
7    course by required staff shall be a condition of issuance,
8    maintenance, or renewal of any license, permit, certificate, or
9    approval required, permitted to be granted, or issued to owners or
10    operators under the provisions of the "Hotel and Multiple Dwelling
11    Law," P.L.1967, c.76 (C.55:13A-1 et seq.). The[2] training course
12    shall be reviewed at least every two years and modified by the
13    [2][Division of Criminal Justice] department[2], in consultation with
14    the [1]commission [5][and the[1] [2][Department of Community Affairs]
15    approved nonprofit course provider, if any[2]][5], from time to time as
16    need may require.

17    (2) The Department of Community Affairs [2], through its
18    oversight and enforcement authority provided under the "Hotel and
19    Multiple Dwelling Law," P.L.1967, c.76 (C.55:13A-1 et seq.)[2]
20    shall be responsible for ensuring that all hotel and motel owners,
21    operators, and [1]required[1] staff attend [1][initial] the one-time[1]
22    training [1]course[1] within [1][90 days] one year[1] of [1]the[1] enactment of
23    this section [1][, and annual inservice training of at least four hours
24    as described in this section] in the case of all current owners,
25    operators, and required staff engaging in their respective profession
26    on the effective date of this section, and within six months of the
27    first day of ownership, operation, or employment for all new
28    owners, operators, and required staff who initially engage in their
29    respective profession on a date that follows the effective date[1].
30    [5][[2]If an approved nonprofit course provider is involved in
31    providing the one-time training course to new owners, operators,
32    and staff who initially engage in their respective profession on a
33    date that follows the effective date of this section, then the
34    nonprofit course provider shall provide the training course at least
35    once every six months in order for these persons to meet the six-
36    month training deadline established by this paragraph.[2]][5]

37    (3) The [2][[1]commission, in coordination with the[1]][2] Department
38    of Community Affairs [2][[1],[1]][2] shall [1]make available [2][and[1]
39    distribute][2] the training materials [1][and curriculum] for the one-
40    time training course[1] to [1][all hotels and motels in the State] hotel
41    and motel owners, operators, and required staff [5][[2], or to the
42    approved nonprofit course provider, if any.[2]][5] in order for [2][these
43    persons] the owners, operators, and required staff[2] to fulfill the
44    one-time training requirement set forth in this subsection[1].

A3352 [5R]
40

1    c.  (1)  The  [2][Division of Criminal Justice] Department of
2  Health[2], in consultation with the [1]Commission on Human
3  Trafficking established by section 1 of P.L.  , c.  (C.    )
4  (pending before the Legislature as this bill)[2][and the][1] Department
5  of Human Services][2], shall develop [2][and] ,[2] approve [2], and
6  provide for[2] a [1]one-time[1] training course on the handling and
7  response procedures of suspected human trafficking activities for
8  employees of every licensed health care facility as defined in
9  section 2 of P.L.1971, c.136 (C.26:2H-2), including those
10  professionals whose professional practice is regulated pursuant to
11  Title 45 of the Revised Statutes [2]; or alternatively, the department,
12  in consultation with the commission, shall approve for use a
13  substantially similar one-time training course provided by a
14  recognized Statewide nonprofit healthcare trade association with
15  demonstrated experience in providing course offerings to health
16  care facility employees on similar workplace matters[2].  [1]The
17  [2][Division of Criminal Justice] department[2] , in consultation with
18  the commission [2]and the approved nonprofit course provider, if
19  any[2] , shall define by regulation which employees are required, as a
20  condition of their employment, to attend the one-time training
21  course.[1]  [2][This] Verifiable completion of the training course by
22  required employees shall be a condition of issuance, maintenance,
23  or renewal of any license, permit, certificate, or approval required,
24  permitted to be granted, or issued to licensed health care facilities
25  under the provisions of P.L.1971, c.136 (C.26:2H-1 et al.).  The[2]
26  training course shall be reviewed at least every two years and
27  modified by the [2][Division of Criminal Justice] department[2], in
28  consultation with the [1]commission and the[1] [2][Department of
29  Human Services] approved nonprofit course provider, if any[2] [1],
30  from time to time as need may require[1].

31    (2) The Department of [2][Human Services] Health, through its
32  oversight and enforcement authority provided under P.L.1971,
33  c.136 (C.26:2H-1 et al.),[2] shall be responsible for ensuring that all
34  [1]required[1] employees of licensed health care facilities attend
35  [1][initial] the one-time[1] training [1]course[1] within [1][90 days] one
36  year[1] of [1]the[1] enactment of this section [1][, and annual inservice
37  training of at least four hours as described in this section] in the
38  case of all current employees engaging in their respective
39  profession on the effective date of this section, and within six
40  months of the first day of employment for all new employees who
41  initially engage in their respective profession on a date that follows
42  the effective date[1].  [2]If an approved nonprofit course provider is
43  involved in providing the one-time training course to new
44  employees who initially engage in their respective profession on a
45  date that follows the effective date of this section, then the
46  nonprofit course provider shall provide the training course at least

A3352 [5R]
41

1   once every six months in order for these employees to meet the six-
2   month training deadline established by this paragraph.[2]

3   (3) The [2][[1]commission, in coordination with the[1]][2] Department
4   of [2][Human Services] Health[2] [2][[1],[1]][2] shall [1]make available [2][and[1]
5   distribute][2] the training materials [1][and curriculum][1] for the one-
6   time training course[1] to [1][all licensed health care facilities in the
7   State] required employees [2], or to the approved nonprofit course
8   provider, if any,[2] in order for [2][these persons] the required
9   employees[2] to fulfill the one-time training requirement set forth in
10  this subsection[1].

11  d. (1) The Administrative Office of the Courts shall develop and
12  approve a training course and a curriculum [2][on the handling,
13  investigation, and response procedures and prosecution of human
14  trafficking cases for all] to raise awareness of[2] judges and [2][all][2]
15  judicial personnel [2]on the seriousness of the crime of human
16  trafficking, its impact on human rights and the need to adequately
17  implement anti-trafficking laws, including not only the prosecution
18  and sentencing of defendants charged with human trafficking, but
19  the need to respect and restore rights and needs of victims of human
20  trafficking[2]. This training course shall be reviewed at least every
21  two years and modified by the Administrative Office of the Courts
22  from time to time as need may require.

23  (2) The Administrative Office of the Courts shall [2][be
24  responsible for ensuring that all] make the training course,
25  curriculum, and supporting materials available to appropriate[2]
26  judges and judicial personnel [2][attend initial training within 90
27  days of appointment or transfer and annual in-service training of at
28  least four hours as described in this section] who may be involved
29  with the court-related aspects of human trafficking prosecutions
30  through annual in-service judicial training programs or other
31  means[2].

32  e. [2][The Division of Criminal Justice, the Department of
33  Community Affairs, the Department of Human Services, and the
34  Administrative Office of the Courts shall provide that all training on
35  the handling of human trafficking cases shall include information
36  concerning the impact of human trafficking on society, the statutory
37  and case law concerning human trafficking, policies and procedures
38  as promulgated or ordered by the Attorney General, the Department
39  of Community Affairs, the Department of Human Services, or the
40  Supreme Court, or the federal government and the use of available
41  community resources, support services, sanctions, and treatment
42  options for victims of human trafficking] Pursuant to section 2 of
43  P.L.  , c.  (C.    ) (pending before the Legislature as this bill),
44  the Attorney General, in consultation with the Commission on
45  Human Trafficking established by section 1 of P.L.  , c.  (C.    )
46  (pending before the Legislature as this bill), may provide for the

A3352 [5R]
42

1  expenditures of monies from the "Human Trafficking Survivor's
2  Assistance Fund" to assist with the development, maintenance,
3  revision, and distribution of training course materials for the
4  courses developed in accordance with this section[2] [3], and the
5  operation of these training courses[3].
6
7  [2][18.] 20.[2] Section 9 of P.L.1985, c.404 (C.52:4B-47) is
8  amended to read as follows:
9    9.  a.  The curriculum for police training courses required
10  pursuant to P.L.1961, c.56 (C.52:17B-66 et seq.) shall include
11  training on responding to the needs of crime victims, and specific
12  training on responding to the needs of victims of human trafficking
13  as defined in section 1 of P.L.2005, c.77 (C.2C:13-8), and on
14  services available to provide assistance, including information on
15  federal, State, and local hotlines available to receive reports of and
16  provide assistance to victims of human trafficking.
17    b.  In-service training shall be made available for police
18  officers, assistant prosecutors, county detectives and investigators
19  on specialized needs of crime victims and available services.
20  (cf: P.L.1985, c.404, s.9)
21
22  [2][19.] 21.[2] (New section) [2][a.][2] An applicant for licensure as a
23  massage and bodywork therapist or registration as an employer
24  offering massage and bodywork therapies under P.L.1999, c.19
25  (C.45:11-53 et seq.) and P.L.2007, c.337 (C.45:11-68 et seq.)
26  [2][shall not be eligible for licensure or registration, as the case may
27  be][2], and any holder of a license or registration under P.L.1999,
28  c.19 (C.45:11-53 et seq.) and P.L.2007, c.337 (C.45:11-68 et seq.)
29  shall [2][have his license or registration revoked if the New Jersey
30  Board of Massage and Bodywork Therapy determines][2], consistent
31  with [2][subsection f. of][2] section 8 of P.L.1978, c.73 (C.45:1-21)
32  [2]and supporting regulations by the New Jersey Board of Massage
33  and Bodywork Therapy[2], [2][that] be subject to a[2] criminal history
34  record [2][information exists on file in the Federal Bureau of
35  Investigation, Identification Division, or in the State Bureau of
36  Identification in the Division of State Police, which may disqualify
37  that individual from being licensed or registered] background
38  check, which may, consistent with that applicable law, result in a
39  refusal to issue a license or certificate, or suspension or revocation
40  of an existing license or certificate[2].
41  [2][b.  An applicant and holder of a license or registration who is
42  required to undergo a criminal history record background check
43  pursuant to subsection a. of this section shall submit to the board his
44  name, address, and fingerprints taken on standard fingerprint cards
45  by a State or municipal law enforcement agency or by a private
46  entity under contract with the State.  The board is authorized to

A3352 [5R]

43

1 exchange fingerprint data with and receive criminal history record
2 information from the Federal Bureau of Investigation and the
3 Division of State Police for use in making the determinations
4 required pursuant to this section.
5    c.   Upon receipt of the criminal history record information for a
6 person from the Federal Bureau of Investigation or the Division of
7 State Police, the board shall notify the applicant, licensee, or
8 registered individual, as applicable, in writing, of the person's
9 qualification or disqualification for licensure or registration under
10 this section.
11    d.   If an applicant, licensee, or registered individual refuses to
12 consent to, or cooperate in, the securing of a criminal history record
13 background check, the board shall not issue a license or registration,
14 as the case may be, or other authorization to the applicant, licensee,
15 or registered individual.
16    e.   All costs associated with performing the criminal history
17 record background check required by this section shall be borne by
18 the applicant for licensure or registration or the holder of any
19 license or registration.
20    f.   The New Jersey Board of Massage and Bodywork Therapy,
21 pursuant to the "Administrative Procedure Act," P.L.1968, c.410
22 (C.52:14B-1 et seq.), shall adopt rules and regulations to effectuate
23 the purposes of this section.][2]
24
25 [2][20.] 22.[2]   Sections 1 and 2 of this act shall take effect
26 immediately, and the remaining sections shall take effect on the
27 first day of the second month next following the date of enactment,
28 but the Attorney General, Commissioner of Community Affairs,
29 Commissioner of [2][Human Services] Health[2], the Director of the
30 Administrative Office of the Courts, and the New Jersey Board of
31 Massage and Bodywork Therapy may take any anticipatory
32 administrative action in advance thereof as shall be necessary for
33 the implementation of this act.
34
35
36 ——————————
37
38 The "Human Trafficking Prevention, Protection, and Treatment
39 Act."

# EXHIBIT W

ASSEMBLY JUDICIARY COMMITTEE

STATEMENT TO

**ASSEMBLY, No. 3352**

with committee amendments

# STATE OF NEW JERSEY

DATED: OCTOBER 15, 2012

The Assembly Judiciary Committee reports favorably and with committee amendments Assembly Bill No. 3352.

This bill, as amended, titled the "Human Trafficking Prevention, Protection, and Treatment Act," revises and expands the State's human trafficking law by creating a new human trafficking commission, criminalizing additional activities related to human trafficking as well as upgrading certain penalties on existing human trafficking or related crimes, increasing protections afforded to victims of human trafficking, and providing for increased training and public awareness on human trafficking issues.

*Section 1: The commission.* This section would establish a 15-member Commission on Human Trafficking, to be located in the Department of Law and Public Safety. The commission would be directed to evaluate the existing law concerning human trafficking and the enforcement thereof, and to make recommendations for legislation, if appropriate. The commission would also be charged with the responsibility of reviewing existing victim assistance programs, and promoting a coordinated response by public and private resources for victims of human trafficking. In addition, the commission would administer and make expenditures from the "Human Trafficking Survivor's Assistance Fund" established by the bill (see section 2).

The commission would consist of: the Attorney General, or his designee; the Commissioner of Children and Families, or his designee; the Commissioner of Human Services, or his designee; a county prosecutor, appointed by the Governor based upon the recommendation of the County Prosecutors Association of the State of New Jersey; one member of the existing New Jersey Human Trafficking Task Force in the Department of Law and Public Safety, designated by the Attorney General; two public members appointed by the Governor based upon the recommendation of the Senate President, one representing law enforcement and one representing a victim's assistance organization; one public member appointed by the Governor based upon the recommendation of the Senate Minority Leader representing either a non-profit health care facility or mental health services; two public members appointed by the Governor based upon

2

the recommendation of the Speaker of the General Assembly, one representing law enforcement and one representing a victim's assistance organization; one public member appointed by the Governor based upon the recommendation of the Assembly Minority Leader representing either a non-profit health care facility or mental health services; and four public members appointed by the Governor, one of whom shall be a representative of the National Center for Missing and Exploited Children.  All public members would also be required to possess a background in, or have specialized knowledge of, the legal, policy, educational, social, or psychological aspects of human trafficking.

The commission would be required to annually report to the Governor and the Legislature as to its activities, as well as its findings and recommendations for any needed new laws, services, or resources for victims of human trafficking.

*Section 2: The "Human Trafficking Survivor's Assistance Fund."* This section would establish a separate, non-lapsing, dedicated fund in the General Fund known as the "Human Trafficking Survivor's Assistance Fund."  The Commission on Human Trafficking would administer the fund, using the monies for: the provision of services to victims of human trafficking; to promote awareness of human trafficking; the development, establishment, operation, and maintenance of the "John School Diversion Program" created pursuant to section 10 of the bill; and the development, maintenance, revision, and distribution of materials related to a one-time professional training course on human trafficking mandated for various professions as detailed in section 17 of the bill.

*Section 3: Human trafficking – expanding criminal liability.*  The existing definition of human trafficking would be expanded by this section.  It would incorporate actions involving abduction, fraud, deceit or other deception, and abuses of power, as recognized means of accomplishing human trafficking.

This section would also establish criminal liability for licensed owners or drivers of commercial passenger vehicles with respect to their reckless participation in transporting human trafficking victims, and make any other professionally licensed person criminally liable for recklessly permitting an act of human trafficking on, within, or using that person's property or services.  A "professionally licensed person" is defined under the section as any person required by law to obtain, from a governmental department, agency, board, or commission of the State or any political subdivision of the State, a license, permit, certificate, approval, registration, charter, or similar form of business or professional authorization in order to operate a business or as a professional in this State.

Criminal recklessness in this context means that the commercially licensed vehicle owner or driver, or other professionally licensed person, consciously disregards a substantial and unjustifiable risk that a material element of an act of human trafficking exists or will result

3

from the person's conduct; this risk must be of such a nature and degree that, considering the nature and purpose of the conduct and circumstances known to the professionally licensed person, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe if in that professionally licensed person's situation. See N.J.S.2C:2-2.

Recklessly permitting an act of human trafficking would be established as a crime of the fourth degree. Such crime is ordinarily punishable by a term of imprisonment of up to 18 months, a fine of up to $10,000, or both. See N.J.S.2C:43-3 and -6. However, while the section does not modify the ordinary term of imprisonment, it does alter the possible fine amount. Pursuant to the section's provisions, an offender, notwithstanding the ordinary fine amount, would be subject to a fine of up to $25,000, to be deposited in the "Human Trafficking Survivor's Assistance Fund" (section 2, above). Additionally, upon conviction, the court would revoke any license, permit, certificate, approval, registration, charter, or similar form of business or professional authorization required by law concerning the operation of that person's business or profession.

Finally, the section increases the minimum fine amount for any other form of criminal human trafficking already established in law as a crime of the first degree under section 1 of P.L.2005, c.77 (C.2C:13-8) (e.g., recruiting persons for trafficking, financing a trafficking operation). A crime of the first degree is ordinarily punishable by a fine of up to $200,000, but the bill's provisions would establish that the fine be at least $25,000, with the added directive that the monies be deposited in the "Human Trafficking Survivor's Assistance Fund."

Section 4: Civil action for human trafficking. This section would establish a new civil action for human trafficking, permitting any person injured as a result of human trafficking, including acts resulting in the loss of money or property, real or personal, to file an action in any court of competent jurisdiction. The action could be brought whether or not a criminal prosecution of human trafficking occurred.

In any such civil action, in addition to any other appropriate legal or equitable relief, an award of damages would include an amount reflecting the income or value of the injured party's labor or services to the defendant, similar to the victim's restitution required of a criminal defendant upon conviction of a human trafficking violation.

Section 5: Ownership and leasing of premises for human trafficking. This section would create two crimes concerning premises used for human trafficking, including a residential home, apartment, hotel, or motel: (1) a person who knowingly owns, controls, manages, or supervises any premises where human trafficking is regularly carried on; and (2) a person who knowingly leases or otherwise permits any premises controlled by the actor, alone or in association with others, to be regularly used for human trafficking, or fails to make a reasonable effort to abate such use by ejecting the tenant or notifying law enforcement authorities. Both would be categorized as a crime of

4

the first degree, ordinarily punishable by a term of imprisonment for 10 to 20 years, a fine of up to $200,000, or both; however, the bill's provisions would establish that the fine be at a minimum $25,000. All fines from a violation of this section would be deposited in the "Human Trafficking Survivor's Assistance Fund."

These crimes are based on similar crimes in the statutory scheme concerning prostitution found in N.J.S.2C:34-1, but would be focused on human trafficking, which, as described in section 1 of P.L.2005, c.77 (C.2C:13-8), does not just incorporate engaging in sexual activity but may include forced labor or services by victims.

*Sections 6 and 7: Removal of tenants due to human trafficking.* These sections amend sections 2 and 3 of P.L.1974, c.49 (C.2A:18-61.1 and -61.2) concerning the grounds and expedited timing for removal of tenants, to add a conviction for human trafficking within or upon a leased premises, building, or complex of buildings as a basis for removal.

The inclusion of a human trafficking conviction would add to the current law's list of various criminal offenses for which tenant removal is expressly permitted. These other offenses include: drug offenses; offenses under N.J.S.2C:12-1 (assault) or N.J.S.2C:12-3 (terroristic threats) against the landlord, a member of the landlord's family, or an employee of the landlord; and offenses under N.J.S.2C:20-1 et al. involving theft of property from the landlord, the leased premises, or other tenants residing in the same premises, building, or complex.

*Section 8: Prostitution.* This section amends N.J.S.2C:34-1 concerning prostitution.

The definition of "prostitution" would be expanded to recognize that the prohibited sexual activity may be performed in exchange for something of economic "or other value," intending that a direct economic benefit need not be derived in order to establish the crime of prostitution.

It would also upgrade the criminal penalty for two existing types of promoting prostitution. First, transporting a person into or within this State with the purpose to promote that person's engaging in prostitution, or procuring or paying for transportation with that purpose would be upgraded from a crime of the fourth degree to a crime of the third degree (imprisonment of three to five years; fine of up to $15,000; or both). Second, knowingly leasing or otherwise permitting a place controlled by the actor, alone or in association with others, to be regularly used for prostitution or promotion of prostitution, or failure to make a reasonable effort to abate such use by ejecting the tenant, notifying law enforcement authorities, or through other legally available means would also be upgraded from a crime of the fourth degree crime to a crime of the third degree (same sentencing parameters as above).

In addition, the amendments would expand the availability of an affirmative defense against a prosecution for engaging in prostitution,

5

by allowing any person, regardless of age, to claim the defense of being a victim compelled to engage in sexual activity.

*Section 9: Procedure to vacate a criminal conviction for prostitution due to being a human trafficking victim.* This section would permit any person, convicted and serving a sentence as provided for by the Criminal Code (Title 2C) for engaging in prostitution, to move to have the sentence reviewed by a court and vacated, reduced, or altered, on the grounds that the defendant was a victim of human trafficking. A court would consider all relevant circumstances in making a determination, including whether the defendant's victimization constituted a significant contributing factor to the criminal behavior, regardless of whether the defendant raised this factor as a defense at trial.

*Section 10: John School Diversion Program.* This section would require a person who is convicted of engaging a prostitute ("johns") to participate in a newly established "John School Diversion Program." The section would impose a penalty of $1,000 on each defendant, to be deposited in the "Human Trafficking Survivor's Assistance Fund." These monies (and others in the fund) would be dedicated to the development, establishment, operation, and maintenance of the program.

The program would be administered by the Administrative Office of the Courts. The program would educate those persons who have been convicted of engaging a prostitute about the risks involved in their unlawful activity. Defendants would be informed about the health risks connected with the crime, the legal ramifications of their unlawful activity, the terms of imprisonment for subsequent offenses, and the correlation between prostitution and human trafficking.

The program is modeled after similar "john school" programs which have been implemented in Buffalo, New York; Brooklyn, New York; Pittsburgh, Pennsylvania; and West Palm Beach, Florida.

*Sections 11 and 12: Advertising commercial sexual abuse of a minor.* This section would make it a crime of the first degree (imprisonment of 10 to 20 years; fine of at least $25,000 but not more than $200,000; or both) to commit an offense related to advertising commercial sexual abuse of a minor. A person would be guilty of this offense if the person: (1) knowingly publishes, disseminates, or displays, or causes directly or indirectly, to be published, disseminated, or displayed, any advertisement for a commercial sex act, which is to take place in this State and which includes the depiction of a minor; or (2) knowingly purchases advertising in this State for a commercial sex act which includes the depiction of a minor. An "advertisement for a commercial sex act" is defined as any advertisement or offer in electronic or print media, including the Internet, which includes either an explicit or implicit offer for a commercial sex act to occur in this State. A "commercial sex act" is defined as any act of sexual contact, sexual penetration, or other

6

prohibited act that can endanger a minor and for which something of value is given or received by any person.

The section specifies that it would not be a defense that the defendant: (1) did not know the actual age of the minor depicted in an advertisement; or (2) claims to know the age of the person depicted, unless there is appropriate proof of age obtained and produced. Accordingly, it would be a defense if the defendant made a reasonable, bona fide attempt to ascertain the actual age of the minor depicted in the advertisement by requiring, prior to publication, dissemination, or display of the advertisement, a production of a driver's license, marriage license, birth certificate, or other governmental or educational identification card or paper of the minor depicted in the advertisement.   To invoke this defense, the defendant would be required to produce for inspection by law enforcement a record of the identification used to verify the age of the person depicted in the advertisement.

As with several of the other crimes created or modified by this bill, the fine imposed for advertising commercial sexual abuse of a minor (at least $25,000) would be deposited in the "Human Trafficking Survivor's Assistance Fund."

The sponsor intends this section to address the problem of escort services whose advertisements include minors being sold for sex, which constitutes a form of sex trafficking and abuse.

This section is modeled after a recently enacted Washington state law, 2012 Wash. Laws c.138 (Wash. Rev. Code Ann. 9.68A.104), and Connecticut state law, 2012 Conn. Acts 12-141 (not yet allocated, effective October 1, 2012), that created criminal offenses related to advertising commercial sexual abuse of a minor.

*Section 13: Endangering the welfare of children.* This section would increase the criminal penalties for some offenses concerning endangering the welfare of children.   It increases, from a crime of the fourth degree to a crime of the third degree (imprisonment of three to five years; fine of up to $15,000; or both), knowingly possessing or knowingly viewing any photograph, film, videotape, computer program or file, video game, or any other reproduction or reconstruction which depicts a child engaging in a prohibited sexual act or in the simulation of such an act.

*Sections 14 and 15: Protecting victims who testify in prosecutions.* This section takes existing criminal procedures established to protect victims, particularly minors, participating in the prosecution of various crimes (usually those involving sexual victimization, such as sexual assault or endangering the welfare of children), and would expand these procedures to cover prosecutions for human trafficking.

Thus, whenever the crime of human trafficking involved sexual activity (as defined in paragraph (2) of subsection a. of N.J.S.2C:34-1), the section would permit, upon appropriate application, closed circuit testimony by a minor victim taken outside the presence of spectators,

7

the criminal defendant, the jury, or all such parties. Additionally, for any victim regardless of age, the section, expanding the State's rape shield law, would prevent admissibility in evidence of previous sexual conduct or manner of dress, unless the value of such evidence is first determined by a court to be "relevant and highly material" and the value of its submission substantially outweighed the probability it would create an unwarranted invasion of privacy of the victim, undue prejudice, or other concern related to the administration of justice in prosecuting the case.

*Section 16: Human trafficking hotline.* This section would require the Attorney General, in consultation with the Commission on Human Trafficking (see section 1 of the bill), to establish and maintain the participation of the State in the national, 24-hour toll-free telephone hotline service on human trafficking that is operating pursuant to the National Human Trafficking Hotline, Training, and Technical Assistance Program authorized under federal law. The Attorney General, in consultation with the commission, would also ensure that any State hotline telephone number be directly linked to the national hotline service, so that any telephone call to the State number would be immediately and directly forwarded to that national service.

In addition, the section would require the Attorney General in consultation with the commission, and pursuant to any funds appropriated or otherwise made available, establish an educational and public information program concerning the crime of human trafficking.

*Section 17: Training programs on human trafficking for governmental and non-governmental personnel.* This section would require the Division of Criminal Justice, the Department of Community Affairs, the Department of Human Services, and the Administrative Office of the Courts to develop and approve training courses and curricula on the handling, response, investigation, and prosecution of human trafficking for various governmental and non-governmental personnel, including law enforcement officers, judges and judicial personnel, hotel and motel owners, operators and staff, and licensed health care facility employees. The courses and curricula would include information concerning the impact of human trafficking on society, the statutory and case law concerning human trafficking, policies and procedures of the State, and the use of available community resources, support services, sanctions, and treatment options for victims of human trafficking.

The Attorney General would be responsible for the training of law enforcement officers. The training for judges and judicial personnel would be the responsibility of the Administrative Office of the Courts. The training for hotel and motel owners, operators, and staff would be the responsibility of the Department of Community Affairs. The training for employees of licensed health care facilities, including those professionals whose professional practice is regulated pursuant

8

to Title 45 of the Revised Statutes, would be the responsibility of the Department of Human Services.

While the training of law enforcement officers, judges, and judicial personnel would be on-going, the training for the hotel, motel, and health care facility personnel would be a one-time training activity. The Division of Criminal Justice, in consultation with the Commission on Human Trafficking, would generally define by regulation which of these personnel would be required to undergo the training, and the commission would make available and distribute the training materials to those personnel. All hotel, motel, and health care facility personnel currently engaged in their profession as of the effective date of the training requirement would be required to complete the one-time training within one year of the effective date; all new person engaging in their profession for the first time after the effective date would be required to complete the one-time training within six months of the first date of engaging in such profession.

*Section 18: Expanding police training curricula to include human trafficking victims' assistance.* This section would provide that the curricula for police training courses shall also include specific training on responding to the needs of victims of the crime of human trafficking.

*Section 19: Massage and bodywork therapist background checks.* This section would require applicants, and those persons already licensed as massage and bodywork therapists or registered as employers offering massage and bodywork therapies under the provisions of the "Massage and Bodywork Therapist Licensing Act," P.L.1999, c.19 (C.45:11-53 et seq.) and P.L.2007, c.337 (C.45:11-68 et seq.), to submit to a State and federal criminal history background check, to determine whether those persons are fit to be so licensed or registered. The section provides that if the New Jersey Board of Massage and Bodywork Therapy found an applicant for licensure as a massage and bodywork therapist or an individual already so licensed, or an applicant for registration or an individual already so registered as an employer offering massage and bodywork therapies, to have been convicted of, or engaged in acts constituting any crime or offense involving moral turpitude or relating adversely to the activities regulated by the board, that applicant would not be eligible for such licensure or registration, and an individual who already holds a license or registration would have that license or registration revoked.

If an applicant, licensee, or registered individual refused to consent to, or cooperate in, the securing of a criminal history record background check, the board would not issue a license or registration, as the case may be, or other authorization to the applicant, licensee, or registered individual.

All costs associated with performing a criminal history record background check would be borne by the applicant for licensure or registration or the holder of any license or registration.

9

_Section 20: Effective date._     Sections 1 and 2 of the bill, establishing the Commission on Human Trafficking and the "Human Trafficking Survivor's Assistance Fund," would take effect immediately, and the remaining sections would take effect on the first day of the second month next following the date of enactment, but the Attorney General, Commissioner of Community Affairs, Commissioner of Human Services, Director of the Administrative Office of the Courts, and New Jersey Board of Massage and Bodywork Therapy could take any anticipatory administrative action in advance thereof as shall be necessary for the bill's implementation.

COMMITTEE AMENDMENTS

The committee amendments to the bill:

- add a county prosecutor as a named member of the Commission on Human Trafficking;

- give the commission additional responsibility for developing and distributing training course and other educational materials for use by hotel, motel, and health care facility personnel required to undergo the one-time training course on human trafficking as detailed in section 17 of the bill;

- permit expenditures from the "Human Trafficking Survivor's Assistance Fund" for the training course and other educational materials;

- replace references to criminal _negligence_ with criminal _recklessness_ as the culpability standard for several new human trafficking crimes established by the bill;

- establish that it would be no defense to the new crime of advertising commercial sexual abuse (section 11) that the defendant claims to know the age of the person depicted in an advertisement, unless there is appropriate proof of age obtained and produced;

- clarify that the Attorney General, in consultation with the commission, would maintain the State's participation in the national hotline telephone service on human trafficking that is operated pursuant to the National Human Trafficking Hotline, Training, and Technical Assistance Program authorized under federal law;

- require that any State hotline telephone number be directly linked to the national hotline telephone service;

- clarify that the hotel, motel, and health care facility personnel training course on human trafficking would be a one-time activity, and provide authority to the Division on Criminal Justice, in consultation with the commission, to define by regulation which such personnel would be required to undergo the training; and

- decrease the period of time within which hotel, motel, and health care facility personnel would have to complete the one-time training course, from two years to one year.

# EXHIBIT X

**12/13/2012 SENATE JUDICIARY COMMITTEE**

[Starting at 02:35:30]

Chair Scutari: The last order of business is S2239, the Human Trafficking Prevention, Protection and Treatment Act. Senator Pou.

Sen. Pou: Thank you Mr. Chairman. First of all, thank you Mr. Chairman for posting this bill, and to all the members of the Senate Judiciary Committee, let me just say that this particular bill, the Human Trafficking Prevention, Protection and Treatment Act is aimed at cracking down at every aspect of trafficking by revising and expanding the State's current law. As you all know, back in 2005, the Human Trafficking Law was introduced by Senator Gill, became law, and that created for the very first time the first degree—created it as a crime of the first degree in our state, first degree crime in our state. This particular bill expands it by creating a new human trafficking commission criminalizing additional activities that support trafficking, upgrades penalties on existing human trafficking and related crimes, increasing protections for victims and providing for increased training and public awareness of trafficking. Simply put to all of my colleagues, human trafficking is a form of modern-day slavery. It is a crime that is committed in the shadows of society. It does not only occur in impoverished or war-torn countries. Cases of human trafficking have been reported in all 50 states in the United States and in communities right here in New Jersey. Victims are trafficked for all sorts of reasons, from commercial sex to agricultural work and housekeeping. But they share one thing in common, and that is a total loss of freedom. They are slaves. Make no mistake about it. That's the way how to properly refer to that particular crime. And because of the underground nature of this crime, it is impossible to know how many people are victims of trafficking in the United States or in New Jersey. What we know is that people in this state are being preyed upon. Certain populations especially are vulnerable. They include undocumented immigrants, runaways and homeless youths. And for those who are living on the margins of society, they are entrapped through forced fraud and coercion. In 2009, let me just point out that a sex trafficking ring operating in Jersey City was dismantled by the Attorney General's Office. A landlord had lured women from Atlantic City, Philadelphia, Camden and other communities into the sex trade. He confiscated their key, cell phones and identification and forced them to meet nightly monetary quotas on the streets. Women were beaten if they failed to comply. That same year, law enforcement found that dozens of young impoverished girls from Africa, some as young as ten years old, who thought that they were coming to America for a better life, were being forced to work in slavery-like conditions in Newark hair-braiding salons. These were cases that were identified by law enforcement and the predators were brought to justice. But these are the exceptions. The United States Department of State estimates that between 14,500 and 17,500 people are trafficked annually within the United States. According to the Journal of Applied Research on Children, 200,000 children are at risk yearly of being lured into the sex trade. We as a state must do everything in our power to end these atrocities occurring within New Jersey's

1

border. The men, women and children who are victims of forced labor and prostitution often cannot escape, so it's imperative that we make a public awareness of these actions and provide our law enforcement and advocates with the training necessary to break up these crime rings and bring traffickers to justice. By strengthening our human trafficking law that was introduced back in 2005 and providing needed services and training, we can make a real difference in ending the trade of humans in New Jersey. Mr. Chairman, let me just say that one other thought on this—as we are preparing for the Super Bowl to be here in the State of New Jersey in 2014, it is vitally important for us to really make sure that we have the necessary preventive, protection and enforcement laws that are tough to make sure that we can prevent this. Super Bowl—the New Jersey Super Bowl—or I should say the Super Bowl that we will be hosting here in New Jersey in 2014 will certainly be a hub, an enticement of these types of crimes. I go back to 2010—back when the Super Bowl was in Miami, Florida. It was reported back then that there as close as 10,000 children that were lured into some type of sex trafficking. And that's the kind of things that we want to make sure that we have in place today to protect us and to make sure that we in New Jersey do not permit and will not allow for that to occur here in our state. So, as we're preparing for something important and special along the line that is going to be good for New Jersey, at the same time we need to make sure that we have laws in place that's going to protect our children and protect the vulnerable, especially these underage children that are absolutely put in an incredibly horrible situation for having to perform these unspeakable acts of sex service. Thank you, Mister Chairman, for listening to my testimony. Thank you for posting this bill. Today I know, Mr. Chairman, there are two other individuals that are interested in speaking on this bill. There's a representative from the Polaris Project who is here today as well as from another organization called The Love True. With your permission, I'd like to ask if they can come up and provide testimony.

| | |
|---|---|
| Scutari: | Okay. Thank you Senator. Before we do that, I'll call the people that have signed up in favor of the bill, but have no need to testify. |
| Pou: | Very well. Thank you. |
| Scutari: | For the record, we have Susan Waldman in favor of the bill from Morris County NOW; Susan Cullen, State Political Advocacy Committee, National Council Jewish Women, in favor of the bill; Jay Buckfirer—Joy?—maybe it's Joy, League of Women Voters-New Jersey, in favor of the bill; Sarah Lilje, Lutheran Office Governmental Ministries, in favor of the bill; Susan Waldman again, NOW New Jersey, in favor of the bill; Jacob Zaporic, New Jersey State Association of Jewish Federations, in favor of the bill; Edward Martone, New Jersey Association of Corrections, in favor of the bill; and Lennon Moore, Covenant House NJ, in favor of the bill. Okay, those are all the people that signed up in favor of the bill that don't have a need to testify. In accordance with the Senator, why don't we call up a panel, starting with Britney Vanderhoef, Polaris Project; Heather Page Hunt, Love True. Do we have a third seat? We'll call up Rebecca from Love True, in favor of the bill. |

2

| | |
|---|---|
| Man: | Yeah, I believe the last name is Conterino. |
| Scutari: | Should be three seats there. There you go. Okay. Starting from my left and Senator Pou's right, why don't you tell us who your name is and tell us what you want us to hear. I know I have some written testimony from the Polaris Project, if that's your project, so you don't have to read just that. You can tell us what you think. |
| Conterino: | Hi. My name's Rebecca Conterino, and I'm the founder of Love True. We're an anti-trafficking organization that works with domestic underage minors in New Jersey. I'm here today to express my support of Bill No. S2239. This bill will positively affect the work of Love True as we set our efforts to prevent the domestic sex trade in New Jersey and become a place of restoration for underage domestic victims. Even as we begin to educate our local communities through our prevention program, we are comforted by the attention made to education awareness in this bill. It is essential to have proper training of law enforcement, first responders and health care workers. We must have this in order to properly prosecute human traffickers, identify victims, and bring these victims safely to a restoration facility. We are thrilled that Love True will be one of these facilities as we work to open the first domestic sex shelter for underage minors. This bill sets a platform for public and private organizations to work towards restoring those who have been victims of human trafficking and sets the groundwork for those entering the field of prevention and restoration. The protocol outlined in this bill will help also validate victims' rights and offer them resources that are not currently available. When starting Love True as a young female citizen, I had a dream to see New Jersey as a place where victims become survivors, where we no longer see generations raised as predators and prey, but as generations who yet again understand what true freedom is and how to stand up for the rights of others to be loved and free. Thank you for the opportunity to support the bill S2239. |
| Scutari: | Okay. And who's next? |
| Hunt: | Hello. And thank you, Chairman Scutari. |
| Scutari: | My pleasure. Just tell us your name, where you're from. |
| Hunt: | Yes. I'm Heather Hunt. I'm the director of prevention and education and awareness for Love True. And I should explain we're a nonprofit devoted to combating domestic sex trafficking of minors in New Jersey. So I'm also a member of the New Jersey Coalition against Human Trafficking. Love True supports the Human Trafficking Prevention, Protection and Treatment Act, which will lay a foundation for improving prevention efforts in our state, particularly surrounding the upcoming Super Bowl. I know that Senator Pou talked to you specifically about the Super Bowl, but I'll add it will make us a center for demand of sexual services and a magnet for sex traffickers in the New Jersey and New York area. And it's common that victims will be brought in from all over the country into this area, in the thousands. So, also online advertising of prostituted |

3

women and youth is a marketing tool commonly used by traffickers, particularly during major events such as the Super Bowl, but not only that—also in a regular day. New Jersey has the opportunity in 2014 to combat sex trafficking, and this bill contains important legislation that will help our state crack down on sex trafficking and build a reputation for intolerance for this heinous crime. So I have three points: First, education of hotel staff, as mentioned in Section 17, will improve the timeliness of reports to law enforcement and will enable the swift investigation and appropriate investigation of suspected incidents of sex trafficking, specifically revolving around the Super Bowl, and training of law enforcement, also detailed in Section 17, will equip police with the skills necessary to immediately identify trafficking situations and collect evidence needed by prosecutors. Also law enforcement training will prepare police officers to view domestically trafficked persons not as prostitutes but as victims, and treat them accordingly. Increased penalties for traffickers and buyers of commercial sex, as outlined in Section 10, will serve as a powerful deterrent; lowering demand will result in a reduced number of victims. Currently Love True aims to prevent sex trafficking by eradicating youth - whoa - by educating youth, training staff for work with youth, and also creating awareness among community members. Love True and other organizations dedicated to ending sex trafficking in New Jersey are prepared to assist in the implementation of this policy. And the passage of this legislation provides the framework within which public and private organizations can together develop broader methods to make a deeper impact in the fight against human trafficking. Thank you.

Vanderhoef:    Good afternoon. My name Britney Vanderhoef, and I'm here representing Polaris Project. Polaris Project is a national anti-human-trafficking organization based in Washington, D.C., with a client service office in Newark. We represent all the types of human trafficking interests, labor and sex. We work with domestic victims as well as foreign national victims. Polaris Project operates the National Human Trafficking Resource Center Hotline, which I will highlight in a few moments. We also run a national training and technical assistance program, and we provide comprehensive case management to survivors of trafficking. I can tell you that passing this bill will make a difference in the lives of human trafficking victims. There are four sections I'd like to highlight. As my colleagues mentioned, the training piece in 17 and 18, Northeastern University released a study regarding the challenges faced by U.S. law enforcement in prosecuting human trafficking. The number one challenge identified was identification of victims. There are several reasons for this: One, victims are hidden from law enforcement. Two, victims are taught that if they talk to law enforcement, bad things will happen to them. They're trained to lie, and they're trained to hide. Another issue is that typically, victims don't self-identify as being a victim, so they don't seek assistance for that reason. One way to combat and overcome this challenge is through training. So when you train hotel staff and you train health care providers to spot trafficking, you're giving victims their best chance of being identified. Law enforcement, because victims don't come forward themselves, must rely on tips from other people. By training groups that consistently come into contact with victims, you are increasing the chance of getting good tips to

4

law enforcement.  By training law enforcement you're helping to make sure that they understand the statute themselves, that they have proper methods of investigation and also that they are trained in ways to best reach victims so that they're not intimidating them, so that they can ensure the greatest cooperation with victims they encounter.  Finally, by training judges and prosecutors, you are ensuring that the laws will be used.  One thing that the Northeastern study found was that a lot of prosecutors in states don't even know if their state has a human trafficking statute, and they don't know the elements.  So they don't use it.  By encouraging that type of training, you're encouraging prosecutors to use the statute.  By training judges to know how those statutes should work, you're ensuring that those laws will be used properly.  And when police officers know that prosecutors are bringing human trafficking cases, they're more likely to investigate them.  So just to tail back on what my colleagues were talking about in terms of training.

The other two pieces I'd like to highlight are Section 16, regarding a hotline.  It's important that there is a functioning hotline that is promoted throughout the State of New Jersey.  Polaris Project operates the National Human Trafficking Resource Center Hotline, the NHTRC.  This is the national hotline owned by the Department of Health and Human Services.  So it's not the Polaris Project Hotline, this is the national hotline.  We have taken over 64,000 calls since December of 2007.  A little over 1,000 of those calls have come from New Jersey.  We have a database contact of service providers of over 2,700.  Eighty-five of those are in New Jersey.  We have the ability to contact callers to services and to law enforcement.  We also have a confidentiality policy.  We believe that it's important that a caller decide when to contact law enforcement in most cases.  When you're talking about trafficking victims, you're talking about people who have had their capacity to make decisions taken away from them.  By allowing them to make that decision about where they want to go and who they want to talk to, you're giving them the right of self-determination back.  I cannot stress how important this is.  We do not want to re-victimize victims in our attempt to help them.  Confidentiality does not mean or foreclose the capacity of law enforcement to receive tips.  The NHTRC has provided over 3,000 cases to law enforcement nationally, 48 of those have been in New Jersey.  So what have is when you have a caller who wants to get in touch with law enforcement, who wants that information passed to law enforcement, the NHTRC will then pass that information on.  So I strongly urge you to make NHTRC a promoted hotline here in New Jersey.

The final piece I'd like to comment on is the vacating convictions piece, which is a Section 9.  This is critical—critical to victims in New Jersey.  This is what we hear from our clients that have solicitation convictions from New Jersey.  When they have tried to apply for jobs, what comes up is that they have solicitation-prostitution charges.  This prevents them from getting jobs.  This prevents them from getting educational opportunities, or housing opportunities.  And these crimes were the direct result of having been trafficked.  When they have to go in and apply for a job, they're often re-traumatized, because an employer will look at

5

this and assume that they know something about this victim and deny them a job, or deny them a housing opportunity. When you allow victims to vacate their convictions, again that are the direct result of having been trafficked, you're giving them a clean slate. You're giving them a second chance on life. And you're making sure that they're not continually victimized by their past, and that they're able to move on into their future. This bill has many great provisions. Those are just the four that I wanted to highlight. Thank you very much for your time and your attention.

Scutari:       We'll call up another panel, but just because you brought up that last point, I want to ask you a question. How does law enforcement determine whether a general solicitation—or a soliciting conviction is the result of human trafficking or the result of a regular prostitution charge?

Vanderhoef:    That burden is placed on the person filing the motion before the court. So they will have to show that—they will have to present evidence that (1) they were a victim of human trafficking at the time, and that their conviction was the result of being trafficked. So that burden isn't on law enforcement. It's on the person presenting the motion to persuade the court.

Scutari:       Thank you very much. Senator Weinberg.

Weinberg:      Yeah, I just want to make a comment to two of the prime sponsors sitting on this committee with us, Senator Pou and Senator Gill, along with Senator Vitale, to thank you for bringing this issue forward along with my colleague in the Assembly, Valerie Huttle. You know, this has been the dirty little secret for too long, about what goes on. And if we do nothing else—and I know we're going to do a lot more—but if we do nothing else, just getting this whole issue out in public under daylight, and the ills of society that helps create it, is really a giant step forward. And it's kind of an interesting comment on our society that the Super Bowl – and I happen to be a football fan, a very proud Giant fan, by the way – that the Super Bowl leads to an increase in sex trafficking. I mean, that is so – I guess it's not bizarre, but it's very disheartening. So thank you to the sponsors and thank you for posting this in committee.

Scutari:       So you know, Senator Vitale this morning indicated to me that his continued support for the bill, and I told him that we already had Senator Pou and Gill were going to be here, so that his attendance here wasn't necessary. So, okay. Thank you, ladies.

Woman:         I wanted to answer your question a little further. Um, evidence, there's specific evidence that we need law enforcement officers to know how to collect on the scene in order for prosecutors to be more effective in the courtroom. So that answers your question.

Scutari:       Thank you very much.

Woman:         Thank you.

6