*State of New Jersey*

CHRIS CHRISTIE
*Governor*

KIM GUADAGNO
*Lt. Governor*

OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
DIVISION OF LAW
25 MARKET STREET
PO Box 112
TRENTON, NJ 08625-0112

JOHN J. HOFFMAN
*Acting Attorney General*

CHRISTOPHER S. PORRINO
*Director*

June 27, 2013

**VIA ELECTRONIC FILING**

The Honorable Dennis M. Cavanaugh, U.S.D.C.
U.S.P.O. Courthouse Building
Room 451, Federal Square
P.O. Box 999
Newark, New Jersey 07101-0999

  Re: Backpage.Com, LLC v. John J. Hoffman, et al.
     Civil Action No.: 13-cv-3952

     Internet Archive v. John J. Hoffman, et al.
     Civil Action No.: 13-cv-3953

Dear Judge Cavanaugh:

  Kindly accept this letter brief in lieu of a formal brief on behalf of the Defendants in opposition to plaintiffs' application for the issuance of a temporary restraining order and other relief. While Defendants will provide the Court additional and more expansive arguments in opposition to plaintiffs' application for a preliminary injunction, this letter explains why temporary restraints are inappropriate here.

  Plaintiffs attempt to enjoin a New Jersey statute that seeks to prevent a horrible evil: the human trafficking of minors for commercial sexual abuse. In particular, plaintiffs request that the Court prohibit the State's law enforcement agencies from enforcing a provision of the Human Trafficking Prevention, Protection and Treatment Act, P.L. 203, c. 51, § 12(b) (1), to be codified at N.J.

Stat. Ann. § 2C:13-10(b)(1) ("the Act"). The Act addresses a key method of facilitating the human trafficking of minors, specifically advertisements for commercial sex acts with children posted on internet websites and other internet services that actually includes the depiction of a minor. Plaintiffs challenge the State's efforts to curtail that horror by enacting a statute that makes criminal knowingly publishing, disseminating or displaying advertising concerning the sexual abuse of minors. Because the challenged statute lawfully and constitutionally prohibits such heinous practices, plaintiffs' application for a temporary restraining order should be denied.

The legal standards for issuing a temporary restraining order are the same as for a preliminary injunction. *Pileggi v. Aichele*, 843 F. Supp. 2d 584, 592 (E.D. Pa. 2012). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. NRDC, Inc.,* 555 U.S. 7, 24 (2008); *see also*, *Frank's GMC Truck Ctr., Inc. v. General Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988) (observing that "the grant or injunctive relief is an extraordinary remedy which should be granted only in limited circumstances."). It should be "granted only as a matter of judicial discretion, exercised in the public interest." *Eccles v. Peoples Bank of Lakewood Vill.*, 333 *U.S.* 426.431 (1948). "Especially where governmental action is involved, courts should not intervene unless the need for equitable relief is clear, not remote or speculative." *Id.*

Pursuant to the Third Circuit's "familiar" test for preliminary relief, plaintiffs bear the burden of affirmatively demonstrating four conditions before this extraordinary relief is granted:

> (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief.
>
> [*Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).]

The first two conditions are mandatory. "To obtain a preliminary injunction, the moving party must demonstrate both a likelihood of success on the merits and the probability of irreparable harm if relief is not granted." *Morton v. Beyer*, 822 F.2d

364, 367 (3d Cir. 1987); *see also*, *In re Arthur Treacher's Franchisee Litigation*, 689 F.2d 1137, 1143 (3d Cir. 1982) (commenting that "[a] failure to show a likelihood of success or a failure to demonstrate irreparable injury [] must necessarily result in the denial of a preliminary injunction."). Nonetheless, even proof of irreparable harm does not render injunctive relief a matter of right. *Winter*, 555 U.S. at 24; *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926). When the remaining two factors are relevant, an applicant must demonstrate that "all four factors favor preliminary relief." *AT&T v. Winback*, 42 F.3d 1421, 1427 (3d Cir. 1994). Thus, the court must also weigh the possibility of harm to any other interested person and the harm to the public. *Continental Group, Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351, 357 (3d Cir. 1980).

Measured by these rigorous standards, plaintiffs cannot establish either irreparable harm or reasonable likelihood of success on the merits. Moreover, the public interest weighs heavily against restraining the enforcement of this important law designed to stop a horrible evil.

> A. Plaintiffs have not established imminent irreparable harm in the absence of a temporary restraining order and any claimed emergency is of their own making.

Plaintiffs cannot carry the burden of showing that they will suffer imminent irreparable harm unless the enforcement of the Act is enjoined. A preliminary injunction is not warranted unless the plaintiff has already suffered irreparable injury or the complained of injury is imminent and irreparable. *See, e.g.*, *Marxe v. Jackson*, 833 F.2d 1121, 1128 (3d Cir. 1987); Continental Group, Inc., 614 F.2d at 359.

Plaintiffs' purported need for emergent relief is entirely of their own making. As noted in their moving papers, the Act was signed into law by Governor Christie on May 6, 2013. The lead law firm, Davis Wright Tremaine, LLP, in this case on behalf of plaintiff Backpage.com was also involved in previous challenges by this same plaintiff to similar laws enacted in the States of Washington and Tennessee. Despite being fully versed with the claimed legal infirmities of the New Jersey statute, and having reportedly advised the New Jersey Attorney General's office on June 4, 2013 that Backpage.com would seek immediate relief to enjoin enforcement of the Act, plaintiffs did not actually seek

relief from this Court until June 26, 2013 – a mere five days before the effective date of the Act. A litigant should not be able to sit on its rights and then seek extraordinary relief because of a self-created emergency it created. *See, e.g., Citibank, N.A. v. Citytrust,* 756 F.2d 273, 276 (2d Cir. 1985) (noting that plaintiff's delay in seeking protection of rights "tends to indicate at least a reduced need" for preliminary injunction); *McKenzie v. Corzine*, 934 A.2d 651, 658 (App. Div. 2007) ("Due to this delay, it is [p]laintiffs, knowingly or unknowingly, who have self-created a situation where it is alleged the irreparable harm is 'imminent' which could have been avoided if filed timely.").

Moreover, allowing plaintiffs to rush consideration of the merits of their extraordinary application violates "the salutary rule that courts should avoid wherever possible a premature adjudication that duly enacted legislation is unconstitutional." *NUI Corp. v. Kimmelman*, 765 F.2d 399, 403 (3d Cir. 1985). This Court should not condone these plaintiffs' tactic of seeking relief at the last minute. Had plaintiffs sought relief from this Court upon enactment of the legislation, and not waited until the eve of its effective date, this Court would have had the benefit of full briefing in its consideration of the challenged statute.

> B. Plaintiffs have failed to establish a reasonable likelihood of success on the merits because the challenged provision is not preempted by the Communications Decency Act and offers to engage in illegal acts, such as commercial sex, are not protected by the First Amendment.

Assuming the Court addresses the probability of success on the merits, plaintiffs' arguments should be rejected. Given the minimal time to file an opposition to plaintiffs' papers, our response on the merits is necessarily summary in nature and not preclusive of additional arguments to be raised later.

Plaintiffs first argue that the New Jersey's statute is preempted by the Communications Decency Act. They are wrong. Federal law can preempt state law in only three circumstances: first, when Congress expressly preempts state law; second, when state law attempts to regulate conduct in a field that Congress intended to govern exclusively; and third, when state law actually conflicts with federal law. *Arizona v. United States*, ___ U.S. ___, 132 S. Ct. 2392, 2500-01 (2012). Here, Congress expressly acknowledged that Section 230 could coexist

with consistent state law: "Nothing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section." 47 U.S.C. § 230(e)(3). Contrary to plaintiffs' position, the Act is consistent with the legislative intent of Congress, the statutory language of 47 U.S.C. § 230, and related federal criminal laws. Plaintiffs therefore cannot show that Section 230 preempts the Act.

By enacting Section 230, Congress sought to encourage interactive computer service providers to self-police their content and develop parental controls to limit a child's access to objectionable, inappropriate, or offensive material. 47 U.S.C. § 230(b). But Congress did not intend to immunize service providers from criminal liability based on their harboring of constitutionally unprotected speech. Indeed, Congress intended that Section 230 provide immunity from civil liability, and only those state criminal statutes that are inconsistent with Section 230 are preempted. *See* 142 Cong. Rec. H1130 (Jan. 31 1996) ("[t]his section provides 'Good Samaritan' protections from <u>civil liability</u> for providers or users of an interactive computer service . . . .") (emphasis added). The purpose of New Jersey's statute – to deter and punish the advertising of commercial sex abuse of a minor – is therefore consistent with Congress's legislative goals of promoting the vibrant exchange of ideas on the Internet while respecting federal and state criminal laws related to obscenity, stalking, and harassment. 47 U.S.C. § 230(b)(2), (b)(4), and (b)(5). The Act is also consistent with federal criminal laws that punish the sexual exploitation of children, actions to which Congress refused to extend Section 230 immunity. 47 U.S.C. § 230(e)(1). Because the Act imposes criminal liability only for unprotected speech, it has no bearing on the speech that Congress sought to protect under Section 203.

Furthermore, the reach of the Act extends beyond the limited applicability of Section 230(c)(1) such that the New Jersey statute could apply in situations where immunity under Section 230 is not available. For example, the Act applies to both electronic and print media forms, while Section 203(c)(1) applies to only online services. And Section 203(c)(1) will not protect an interactive computer service provider from liability if that service provider acts also as an information content provider. Because the New Jersey criminal statute can exist in tandem with Section 230, and the two statutes do not conflict, Plaintiffs cannot support their claim that federal law expressly or implicitly preempts the Act.

Second, their Commerce Clause claim too fails. As the United States Supreme Court has observed, "under our constitutional scheme the States retain broad power to legislate protection of their citizens in matters of local concern such as public health" and "not every exercise of local power is invalid merely because it affects in some way the flow of commerce between the States." *Great Atl. & Pac. Tea Co. v. Cottrell*, 424 U.S. 366, 371 (1976). Where, as here, the challenged regulatory measure does not discriminate against interstate commerce but rather regulates even-handedly to further a legitimate local public interest, that action is valid unless it imposes a clearly excessive burden on interstate commerce. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). "And the extent of the burden that would be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." *Id.* at 142.

It cannot be disputed that the challenged Act seeks to further a legitimate local public interest: eliminating sex trafficking of New Jersey minors. The statute does not impose a clearly excessive burden on interstate commerce but rather narrowly aims at a small group of actors who target sex acts to take place in New Jersey and knowingly participate in the publication, dissemination or display of advertisements for commercial sexual acts to take place solely in the State of New Jersey. Therefore, the vast universe of websites and other internet service operators do not fall within the scope of the Act because they do not knowingly participate in advertising of a commercial sex act to occur in New Jersey. Accordingly, the Act does not violate the dormant Congress Clause.

Third, plaintiffs cannot demonstrate a likelihood of success on the merits of their First Amendment claims. Because the challenged provision prohibits the advertisement of an illegal transaction — commercial sex acts with minors — it does not regulate speech protected by the First Amendment.

"Offers to engage in illegal transactions are categorically excluded from First Amendment protection." *United States v. Williams*, 553 U.S. 285, 297 (2008) (citing *Pittsburgh Press Co. v. Pittsburgh Com. on Human Relations*, 413 U.S. 376, 388 (1973); *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949)). At issue in *Williams* was a state statute that criminalized offers to provide or requests to obtain child pornography and obscenity involving actual children. *Id.* In *Williams*, the Eleventh Circuit – like the District Courts that have accepted these plaintiffs' arguments in other states, *Backpage.com, LLC v. Cooper*, 2013 U.S.

Dist. LEXIS 55100, at *62-63 (M.D. Tenn. 2013), *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1281-82 (W.D. Wa. 2012) – incorrectly held that, because the statute "is not limited to commercial speech but extends also to non-commercial promotion, presentation, distribution, and solicitation," it is a content-based restriction requiring strict scrutiny analysis. *Id.* at 297-98. The Supreme Court, however, rejected the Eleventh Circuit's rationale. *Id.* at 298.

The Supreme Court explained that the categorical exclusion of offers to engage in illegal transactions is not based on its status as commercial speech, but rather on the principle that such offers "have no social value and thus, like obscenity, enjoy no First Amendment protection[.]" *Id.* Therefore, offers to engage in illegal transactions, "whether as part of a commercial exchange or not, are similarly undeserving of First Amendment protection." *Id.* The Supreme Court, accordingly, rejected the Eleventh Circuit's conclusion that strict scrutiny was the appropriate level of review analysis of the statute at issue in *Williams*. *Id.* at 299. For those same reasons, this Court should reject the approach of the District Courts in *Cooper* and *McKenna* because they too incorrectly applied strict scrutiny analysis to statutes similar to the one at issue here.

As early as 1973, the Supreme Court recognized that the government could forbid a newspaper from publishing a want ad proposing the sale of narcotics or soliciting prostitutes. *Pittsburgh Press Co.*, 413 U.S. at 388. The Court reasoned the speech may be banned even where the illegality is less overt. *Id.* at 389. As the Court explained, "[a]ny First Amendment interest which might be served by advertising an ordinary commercial proposal and which might arguably outweigh the governmental interest supporting the regulation is altogether absent when the commercial activity itself is illegal and the restriction on advertising incidental to a valid limitation on economic activity." *Id.*

Here, it is undisputed that engaging in a commercial sex act is an illegal transaction, as is sexual contact or sexual penetration with a minor. By prohibiting the advertisement for a commercial sex act depicting a minor, *N.J. Stat. Ann. § 2C:13-10* mirrors the statute in *Williams* and the ordinance in *Pittsburgh Press Company*. Therefore, the advertisement for a commercial sex act depicting a minor — i.e., an offer to engage in an illegal transaction — is categorically excluded from First Amendment protection.

June 27, 2013
Page 8

Moreover, the Act is not overbroad. A statute is overly broad and facially invalid if it prohibits a substantial amount of protected speech. *Williams*, 553 U.S. at 292.The First Amendment's overbreath doctrine balances competing social costs. *Id.* As the Court explained:

> On the one hand, the threat of enforcement of an overbroad law deters people from engaging in constitutionally protected speech, inhibiting the free exchange of ideas. On the other hand, invalidating a law that in some of its applications is perfectly constitutional—particularly a law directed at conduct so antisocial that it has been made criminal—has obvious harmful effects."
>
> *Id.*

To maintain an appropriate balance, the Supreme Court requires "that a statute's overbreadth be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep. *Id.* at 292-93 (citing *Bd. of Trs. of State Univ. of N. Y. v. Fox*, 492 U.S. 469, 485 (1989); *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)). Accordingly, a court should not casually invalidate a statute on overbreadth grounds. *Id.* at 293 (*Los Angeles Police Dept. v. United Reporting Publishing Corp.*, 528 U.S. 32, 39 (1999)).

Here, the Act regulates only unprotected offers to engage in commercial sex acts depicting a minor knowingly published, disseminated or displayed, or knowingly caused directly, or indirectly to be published, disseminated or displayed. Plaintiff Backpage.com, LLC argues that this statute is overly broad because "[a]ny party that indirectly causes [an advertisement for a commercial sex act depicting a minor] to be published, disseminated, or displayed is subject to [criminal penalties]." Pl. Brf. at 31. However, this argument is based upon an incorrect interpretation of the statute and, while such ambiguity could conceivably exist in other states, it does not here. In New Jersey, N.J. Stat. Ann. § 2C:2-2(c)(1) governs the interpretation and construction of criminal statutes with respect to culpability requirements. The "[p]rescribed culpability requirement applies to all material elements [set forth in the statute]." N.J. Stat. Ann. § 2C:2-2(c)(1). Accordingly, the knowingly culpability requirement also applies to "causes directly or indirectly, to be published, disseminated, or displayed."

Plaintiffs' conjectural risk is illusory; the culpability requirement precludes their suggestion one third-party post would result in the criminal prosecutions of all search engines that identify the site in response to queries; all blogs, forums, social networking sites, or individuals' emails that link to the website; or internet service providers. The law requires such publication, dissemination, or display, be made knowingly, a critical component missing from their parade of horribles.

Plaintiff Backpage.com, LLC attempts to bolster its overbreadth argument by baldly asserting that "any website or other online service that disseminates third-party content containing depictions of people and references to sex is at risk." This is simply untrue. The Act is solely directed at the unprotected advertisements for commercial sex acts with a depiction of a minor, i.e. offers to engage in an illegal transaction. The Act does not broadly prohibit "depictions of people and references to sex" as plaintiff Backpage.com misrepresents. Whatever statute it is describing is not the one at issue here.

Therefore, the Act is appropriately directed at, and tailored to, conduct so antisocial that it has been made criminal, and it does not substantially chill protected speech such that it is unconstitutionally over broad.

> C. The public interest is overwhelmingly in favor of allowing the challenged provision to become effective.

The public's great interest here is in the protection of its children from sexual abuse, endangerment, and exploitation on websites like backpage.com. As discussed above, offers to engage in illegal transactions, such as the advertisement of commercial sex acts with minors in contravention of N.J. Stat. Ann. § 2C:13-10, is not protected by the First Amendment. Therefore, the public interest in protecting children requires this court to deny the temporary restraining order as against public policy.

> D. The balancing of the equities falls in favor of denying plaintiffs' request for a temporary restraining order and protecting New Jersey's children from sexual abuse and exploitation.

As the Legislature recognized in promulgating N.J. Stat. Ann. § 2C:13-10, human trafficking is a significant and alarming problem affecting

more than twelve million victims, of which 100,000 are American children with an average age of 13 years old.  N.J. Stat. Ann. § 2C:13-10(a)(1), (2).  Sex trafficking and commercial sexual abuse of minors is facilitated by internet advertisements selling children for sex.  Therefore, any harm hypothesized by plaintiffs as a result of what really amounts to their continued use of "extensive measures to police user content for abuse and illegal activity, . . . filter[ing] ads . . . and conduct[ing] two levels of manual reviews" to avoid the exploitation of children in advertisements for sex is unfounded.  More importantly, it pales in comparison to the very real harms done to young victims of human trafficking that the New Jersey Legislature seeks to assist by the protections afforded by N.J. Stat. Ann. § 2C:13-10.

## **CONCLUSION**

For the foregoing reasons, plaintiffs' request for a temporary restraining order and other relief should be denied.

Respectfully submitted,

JOHN J. HOFFMAN
ACTING ATORNEY GENERAL OF NEW JERSEY

By: /s/Stuart M. Feinblatt
    Stuart M. Feinblatt
    Assistant Attorney General

By: /s/Robert T. Lougy
    Robert T. Lougy
    Assistant Attorney General

    Eric S. Pasternack
    Susan M. Scott
    Ashlea Thomas
    Deputy Attorneys General

cc: All Counsel of Record (via CM/ECF)