# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BACKPAGE.COM, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>JOHN JAY HOFFMAN, *et al.*,<br><br>    Defendants, in their official capacities. | Civil Action No. 13-3952 |
| THE INTERNET ARCHIVE,<br><br>    Plaintiff,<br><br>v.<br><br>JOHN JAY HOFFMAN, *et al.*,<br><br>    Defendants, in their official capacities. | Civil Action No. 13-3953 |

---

## PLAINTIFF BACKPAGE.COM LLC'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND OPPOSITION TO BRIEF OF AMICI

---

McCUSKER, ANSELMI, ROSEN & CARVELLI, P.C.
210 Park Ave., Suite 301
Florham Park, N.J. 07932
Telephone:  (973) 635-6300

On the Brief:
James C. Grant
Eric M. Stahl
Ambika K. Doran
Bruce S. Rosen

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, WA  98101
Telephone:  (206) 622-3150

*Attorneys for Plaintiff Backpage.com, LLC*

Dated:  June 26, 2013

# TABLE OF CONTENTS

Page

**INTRODUCTION**.................................................................................1

**BACKGROUND** ................................................................................1

**ARGUMENT** ....................................................................................3

I.    THE ACT IS PREEMPTED BY CDA SECTION 230.................................3

II.   THE COURT SHOULD REACH THE CONSTITUTIONAL ISSUES. ..........7

    A.    The Act Lacks Constitutionally Required Scienter.......................8

    B.    The Act Is Not Limited to Unlawful Speech. .............................14

    C.    The Act is Content-Based and Fails Strict Scrutiny. ...................16

    D.    The Act Is Unconstitutionally Overbroad. ................................20

    E.    The Act Is Unconstitutionally Vague.......................................22

    F.    The Act Violates the Commerce Clause. ..................................23

**CONCLUSION**.................................................................................25

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*ACLU v. Mukasey*,
534 F.3d 181 (3d Cir. 2008) .............................................................................23

*Am. Civil Liberties Union v. Ashcroft*,
322 F.3d 240 (3d Cir. 2003) ...............................................................................3

*Am. Library Ass'n v. Reno*,
33 F.3d 78 (D.C. Cir. 1994) ...............................................................................18

*Ashcroft v. Free Speech Coalition*,
535 U.S. 234 (2002) ...........................................................................................16

*Backpage.com, LLC v. Cooper*,
— F. Supp. 2d —, 2013 WL 1558785 (M.D. Tenn. Jan. 3, 2013) .............passim

*Backpage.com, LLC v. McKenna*,
881 F. Supp. 2d 1262, 1273-74 (W.D. Wash. 2012) ..................................passim

*Bioganic Safety Brands, Inc. v. Ament*,
174 F. Supp. 2d 1168 (D. Colo. 2001 .................................................................8

*Brown-Forman Distillers Corp. v. New York State Liquor Author.*,
476 U.S. 573 (1986) ...........................................................................................24

*Connection Distr. Co. v. Gonzales*,
2006 WL 1305089 (N.D. Ohio May 10, 2006) .................................................22

*Connection Distr. Co. v. Holder*,
557 F.3d 321 (6th Cir. 2009) ......................................................................18, 21

*Doe v. GTE Corp.*,
347 F.3d 655 (7th Cir. 2003) ...............................................................................5

*Doe v. Sexsearch.com*,
551 F.3d 412 (6th Cir. 2008) ...............................................................................5

i

*Dowling v. Twp. of Woodbridge*,
   2005 WL 419734 (D.N.J. Mar. 2, 2005) ............................................................17

*Elrod v. Burns*,
   427 U.S. 347 (1976)..............................................................................................3

*Faculty Senate of Fla. Int'l. Univ. v. Roberts*,
   574 F. Supp. 2d 1331 (S.D. Fla. 2008) ................................................................8

*Free Speech Coalition, Inc. v. Attorney General of the United States*,
   677 F.3d 519 (3d Cir. 2012) ..........................................................................16, 18

*Kraft v. Warden, S. Ohio Corr. Facility*,
   2010 WL 760540 (S.D. Ohio Mar. 3, 2010)........................................................14

*McCauley v. University of the Virgin Islands*,
   618 F.3d 232 (3d Cir. 2010) .................................................................................7

*McMullen v. Maple Shade Twp.*,
   643 F.3d 96 (3rd Cir. 2011 .....................................................................................8

*New Jersey Environmental Fed. v. Wayne Twp.*,
   310 F. Supp. 2d 681 (D.N.J. 2004)......................................................................17

*New York v. Ferber*,
   458 U.S. 747 (1982)........................................................................................16, 21

*Pike v. Bruce Church, Inc.*,
   397 U.S. 137 (1970)........................................................................................23, 24

*Planned Parenthood of Central N.J. v. Farmer*,
   220 F.3d 127 (3d Cir. 2000) .................................................................................9

*Reno v. Am. Civil Liberties Union*,
   521 U.S. 844 (1997)............................................................................................23

*Smith v. California*,
   361 U.S. 147 (1960).........................................................................................8, 16

*Turner Broadcasting Sys. v. FCC*,
   512 U.S. 622 (1994)............................................................................................17

*United States v. Bryan*,
   524 U.S. 184 (1998)..................................................................................11

*United States v. Deverso*,
   518 F.3d 1250 (11th Cir. 2008) ...............................................................12

*United States v. Humphrey*,
   608 F.3d 955 (6th Cir. 2010) ...................................................................13

*United States v. Malloy*,
   568 F.3d 166 (4th Cir. 2009) ...................................................................13

*United States v. Playboy Entm't Grp.*,
   529 U.S. 803 (2000)..................................................................................18

*United States v. Stevens*,
   130 S. Ct. 1577 (2010)...................................................................11, 15, 21

*United States v. Williams*,
   533 U.S. 285 (2008)............................................................................15, 16

*United States v. Wilson*,
   2010 WL 2991561 (S.D. Fla. July 27, 2010) ..........................................20

*United States v. X-Citement Video, Inc.*,
   513 U.S. 64 (1994)........................................................................9, 13, 16

*Voicenet Commn'cns, Inc. v. Corbett*,
   2006 WL 2506318 (E.D. Pa. Aug. 30, 2006) ...........................................4

*Ward v. Rock Against Racism*,
   491 U.S. 781 (1989)............................................................................17, 18

**OTHER CASES**

*People v. Foley*,
   94 N.Y.2d 668, 731 N.E.2d 123 (2000)..................................................24

*People v. Gourlay*,
   2009 WL 529216 (Mich. App. Mar. 3, 2009) ...........................................4

*State v. Cinel*,
    646 So. 2d 309 (La. 1995) ...................................................................................14

*State v. Mauer*,
    741 N.W.2d 107 (Minn. 2007) ...........................................................................14

*State v. Zarnke*,
    224 Wis. 2d 116, 589 N.W.2d 370 (1999) .........................................................14

## FEDERAL STATUTES

18 U.S.C. 1591 ...........................................................................................................6, 20

18 U.S.C. § 215 ...............................................................................................................20

18 U.S.C. § 2251 ........................................................................................................12, 13

18 U.S.C. § 2252A ......................................................................................................15, 16

18 U.S.C. § 2257 ....................................................................................................18, 21, 22

47 U.S.C. § 230 ........................................................................................................passim

## OTHER STATUTES

N.J.S.A. § 2C:13-10 ................................................................................................8, 10, 11

N.J.S.A. § 2C:2 ............................................................................................................9, 10

## REGULATIONS

28 C.F.R. § 75.1 ..............................................................................................................22

73 Fed. Reg. 77432-10 .....................................................................................................22

## CONSTITUTIONAL PROVISIONS

U.S. Const. Amend. I ...............................................................................................passim

U.S. Const. Art. I, § 8......................................................................................................24

## INTRODUCTION

The parties agree that "[h]uman trafficking, particularly the trafficking of minors for commercial sex abuse, is unquestionably a horrible evil." Defendants' Opposition to Plaintiffs' Motions for Preliminary Injunction ("Opp.") (Dkt. No. 19) at 3. The parties disagree about whether the State may ban or force censorship of speech as it sees fit, because it purports to be pursuing a laudable goal.

## BACKGROUND

At the outset, Backpage.com objects to what Defendants and Amici characterize as "fact statements." They are not facts but accusations leveled at Backpage.com by state attorneys general and other politicians. Amici's brief, in particular, is largely an *ad hominem* attack. Such attacks add nothing to the analyses of the issues in this case. If anything, they merely underscore that the Act is aimed at specific speech (posts on Backpage.com), putting it in the class of laws subject to the strictest of scrutiny. *See* Section II.C, *infra*.

It may be politically expedient to advocate censoring websites, but this is hardly a reasoned view of how best to combat online sex trafficking. In fact, scholars and experts have said such efforts are misguided, ineffective, and will divert attention and resources from real solutions to sex trafficking.[1] Others have

---

[1] *See* d. boyd, "When It Comes to Sex Trafficking, Tech is Far from Neutral," http://www.wired.com/opinion/2013/06/bias-as-disruption-how-tech-disrupts-sex-trafficking/ (NYU researcher: "[Some] have long clamored for classified-ad sites,

urged that technology and cooperative online providers (like Backpage.com) are valuable tools in detecting and combatting sex trafficking.[2]  California's attorney general embraced this approach by building alliances with online providers.[3]

Backpage.com has explained this—the societal complexities of underage sex trafficking, the need for comprehensive (not knee-jerk) responses, its extensive measures to prevent improper ads, and its longstanding cooperation with law enforcement and the National Center for Missing and Exploited Children to identify and prosecute individuals who misuse the Internet for sex trafficking.[4]

---

like Craigslist or Backpage, to be abolished …. [T]he data … suggests that this approach is neither effective nor productive."); J. Musto, "Domestic minor sex trafficking and the detention-to-protection pipeline," http://link.springer.com/content/pdf/10.1007%2Fs10624-013-9295-0.pdf (Rice academic: "[S]hutting down Backpage will merely send traffic to other Internet and social networking sites that are off-shore and therefore more difficult for law enforcement to access.  The push to shut down Backpage and other US-based adult services websites may therefore increase sex trade-involved individuals' vulnerability ….").

[2] *See, e.g.* "How to Responsibly Create Technological Interventions to Address the Domestic Sex Trafficking of Minors" http://www.wired.com/opinion/wp-content/uploads/2013/06/sextraffickingtech-forwiredopinion.pdf (white paper from 19 scholars urging comprehensive analysis of sex trafficking issues and technology); M. Laternero, "The Rise of Mobile and the Diffusion of Technology-Facilitated Trafficking, http://technologyandtrafficking.usc.edu/2012-report/ (USC Annenberg Center report, noting that while "[i]ncreasingly, the business of human trafficking is taking place online and over mobile phones [these same technologies] can become a powerful tool to combat trafficking").

[3] "Sex Trafficking In California: State And Tech Companies Build Alliances To Combat Crime," http://www.huffingtonpost.com/2012/05/18/sex-trafficking-in-california_n_1528985.html.

[4] *See* Suppl. Declaration of Ambika Doran, Ex. A (March 23, 2012 letter from Backpage.com to NAAG).  This letter also quotes commendations Backpage.com

Of course, it is inappropriate for Defendants and Amici to urge the Court to decide this case based on accusations in the press. The Court should resolve the preliminary injunction motions based on the law[5] and actual facts.

## ARGUMENT

## I.   THE ACT IS PREEMPTED BY CDA SECTION 230.

Defendants attempt to avoid the CDA by arguing that it does not preempt state criminal laws and that the Act is consistent with "federal criminal laws regarding the sexual exploitation of children." Opp. at 11, 12. This is the same misreading of Section 230 that *McKenna* and *Cooper* rejected. More important, Attorney General Hoffman recently admitted that these arguments are wrong.

Attempting to show that Section 230 does not preempt state criminal laws, Defendants offer snippets from legislative reports and strained readings of some headings in the statute. Opp. at 12. The actual text of Section 230 is clear. It prohibits treating an online service provider as the "publisher or speaker of any information" provided by third parties. 47 U.S.C. § 230(c)(1). It states, without

---

has received from law enforcement authorities for its work and cooperation in identifying and prosecuting sex trafficking offenders, contrary to Amici's comment that this is no more than a "bald assertion." Amici Br. at 16.

[5] Defendants misstate the preliminary injunction standard here, citing general authorities to insist that Plaintiffs must make an "extraordinary showing." Opp. at 9-10. In a First Amendment case, a showing of probability of succeeding on the merits "is dispositive," *Am. Civil Liberties Union v. Ashcroft*, 322 F.3d 240, 250-51 (3d Cir. 2003), because "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Elrod v. Burns,* 427 U.S. 347, 373 (1976); *see* Mot. (Dkt. No. 1-8), at 16-17.

qualification, that "[n]o cause of action may be brought and no liability may be imposed under *any* State or local law that is inconsistent with this section." *Id.* § 230(e)(3) (emphasis added). It provides that immunity does not extend to any "*Federal* criminal statute." *Id*. § 230(e)(1) (emphasis added). "If Congress had wanted all criminal statutes to trump the CDA, it could have written subsection [230(e)](1) to cover 'any criminal statute' or 'any similar State criminal statute.' Instead, sub-subsection (1) is limited to federal criminal statutes." *Voicenet Commn'cns, Inc. v. Corbett*, 2006 WL 2506318, at *3 (E.D. Pa. Aug. 30, 2006).[6]

*Every* court that has addressed this issue has agreed, including *McKenna* and *Cooper*. *Backpage.com, LLC v. McKenna,* 881 F. Supp. 2d 1262, 1274 (W.D. Wash. 2012) ("If Congress did not want the CDA to apply in state criminal actions, it would have said so."); *Backpage.com, LLC v. Cooper*, — F. Supp. 2d —, 2013 WL 1558785, at *12-14 (M.D. Tenn. Jan. 3, 2013); *see Voicenet Commn'cns,* 2006 WL 2506318, at *3; *People v. Gourlay*, 2009 WL 529216, at *3 (Mich. App. Mar. 3, 2009) ("the phrase 'any State or local law' includes civil and criminal laws").

---

[6] When Congress meant to exempt state laws in Section 230, it did so expressly. Subsection 230(e)(2) states that "[n]othing in this section shall be construed to limit or expand any law pertaining to intellectual property," Subsection 230(e)(4) states that "[n]othing in this section shall be construed to limit the application of the Electronic Communications Privacy Act … or any similar State law".

*No courts* "have questioned the applicability of CDA immunity to criminal prosecutions," as Defendants claim, Opp. at 13; they have *all* held the opposite.[7]

Nevertheless, Defendants claim the Act is "consistent with federal criminal law," which they say is all the CDA requires. Opp. at 15-16. In fact, subsection 230(e)(3) states that "no liability may be imposed under any State or local law that is inconsistent with this section," and the corollary that "[n]othing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section." "[T]his section" refers to Section 230 itself, *i.e.*, whether a state law imposes liability on an online provider as though it were the publisher or speaker of third-party content. The statute does not say that it exempts all state laws that relate to subjects addressed by any federal criminal law. No case has adopted such an interpretation, which would gut Section 230's protections.

---

[7] Defendants cite *Doe v. Sexsearch.com*, 551 F.3d 412 (6th Cir. 2008), Opp. at 13, but that case did not address Section 230; the court affirmed on other grounds noting there was no issue "concerning the criminal liability of the parties." *Id.* at 415. Defendants also cite a rhetorical question posed in *Doe v. GTE Corp.*, 347 F.3d 655, 660 (7th Cir. 2003) ("Why should a law designed to eliminate ISPs' liability to the creators of offensive material end up defeating claims by victims of tortious or criminal conduct?"). Again, this comment had nothing to do with Section 230's preemption of state criminal laws, and it too is dicta. *See id.* More pertinent is another question the Seventh Circuit posed and answered: "Does a newspaper that carries an advertisement for 'escort services' or 'massage parlors' aid and abet the crime of prostitution, if it turns out that some (or many) of the advertisers make money from that activity? … That web hosting services likewise may be used to carry out illegal activities does not justify condemning their provision whenever a given customer turns out to be crooked." *Id.* at 659.

In any event, the Act is *not* consistent with federal criminal law.  No federal statute criminalizes publication of escort ads or similar content.  The only statute Defendants cite, 18 U.S.C. § 1591, *see* Opp. at 15, punishes conduct, not speech— specifically, that a defendant knowingly or with reckless disregard "recruits, entices, harbors, transports, provides, obtains, or maintains" a person the defendant knows is under 18 to engage in a commercial sex act or benefits financially from participating in such a venture.  *See McKenna,* 881 F. Supp. 2d at 1273-74 (noting "myriad differences between" the Washington statute and 18 U.S.C. § 1591, "[m]ost importantly [that section] 1591 pertains to conduct, whereas SB 6251 pertains to speech … and is directly aimed at online service providers").

If there were any doubt that Section 230 immunizes online service providers from state criminal laws, Defendants dispelled it four days after filing their Opposition.  In a July 23, 2013 letter to four U.S. senators and representatives, Attorney General Hoffman (whose office represents all Defendants here), joined other state attorneys general urging Congress to amend Section 230 to exempt state criminal laws.  *See* July 29, 2013 letter from P. Venetis to the Court, attachment. Hoffman and the other AGs made clear their purpose is to pursue "online classified ad services, such as Backpage.com" and that they cannot do so under Section 230 "as it has most recently been interpreted," including in *McKenna*.  *Id.* at 1, 2.

Thus, Defendants have admitted that Section 230 preempts state laws such as the Act, unless and until Congress amends that law.

## II.     THE COURT SHOULD REACH THE CONSTITUTIONAL ISSUES.

Amici urge the Court to ignore the constitutional flaws of the Act if it concludes the Act is preempted by Section 230, so that Backpage.com "can[not] portray itself as a constitutional victim and First Amendment advocate."  Amici Br. at 18-19.  The Court can and should address the important constitutional issues presented.  Backpage.com unquestionably has standing to assert the rights of everyone affected by the Act.  *McCauley v. University of the Virgin Islands*, 618 F.3d 232, 238 (3d Cir. 2010) (parties may assert First Amendment overbreadth challenges for others because "[a] statute's very existence may cause others not before the court to refrain from constitutionally protected speech") (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973)).  The "constitutional avoidance" cases cited by *amici* did not involve overbreadth challenges, and this authority does not preclude a district court from reaching a squarely raised First Amendment claim.  Backpage.com challenges the Act not just on its own behalf, but on behalf of all parties the Act affects.

While Section 230 plainly preempts the Act, it does not fully resolve Backpage.com's complaint.  The *Cooper* and *McKenna* courts recognized this when they reached the constitutional issues on Backpage.com's similar challenges. There is nothing unusual about a district court addressing both constitutional and

preemption grounds in considering challenges to legislative enactments.[8]   This makes sense for judicial economy, particularly where, as here, the statutory and constitutional reasons why Backpage.com is likely to succeed on the merits are intertwined.   Amici's expressed disdain for Backpage.com is no basis to preclude the company from advocating important First Amendment interests.

### A.   The Act Lacks Constitutionally Required Scienter.

For over 50 years the Supreme Court has held that a state cannot impose criminal liability for distributing expressive materials—even ones that are unprotected (*e.g.*, obscenity, child pornography)—without sufficient proof of scienter.   Mot. at 22-27.   Distributors such as booksellers, video stores, and websites cannot be charged, under pain of criminal penalties, with having to review all materials to determine if any run afoul of the law.   *Smith v. California*, 361 U.S. 147, 153-54 (1960) (states cannot "demand so near an approach to omniscience").   Because such penalties necessarily would cause distributors to

---

[8] *See, e.g., Faculty Senate of Fla. Int'l. Univ. v. Roberts*, 574 F. Supp. 2d 1331 (S.D. Fla. 2008) (addressing both preemption and First Amendment grounds for facial challenge to state statute), *rev'd in part on other grounds*, 616 F.3d 1206 (11th Cir. 2010); *Bioganic Safety Brands, Inc. v. Ament*, 174 F. Supp. 2d 1168 (D. Colo. 2001) (enjoining state labeling requirement as preempted by federal law and contrary to First Amendment and Commerce Clause).   Nor does the Third Circuit rigidly adhere to a doctrine of "constitutional avoidance," as Amici suggest.   For example, in *McMullen v. Maple Shade Twp.*, 643 F.3d 96 (3rd Cir. 2011), the Third Circuit addressed a constitutional question when it could have rested its decision on statutory preemption grounds.   *See id.* at 102 (Jordan, J., concurring).

censor, their "burden would become the public's burden" for all the expressive materials the public would no longer see.  *Id.*

Defendants never grasp this fundamental precept of First Amendment law. Instead, as they do throughout their Opposition, they improperly seek to re-write the Act.[9]  They claim N.J.S.A. § 2C:13-10 does contain scienter, what they call a "knowingly culpability" requirement for all elements of the crime, except they admit it requires no scienter regarding whether a person depicted is a minor.  Opp. at 2.  Even under this interpretation, this lack of scienter by itself renders the Act unconstitutional.  *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994).

Defendants base their argument on N.J.S.A. § 2C:2(c)(1), which provides:

> When the law defining an offense prescribes the kind of culpability that is sufficient for the commission of an offense, without distinguishing among the material elements thereof, such provision shall apply to all the material elements of the offense, unless a contrary purpose plainly appears.

*See* Opp. at 20 (quoting the title of this provision, not its text).  From this premise, Defendants characterize the Act in many different ways.  They claim it "requires proof of knowingly culpability as to all material elements of the crime," then admit that is false.  Opp. at 2.  They assert the Act requires "the State prove knowledge of the content of the advertisement," *id.* at 16, or that a provider knows "an

---

[9]  Neither Defendants nor this Court can rewrite the Act to save it.  State legislatures shoulder the obligation to craft constitutional legislation.  *See Planned Parenthood of Central N.J. v. Farmer*, 220 F.3d 127, 135-36 (3d Cir. 2000) ("We may not … rewrite a state law to conform it to constitutional requirements." (internal quotation omitted)).

advertisement solicits or offers the illegal act of prostitution," *id.* at 17, or acts willfully in allowing such an ad, *id.* at 16, *see also id.* at 17 (suggesting a website must make an "an affirmative choice to ignore a post that it knew contained an advertisement for prostitution").  The trouble is that the Act says nothing like this.

The Act requires "knowing" scienter only to the extent a prosecutor seeks to prove that an online service provider "knowingly publishe[d], disseminate[d] or display[ed]" an offending ad.   N.J.S.A. § 2C:13-10(b)(1).[10]   Defendants' view creates the illogical result that a defendant can be convicted if it "knowingly" "causes indirectly" to be "disseminated or displayed" any "implicit offer" of sex for "something of value," which "includes the depiction of a minor," whether or not the defendant knows or has any idea of this.  N.J.S.A. § 2C:13-10.(b)(1), (e).

Plainly by its terms, the Act is not limited to circumstances in which a defendant "knowingly" publishes an online post knowing that it offers prostitution with a minor.  As discussed below (*see* Section II.D), online personals, dating ads, and other adult-oriented posts could be seen as implicitly proposing sex for "something of value," whether that is a dinner date, a long-term relationship or a woman looking for a man who will be generous.  None of this is prostitution, yet it comes within the criminal scope of the Act.  So too, nothing in the Act suggests the

---

[10]  The Act does not require "knowing" scienter for the entire offense "without distinguishing between the material elements thereof," the circumstance addressed in N.J.S.A. § 2C:2(c)(1).  Instead, it prescribes scienter for only one aspect of the crime and does not mention any scienter as to any other elements of the crime.

higher criminal standard of willfulness.[11]  The Court should disregard Defendants'

characterizations and instead focus on the actual terms and effect of the Act. [12]

Defendants' argument that the general culpability statute requires a

"knowing" scienter requirement for all "material elements" of the crime is also

wrong because "a contrary purpose plainly appears" in the Act and its legislative

history.  In legislative hearings, the Act was interpreted to mean that a defendant

could be held liable simply because it knew *something* had been published, without

requiring any proof about *what was published*, and the Act passed with this ill-

defined scienter requirement specifically to target Backpage.com.[13]    More

importantly, "a contrary purpose plainly appears" inasmuch as the Act expressly

excludes scienter regarding whether a person depicted in an ad is a minor.

Defendants admit this is a strict liability element of the crime.  Opp. at 2.

---

[11] *See United States v. Bryan*, 524 U.S. 184, 191-92 & n.13 (1998) (in a criminal statute, "willful" connotes a higher level of culpability than knowing conduct, requiring a "bad purpose," *i.e.*, "the Government must prove that the defendant acted with knowledge that his conduct was unlawful" (internal quote omitted)).

[12] Defendants' interpretations of the Act are entitled to no deference.  They may interpret it differently in the future or be replaced by others with different views.  Courts do "not uphold an unconstitutional statute merely because the Government promise[s] to use it responsibly."  *United States v. Stevens*, 130 S. Ct. 1577, 1591 (2010).  The State's claim that it will apply a law "far more restrictively than its language provides is pertinent only as an implicit acknowledgment of the potential constitutional problems with a more natural reading."  *Id.*

[13] *See* Doran Decl. (Dkt. No. 1-11) Ex. AA, at 4-5 ("the fact that you know it's published, even if you don't know what is published, is a crime"); N.J.S.A. § 2C:13-10(a)(5) (legislature's finding that the Act was enacted because Backpage.com had refused to eliminate its escort section as Craigslist.org did).

Defendants try to skirt this constitutional flaw by misdirection. They pretend that Backpage.com contends "that the statute is unconstitutional because it does not provide for a mistake of age defense." Opp. at 21. That is not the issue here, it is not Backpage.com's position, and the cases Defendants cite concerning their "mistake of age defense" arguments are entirely inapposite.[14]

Defendants cite cases interpreting 18 U.S.C. § 2251, which makes it a crime to persuade, induce or coerce a minor to engage in "sexually explicit conduct for the purpose of producing any visual depiction of such conduct." 18 U.S.C. § 2251(a), *see* Opp. at 21. Courts have held that this statute does not require proof that a defendant knew the victim was a minor and does not permit a defense that the defendant mistakenly believed the victim was not a minor. *See, e.g.*, *United States v. Deverso*, 518 F.3d 1250, 1257-58 (11th Cir. 2008).

Yet these cases also note a fundamental (and constitutionally required) distinction: Governments may create criminal offenses concerning exploitation or abuse of minors with a strict liability element regarding the victim's age when the defendant has direct contact with the victim, as is the case with statutory rape and production of sexually explicit materials using minors. But parties that merely

---

[14] *Cooper* and *McKenna* did not invalidate the Tennessee and Washington statutes because those courts felt constrained in some way to recognize a "mistake of age defense." Opp. at 21. Both held that the statutes violated the First Amendment because they dispensed with scienter as to whether persons depicted were minors. *See McKenna*, 881 F. Supp. 2d at 1278; *Cooper*, 2013 WL 1558785, at *18.

distribute materials created by others cannot be held criminally liable absent scienter that they *knew* the persons depicted or featured are minors.

The Supreme Court said this in *X-Citement Video*, when it compared section 2251, concerning the *production* of child pornography, with section 2252, concerning its *dissemination*. The Court noted that section 2251 does not require scienter as to the age of the victim, but interpreted section 2252 to require that the "knowing" scienter requirement "extends to both the sexually explicit nature of the material and to the age of the performer," because "a statute completely bereft of a scienter requirement as to the age of the performers would raise serious constitutional doubts." 513 U.S. at 78. The cases Defendants cite expressly recognize this distinction, although Defendants fail to mention it.[15]

Notwithstanding Defendants' misdirected arguments, cases concerning state laws imposing liability for distributing expressive materials concerning minors

---

[15] *See* Opp. at 21-22, citing *United States v. Fletcher*, 634 F.3d 395, 401 (7th Cir. 2011) ("[S]tatutes requiring knowledge of a victim's age—receiving, distributing, or possessing child pornography—are all readily distinguishable from the production of child pornography, where 'the perpetrator confronts the underage victim personally and may reasonably be required to ascertain that victim's age.'" (quoting *X-Citement Video*, 513 U.S. at 72 n.2)); *United States v. Humphrey*, 608 F.3d 955, 959-60 (6th Cir. 2010) (explaining same distinction from *X-Citement Video*); *United States v. Malloy*, 568 F.3d 166, 171-72 (4th Cir. 2009) (same).

uniformly hold that the First Amendment requires proof that the defendant had knowledge the person depicted *was* a minor.[16]   The Act is invalid for this reason.

### B.    The Act Is Not Limited to Unlawful Speech.

Defendants claim the First Amendment does not apply in this case at all because the ads targeted by the Act are unlawful.  Opp. at 23-25.  They are wrong.

First, the Act does not target only unlawful speech.  As described in more detail below (*see* Section II.D) and as the court said in *Cooper*, "the statute as written does not criminalize only offers to engage in illegal transactions;" instead, its "potential reach extends to notices related to legal, consensual activity by adults."  2013 WL 1558785, at *21 (internal quotation omitted).

Even if the Act *did* only reach ads proposing illegal acts, "[t]he third-party publication of offers to engage in illegal transactions does not fall within 'well-defined and narrowly limited classes of speech'"—such as incitement or

---

[16] *See, e.g., State v. Zarnke*, 224 Wis. 2d 116, 589 N.W.2d 370, 371-76 (1999) (child exploitation law was unconstitutional because it did not require proof "that a distributor of sexually explicit materials had knowledge of the minority of the person(s) depicted" and only allowed an affirmative defense if the defendant obtained government-issued identification); *State v. Cinel*, 646 So. 2d 309, 316 (La. 1995) (interpreting statute imposing criminal liability for possession of materials depicting sexual performances to require "knowledge that one or more of the performers involved in the materials was under the age of 17"); *State v. Mauer*, 741 N.W.2d 107, 110 (Minn. 2007) ("[T]he First Amendment … requires proof of some subjective awareness, not just proof that the possessor was objectively negligent in failing to know that a performer in the work was a minor."); *Kraft v. Warden, S. Ohio Corr. Facility*, 2010 WL 760540, at *9-10 (S.D. Ohio Mar. 3, 2010) ( "the scienter requirement … requires evidence that the offender knew that the image involved a real minor").

obscenity—"that fall outside of First Amendment protection."  *McKenna*, 2012

WL 3064543, at *17 (quoting *Brown v. Entm't Merchs. Ass'n*, 131 S. Ct. 2729,

2733 (2011) ("new categories of unprotected speech may not be added … by a

legislature that concludes certain speech is too harmful to be tolerated")); *see also*

*Stevens*, 130 S. Ct. at 1584-86 (rejecting government's argument that depictions of

animal cruelty could be banned because they showed illegal conduct).

   Just because the government claims a law aims to regulate only unprotected

speech or illegal activities does not make it so.  In this regard, Defendants read far

too much into *United States v. Williams*, 533 U.S. 285, 297 (2008).  Opp. at 22-23.

*Williams* did state that "[o]ffers to engage in illegal transactions are categorically

excluded from First Amendment protection," but it did not say "as are the

publication of such offers," as Defendants add.  *Id.* at 23.  *Williams* did not concern

liability for publishing third-party speech (the issue here) but rather 18 U.S.C.

§ 2252A, which criminalizes pandering or solicitation of child obscenity or

pornography.  The Court upheld that law after thoroughly examining the statute,

noting in particular that it is strictly limited to categories of unprotected speech

(obscenity and child pornography), 553 U.S. at 293, and contains scienter

requirements that a defendant knows and intends to promote, distribute or solicit

obscenity or child pornography, *id.* at 294-96.  In other words, the statement that

"[o]ffers to engage in illegal transactions are categorically excluded from the First

Amendment" was the Court's conclusion *after* determining the statute properly addressed only unprotected speech and was otherwise constitutional.

Defendants suggest that under *Williams*, a law is constitutional whenever a state statute purports to regulate unlawful speech. *Williams* does not say this, and the Supreme Court has never so held. The statutes in *Smith* (obscenity), *New York v. Ferber*, 458 U.S. 747 (1982) (child pornography), and *X-Citement Video* (same), all concerned laws targeting unprotected speech, yet the Supreme Court examined each in detail rather than accept the governments' assertions. *Williams* makes the same point, because the Court upheld section 2252A though it struck down another statute previously passed by Congress with the same "child-protection rationale" in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 249-51, 258 (2002).

### C. The Act is Content-Based and Fails Strict Scrutiny.

Defendants contend "the Act is content neutral and subject to intermediate scrutiny." Opp. at 25. They base this argument on a serious misstatement of First Amendment doctrine—the Act plainly is content-based. But, regardless, the Act is so flawed it fails constitutional scrutiny, whether strict or intermediate.

Selectively quoting from *Free Speech Coalition, Inc. v. Attorney General of the United States*, 677 F.3d 519 (3d Cir. 2012), Defendants claim the Act is content neutral because "the government's purpose is the controlling consideration," and the "Legislature passed the Act to protect children from sexual exploitation." Opp.

at 26-27.  Defendants are attempting to apply cases concerning "time, place or manner" restrictions such as zoning ordinances, though the Act is no such thing.

"The principal inquiry in determining content neutrality is whether the government has adopted a regulation of speech 'without reference to the content of the regulated speech.'"  *Dowling v. Twp. of Woodbridge*, 2005 WL 419734, at *5 (D.N.J. Mar. 2, 2005) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)).  According to Defendants, if a state purports to pursue a laudable purpose, it could pass *any* restriction of speech and only have to satisfy intermediate scrutiny.  That is *not* the law.  "[T]he mere assertion of a content-neutral purpose [is not] enough to save a law which, on its face, discriminates based on content." *Turner Broadcasting Sys. v. FCC*, 512 U.S. 622, 642-43 (1994).

The Act defines a criminal offense solely on the basis that ads or posts contain certain content, namely an offer of sex for "something of value" and a depiction of a minor.  It thus discriminates based on the subject matter of speech, the quintessential example of a content-based law.  *See, e.g.*, *Dowling*, 2005 WL 419734, at *5; *New Jersey Environmental Fed. v. Wayne Twp.*, 310 F. Supp. 2d 681, 694 (D.N.J. 2004).  The courts in *Cooper* and *McKenna* had no difficulty concluding the statutes in those cases were content-based.[17]  Moreover, the New Jersey legislature "adopted a regulation of speech because of disagreement with the

---

[17] *See Cooper*, 2013 WL 1558785, at *24 ("a clear-cut example of a content-based restriction on speech"); *McKenna*, 881 F. Supp. 2d at 1283.

message it conveys," *Ward*, 491 U.S. at 791, given that the Act specifically targets
Backpage.com.

Defendants' reliance on cases concerning 18 U.S.C. § 2257 is misplaced.
Section 2257 imposes record-keeping and disclosure requirements on producers of
sexually explicit videos and similar materials.   These requirements are content
neutral because "they place no restrictions on the speech itself," and "do not
impinge on the content of the materials."  *Am. Library Ass'n v. Reno*, 33 F.3d 78,
86 (D.C. Cir. 1994); *accord Free Speech Coalition*, 677 F.3d at 536 n.13 (section
2257 "regulate[s] recordkeeping and labeling procedures and do[es] not ban or
otherwise limit speech"); *Connection Distr. Co. v. Holder*, 557 F.3d 321 (6th Cir.
2009).  In contrast, the Act *does* expressly ban certain speech based on its content.

Defendants do not address strict scrutiny, let alone try to meet their burden
to show the Act is the least restrictive alternative available.  *See United States v.
Playboy Entm't Grp.*, 529 U.S. 803, 813 (2000); Mot. at 27-30.  Defendants never
explain why criminal penalties on sex traffickers are not a less speech-restrictive
alternative—indeed, this is the approach of subsection b(2) of the Act, which
Plaintiffs do not challenge.  They do not deny that the Act is underinclusive (*e.g.*, it
does not reach offshore websites or ads that contain no depiction of a minor, Mot.
at 29-30), but merely repeat the mistaken premise that the State may ban speech
however it likes so long as it is "pursuing the interest it invokes."  Opp. at 30.

As Defendants' interpret the Act now, it would be even more ill-suited to the legislature's ostensible purpose.  If an online provider cannot be liable unless it knows that a third-party post proposes an illegal transaction, it would be better off *not reviewing any content*.  This not only contravenes Section 230, it demonstrates the Act is far from narrowly tailored to achieve the State's ostensible purpose, as it could lead to more sex trafficking and less prevention and prosecution.

Even if intermediate scrutiny applies, the Act is still invalid.  "Defendants have shown no evidence that criminalizing the sale of certain advertisements would have any effect on child sex trafficking in [the state]."  *Cooper*,  2013 WL 1558785, at *27.[18]  History teaches the opposite—when Craigslist shuttered its adult services section in 2010, ads simply migrated elsewhere on that website and to other sites, including Facebook.  Defendants have done nothing to meet their burden to show the Act would advance the government's interests in a "direct and material way."  *Id.* (quoting *Edenfield v. Fane*, 507 U.S. 761, 770-71 (1993)).[19]

---

[18] *Cooper* discussed the intermediate scrutiny test applicable to commercial speech. 2013 WL 1558785, at *19.  Defendants instead improperly seek to invoke intermediate scrutiny applicable to "time, place or manner" restrictions.  Opp. at 28.  But the Act fails under either test.

[19] Lt. Shea opines that "the internet has become the preferred means of advertising the availability of prostitutes," that she is aware of two cases in which sexual services were allegedly advertised on Backpage.com, and that online advertising of commercial sex acts "could potentially include minors."  Shea Decl. (Dkt. No. 19-2) at ¶¶ 3-5.  These assertions are speculative.  The State offers no other evidence.

### D.     The Act Is Unconstitutionally Overbroad.

Defendants also largely ignore the many ways that the Act is overbroad; they address only one issue—the Act's definition of a "commercial sex act" as encompassing any offer of sex for "something of value."   Opp. at 31-32. Defendants contend this phrase is identical to a term used in 18 U.S.C. 1591(e)(3) (the federal sex trafficking statute discussed above, *see* Section I), and was upheld. Opp. at 31.  However, the case Defendants cite, *United States v. Wilson*, 2010 WL 2991561 (S.D. Fla. July 27, 2010), did *not involve* a First Amendment challenge, *id.* at *8, which makes sense because, again, section 1591 punishes conduct, not speech.

It is also a mistake to read the phrase "something of value" out of context, as Defendants do.   Punishing a defendant who knowingly "recruits, harbors, transports," etc. a minor knowing she "will be caused to engage in" a sex act for "which anything of value is given … or received," 18 U.S.C. §§1591(a), (e)(3), is far different from making it a crime to indirectly disseminate speech that contains an "implicit offer" of sex "for something of value."[20]  *McKenna* rejected the same argument, and aptly explained that  "something of value" could mean "a bottle of wine, a nice dinner, or a promise to do the dishes," and thus "encompasses vast swaths of consensual, non-commercial sexual activity."  881 F. Supp. 2d at 1281.

---

[20] Defendants also cite 18 U.S.C. § 215, Opp. at 31, but that law also regulates conduct rather than speech, applying to a defendant who corruptly "gives, offers, or promises" or "solicits or demands" "anything of value" in procuring a loan.

Defendants offer no response to the other overbreadth problems of the Act, *e.g.*, it imposes criminal penalties on any party that indirectly causes offending materials to be displayed; would compel providers to block millions of third-party posts (anything alluding to sex and containing a photograph) or undertake the impossible task of obtaining identification for all such posts; and would dissuade users forced to provide identification from posting content.  Mot. at 31-34.

Defendants instead urge the Court to disregard overbreadth issues because the Act is "designed to protect children from sexual exploitation."  Opp. at 33. Here, they rely on *Ferber*, 458 U.S. at 747, where the Supreme Court held that child pornography is one of the few categories of speech that falls outside of First Amendment protection.  *See Stevens*, 130 S. Ct. at 1586 ("*Ferber* presented a special case").  Yet, Defendants cannot (and do not even try to) argue that the Act restricts only child pornography.  Rather, they suggest the legislature's purpose in passing the Act was similar to the purpose advanced in *Ferber*.  Opp. at 33.  Again, the legislature's ostensible purpose is not a panacea for all constitutional flaws.

Defendants' reliance on *Connection Distributing Co. v. Holder*, 557 F.3d at 321, and 18 U.S.C. § 2257 is worse still.  Opp. at 34-35.  Section 2257 imposes record-keeping and disclosure requirements, but does not restrict speech.  *See* Section II.C.  It requires only "primary producers" (*i.e.*, parties who create materials and have contact with performers) to obtain identification.  18 U.S.C.

§ 2257(a); 28 C.F.R. § 75.1(c)(1).  And, despite Defendants' attempt to equate Backpage.com to a magazine, Opp. at 34-35, section 2257 does not apply to websites hosting third-party content, reflecting the reality that such requirements would chill Internet speech and be impossible to satisfy.[21]

Ultimately, Defendants admit the Act's overbreadth, acknowledging it encompasses dating ads and is meant to "close the advertising market" and "quash the entire industry in all its manifestations."  Opp. at 1, 33.  This squares with the legislative intent to eliminate adult-oriented ads on Backpage.com.  The Court has ample grounds to conclude the Act is overbroad, and intentionally so.

### E.    The Act Is Unconstitutionally Vague.

Defendants say little about the Act's vagueness, ignoring Backpage.com's arguments and asserting only that "[c]lose cases can be imagined under virtually any statute," and vagueness problems "should be addressed by the requirement of proof beyond a reasonable doubt."  Opp. at 37 (quoting *Williams*, 553 U.S. at 306).

Backpage.com's motion explained that the Act's reference to an "implicit" offer of sex is vague because it criminalizes matters that are not expressed but only inferentially implied, in someone's view.  Mot. at 34-35; *see McKenna*, 881 F. Supp. 2d at 1279 ("[W]hat does it mean for the website operator to 'know' that an

---

[21] *See Connection Distr. Co. v. Gonzales*, 2006 WL 1305089, at *11 (N.D. Ohio May 10, 2006) (websites hosting third-party content are exempt from age-verification and disclosure requirements under 28 C.F.R. § 75.1(c)(4)(iv) and (v)); 73 Fed. Reg. 77432-10, 2008 WL 5244080, at 77437, 77457 (DOJ comments that social and other sites hosting user posts are not subject to section 2257).

advertisement 'implicitly' offers sex?").  Defendants do not explain what it means to "cause indirectly" the "dissemination or display" of an offending ad.  And, as discussed, defining "commercial sex act" as any sex for "something of value," is also inherently vague.  In all these regards, Defendants have not shown that the Act "provide[s] a person of ordinary intelligence fair notice of what is prohibited." *ACLU v. Mukasey*, 534 F.3d 181, 204 (3d Cir. 2008).

Defendant's assertion that a statute need not have "perfect clarity," Opp. at 36-37, is no answer.  "Perfect clarity may not be a prerequisite to constitutionality, but the statute at issue is likely far off the mark."  *Cooper*, 2013 WL 1558785, at *22.  Defendants just ignore the amorphous terms of the Act and the stringent First Amendment vagueness standards that apply when the state seeks to criminalize speech.  *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 871-72 (1997).

## F.    The Act Violates the Commerce Clause.

Backpage.com does not claim the Act is "invalid merely because it affects in some way the flow of commerce between the States."  Opp. at 38 (quotation omitted).  Rather, the Act violates the Commerce Clause because it threatens to impose criminal liability on conduct wholly outside of the State of New Jersey.

Defendants contend the Court should apply *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970), and balance the Act's discrimination against interstate commerce as compared to the "local interest involved."  Opp. at 38.  Again they apply the wrong test.  A state statute is a "*per se* violation of the Dormant Commerce Clause

if it directly controls extraterritorial conduct." *Cooper*, 2013 WL 1558785, at *28; *see McKenna*, 881 F. Supp.2d at 1285; *see also Brown-Forman Distillers Corp. v. New York State Liquor Author.*, 476 U.S. 573, 578-79 (1986).

Defendants maintain the Act is sufficiently confined to New Jersey because it refers to "a commercial sex act 'which is to take place in [New Jersey.]'" Opp. at 39.[22] *McKenna* rejected the same argument based on the same terms in the Washington statute. 881 F. Supp. 2d at 1285. Prosecutors could deem a post from New York containing an implicit offer of sex that *could* occur in New Jersey to be a violation even if nothing ever happens in New Jersey. Because it reaches wholly extraterritorial conduct, the Act is *per se* invalid under the Commerce Clause, especially because it regulates the Internet, an international medium inappropriate for state-by-state regulation. *See Cooper*, 2013 WL 1558785, at *28.[23]

---

[22] Defendants also claim the Act is akin to laws that "criminalize the transmission of [indecent] materials in order to initiate sex with a minor." Opp. at 41 n.4. But luring and enticement statutes (and the cases Defendants cite concerning such laws) do not penalize speech, but rather direct conduct of inviting, soliciting or enticing. *See, e.g.*, *People v. Foley*, 94 N.Y.2d 668, 731 N.E.2d 123 (2000).

[23] Even if the *Pike v. Bruce* test applied, the Act fails. Under *Pike*, a statute is valid if it furthers a legitimate local public interest without imposing a clearly excessive burden on interstate commerce. *Pike*, 397 U.S. at 142. As *Cooper* held, the burden of the Act on interstate commerce "clearly exceeds any possible benefit from the law." 2013 WL 1558785, at *32.

## CONCLUSION

For the reasons stated above and in Backpage.com's initial memorandum, the Court should grant Backpage.com's motion for a preliminary injunction precluding enforcement of N.J.S.A. § 2C:13-10.

Dated this 5th day of August, 2013.

McCusker, Anselmi, Rosen & Carvelli, P.C.

By  *s/ Bruce S. Rosen*
  Bruce S. Rosen
  210 Park Ave., Suite 301
  Florham Park, NJ  07932
  Telephone:  973-635-6300
  Fax:  973-457-0726
  E-mail:  brosen@marc-law.com

Davis Wright Tremaine LLP
James C. Grant, admitted *pro hac vice*
Eric M. Stahl, admitted *pro hac vice*
Ambika K. Doran, admitted *pro hac vice*
1201 Third Avenue, Suite 2200
Seattle, WA  98101
Telephone:  (206) 622-3150

*Attorneys for Plaintiff Backpage.com, LLC*